# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | Chapter 11 |
| BDC GROUP, INC., | Case No. 23-00484 |
| Debtor. | Hon. Thad J. Collins |
| | **FIRST INTERIM FEE APPLICATION OF SMITH GAMBRELL & RUSSELL AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

Smith Gambrell & Russell LLP ("SGR"), counsel to the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 case of BDC Group, Inc. (the "Debtor"), hereby submits this application for compensation (the "Application") which seeks: (i) interim approval of compensation in the amount of $77,945.00 for services rendered and $616.85 for reimbursement of expenses incurred for the period of June 26, 2023 through August 31, 2023, and (ii) authorization of payment of $78,561.85 from its professional fee carve-out, representing all unpaid amounts due and owing to SGR on account of this Application. In support hereof, SGR states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to sections 1334 and 157(a) of title 28 of the United States Code. This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

2. The statutory predicates for the relief requested herein are sections 330, 331, 503(b) and 507(a)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

3. On June 13, 20123 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor is operating its business and managing its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee or examiner has been appointed in this chapter 11 bankruptcy case.

6. On June 22, 2023, the Office of the United States Trustee appointed the Committee as an official committee to represent the interests of unsecured creditors of the Debtor pursuant to section 1102 of the Bankruptcy Code, as amended on June 26, 2023.

7. On June 30, 2023, the Court entered an order granting the Committee's application to employ SGR as its counsel retroactive to June 26, 2023.

8. At the July 20, 2023 hearing on the Debtor's counsel's employment and debtor-in-possession financing, the U.S. Trustee agreed on the record that the Committee's counsel could submit fee applications every 60 days consistent with its agreement with the Debtor's counsel.

9. As of the date of this Application, SGR is holding $87,500.00 as its professional fee carve-out.

10. SGR has not previously sought approval of fees and expenses in this case.

**RELIEF REQUESTED**

11. SGR rendered services on behalf of the Committee from June 26, 2023 through August 31, 2023 (the "Fee Application Period"), for which SGR seeks interim allowance of compensation and reimbursement of expenses. By this Application, SGR seeks an order: (1) allowing SGR $77,945.00 in compensation and $616.85 in reimbursable expenses on an interim basis for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate

pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code, and (2) authorizing payment to SGR of $78,561.85 from the balance of SGR's professional fee carve-out.

## DISCUSSION

12. Section 330(a) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court may award . . . reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person . . . and . . . reimbursement for actual, necessary expenses. . . . In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title

13. The Eighth Circuit Court of Appeals has stated:

> "[Reasonable] [c]ompensation . . . presumably reflects (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained."

*P.A. Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 731-32 (8th Cir. 1992).

14. In reviewing the Application, the Court should be guided by the Eighth Circuit's instruction to ascertain whether such services were rendered and billed in accordance with the established market for legal services in similar matters:

> Section 330 "is meant to encourage high standards of professional legal practice in the bankruptcy courts. . . . Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts."

*Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir. 1984); *see also In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges

in fee litigation to determine the equivalent of the medieval just price.  It is so to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.").

15.     SGR's hourly rates of compensation for its attorneys and para-professionals during the Fee Application Period range from $150 to $1,125 (however, no professional with an hourly rate in excess of $595 has performed services herein). Those rates are comparable to rates charged by other practitioners having the same amount of experience, expertise and standing for similar services in this jurisdiction. SGR consistently and consciously made every reasonable effort to represent the Committee in the most economical, efficient and practical manner possible.

16.     A summary of the compensation requested herein regarding each of SGR's professionals and para-professionals is set forth below:

| Timekeeper | Title | Year of Bar Admission[1] | Rate | Hrs. | Total |
|---|---|---|---|---|---|
| DeRousse, Shelly A. | Partner | 2001 | $ 595.00 | 25.1 | $ 14,934.50 |
| Helton, Tonita | Of Counsel | 2001 | $ 500.00 | 1.1 | $ 550.00 |
| Isenberg, Shira R. | Partner | 2003 | $ 500.00 | 5.9 | $ 2,950.00 |
| Janczak, Elizabeth L. | Partner | 2010 | $ 500.00 | 95.0 | $ 47,500.00 |
| | | | $ 250.00 (Travel) | 7.3 | $ 1,825.00 |
| Manley, Morgan V. | Associate | 2017 | $ 425.00 | 19.6 | $ 8,330.00 |
| Rower, Kirstin N. | Paralegal | N/A | $ 300.00 | 0.2 | $ 60.00 |
| Webster, Jacqueline E. | Paralegal | N/A | $ 315.00 | 5.7 | $ 1,795.50 |
| | | | **Totals:** | **159.9** | **$ 77,945.00** |
| | | | **Blended Rate:** | | **$ 487.46** |

17.     No agreement or understanding exists between SGR and any other person for the sharing of compensation received or to be received in connection with this case, other than as disclosed or authorized pursuant to the Bankruptcy Code, Bankruptcy Rules and the Local Rules.

---

[1]     Ms. DeRousse, Ms. Isenberg, and Ms. Janczak's bar admission years are for the State of Illinois. Ms. Helton's is for the State of Iowa. Ms. Manley's is for the State of New York.

18. SGR reserves the right to correct, amend or supplement this Application, including, without limitation, to seek payment in the event this Application is not approved in full.

## SERVICES PERFORMED

19. This Application sets forth in detail the work performed by SGR and the time spent during the Fee Application Period. SGR's detailed time records for all categories are attached hereto and incorporated herein as Group Exhibit A.

**A.  General**                                                               **$16,277.50**

20. SGR spent 33.0 hours at a cost of $16,277.50 on general matters. This category primarily includes time spent reviewing incoming pleadings, preparing for and attending Court hearings on general case matters, corresponding with other parties-in-interest concerning general case matters, and performing other necessary tasks associated with a committee representation. This category also includes matters which encompass more than one discrete category.

**B. Litigation**                                                               **$5,940.00**

21. SGR spent 12.6 hours at a cost of $5,940.00 on litigation matters. This category primarily includes time spent reviewing and analyzing potential preference claims held by the estate, preparing Rule 2004 subpoena riders to various parties, and attending a Rule 2004 deposition of BDC's principal by creditor Isotropic.

**C. Creditor Inquiries**                                             **$100.00**

22. SGR spent 0.2 hours at a cost of $100.00 communicating with creditors and addressing their inquiries regarding this bankruptcy case.

**D. Secured Creditor Issues**                                    **$33,322.00**

23. SGR spent 6.3 hours at a cost of $33,322.00 on secured creditor issues. This category includes time spent analyzing the Debtor's motion to approve debtor-in-possession

("DIP") financing, communicating and negotiating with the Debtor and DIP lender Keystone Savings Bank regarding the same, reviewing proposed DIP budgets, and preparing for and attending hearings regarding the Debtor's DIP motion. This category also includes performing a detailed collateral analysis of the validity, priority and extent of the purported liens and security interests of Keystone Savings Bank pre-petition liens. Finally, time in this category includes reviewing motions of the Debtor's purchase-money security interest lenders for adequate protection and relief from the automatic stay, communicating and negotiating with those lenders regarding the same, attending hearings on the same, and reviewing collateral and perfection issues of those lenders in vehicles and equipment.

| | | |
|---|---|---|
| E. | **SGR Retention and Fee Applications** | **$2,939.50** |

24.     SGR spent 6.3 hours at a cost of $2,939.50 on SGR retention and fee application matters. This category includes time spent preparing SGR's retention application and reviewing exhibits to this Application.

| | | |
|---|---|---|
| F. | **Other Professional Retention** | **$2,425.50** |

25.     SGR spent 4.8 hours at a cost of $2,425.50 on other professional retention matters. Time in this category includes time spent relating to ABLS's retention, Keystone Savings Bank's objection to the same, researching and drafting a brief relating to the same, and reviewing ABLS's first interim fee application.

| | | |
|---|---|---|
| G. | **Executory Contracts and Unexpired Leases** | **$2,215.00** |

26.     SGR spent 5.0 hours at a cost of $2,215.00 on executory contract and unexpired lease matters. Time in this category includes time spent reviewing Manchester Leasing Service's motion to set a deadline to reject certain leases and a notice of intent to reject BMO's leases, and reviewing and analyzing lease issues in connection with the same.

**H.     Committee Meetings and Governance                     $5,668.00**

27.    SGR spent 10.5 hours at a cost of $5,668.00 on Committee meetings and governance issues. This category primarily consists of time spent drafting Committee bylaws, conducting Committee meetings regarding open case matters, and communicating with Committee members regarding the same.

**I.     Investigation of Operations                             $3,138.00**

28.    SGR spent 6.2 hours at a cost of $3,138.00 on investigation of the Debtor's pre-petition operations. This category primarily consists of time spent reviewing and investigating the Debtor's assets, reviewing financial statements and other documents produced to the Committee, and evaluating potential estate assets.

**J.     Asset Sales                                            $1,500.00**

29.    SGR spent 3.0 hours at a cost of $1,500.00 on asset sales. This category primarily includes time spent reviewing an appraisal of the Debtor's Virginia equipment and comparing to schedules and reviewing and revising a non-disclosure agreement in connection with the same.

**K.     Schedules and Reports                                  $2,594.50**

30.    SGR spent 5.1 hours at a cost of $2,594.50 on schedules and reports. This category primarily includes time spent reviewing the Debtor's schedules of assets and liabilities and statement of financial affairs and reviewing the same in preparation for the 341 meeting of creditors.

**L.     Travel                                                 $1,825.00**

31.    SGR spent 7.3 hours at a cost of $1,825.00 traveling to and from Cedar Rapids, Iowa for the July 20, 2023 hearing in this case. SGR bills for its travel time at 50% of its hourly rates.

## REASONABLE EXPENSES INCURRED

32. Expenses during the Application Period were incurred in the following categories:

   a. <u>Travel Expenses/Mileage</u>:  SGR incurred costs totaling $546.69 in lodging and mileage expenses in connection with traveling to and from Cedar Rapids, Iowa for the July 20, 2023 court hearing.

   b. <u>Meal and Conference Expenses</u>:  SGR incurred costs totaling $39.16 in meal expenses in connection with SGR to and from Cedar Rapids, Iowa for the July 20, 2023 court hearing.

   c. <u>Miscellaneous</u>:  SGR incurred costs totaling $31.00 in as a service fee in connection with requesting certificates of good standing for SGR attorneys' *pro hac vice* applications.

33. All expenses incurred by SGR in connection with its representation of the Committee were ordinary and necessary expenses.  All expenses billed to the Committee were billed in the same manner as SGR bills non-bankruptcy clients.

34. SGR does not bill its clients or seek compensation in this Application for certain overhead expenses, such as local and long-distance telephone calls, secretarial services, and facsimile transmissions. Such expenses are factored into SGR's hourly rates. SGR has not included certain other charges described herein in its overhead because it has determined that it is fairer to its smaller clients who use proportionately less of these services to have these expenses billed separately.

## BENEFIT TO THE ESTATE

35. SGR has remained active on all matters in its representation of the Committee as counsel during these cases. SGR submits that the services set forth herein benefitted the estates and their creditors by ensuring that the Debtor's assets were properly preserved and administered, and that they gained the highest value under the circumstances to maximize the potential recovery for general unsecured creditors.

**WHEREFORE**, SGR respectfully requests that the Court enter an order:

(a) allowing SGR, on an interim basis, $77,945.00 in compensation for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(b) allowing SGR, on an interim basis, $616.85 in reimbursable expenses for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(c) authorizing payment to SGR of $78,561.85 from the balance of SGR's professional fee carve-out; and

(d) granting such other and further relief as the Court deems just and proper.

Dated: September 14, 2023

**SMITH GAMBRELL & RUSSELL LLP**

By: /s/ Elizabeth L. Janczak
      One of Its Attorneys

Shelly A. DeRousse, Esq.
Elizabeth L. Janczak, Esq.
SMITH GAMBRELL & RUSSELL LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone: 312.360.6000
sderousse@sgrlaw.com
ejanczak@sgrlaw.com

*Counsel for the Official Committee of Unsecured Creditors of Home Products International, Inc. et al.*