## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

| IN RE: | Chapter 11 |
|---|---|
| BDC Group Inc., | Bankruptcy No. 23-00484 |
| Debtor-in-Possession. | CHAPTER 11 REORGANIZATION PLAN |

## ARTICLE I. INTRODUCTION

Under Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**"), BDC Group, Inc. ("**BDC**") (the "**Debtor**") proposes the following Chapter 11 Plan of Reorganization (the "**Plan**"). Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, historical financial information, and liquidation analysis, as well as a summary and description of the Plan.

## ARTICLE II. DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME

2.1   **Definitions**: As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

"**Administrative Expense Claim**" means any right to payment constituting a cost or expense of the Chapter 11 Cases under sections 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estate, any actual and necessary costs and expenses of operating the Debtor's business, any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of their business or liquidation of their assets, any Professional Fee Claim, and any fees or charges assessed against the Estate under section 1930 of Title 28 of the United States Code.

"**Allowed**" means, with respect to any Claim, the Claim or portion thereof that is not a Disputed Claim or Disallowed Claim (a) for which a Proof of Claim was timely Filed with the Bankruptcy Court, and as to which no Claims Objection is interposed; (b) for which no Proof of Claim thereof was Filed, to the extent that such Claim has been listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent as to liability, and as to which no Claims Objection is interposed; (c) which arises from the recovery of property under sections 550 or 553 of the Bankruptcy Code and is allowed in accordance with section 502(h) of the Bankruptcy Code; (d) which is allowed under the Plan; or (e) which is allowed by a Final Order.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

"**Allowed Administrative Expense Claim**" means an Administrative Expense Claim that is Allowed.

"**Allowed Claim**" means a Claim that is Allowed.

"**Allowed General Unsecured Claim**" means a General Unsecured Claim that is Allowed.

"**Allowed Priority Tax Claim**" means a Priority Tax Claim that is Allowed.

"**Allowed Professional Fee Claim**" means a Professional Fee Claim that is Allowed.

"**Allowed Secured Claim**" means a Secured Claim that is Allowed.

"**Assumed Contracts**" means those Executory Contracts and unexpired leases of the Debtor assumed under Article VII of this Plan.

"**Attributable Attorney Fees**" means the portion of a Secured Creditor's attorney fees allocated *pro rata* by collateral value to a Secured Claim. If a Secured Creditor only has one Secured Claim, then its Attributable Attorney Fees will equal its attorney fees. For example, if a Secured Creditor had two Claims, one for $50,000.00 secured by collateral worth $40,000.000 and one Claim of $60,000.00 secured by collateral worth $70,000.00, and its attorney fees totaled $10,000.00, it would attribute $4,000.00 to the first Secured Claim and $6,000.00 to the second Secured Claim.

"**Avoidance Claims**" means all rights, claims, Causes of Action, or rights to avoid any transfer or incurrence of debt that may be asserted or recovered by the Debtor in its capacity as debtor-in-possession under Chapter 5 of the Bankruptcy Code.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Iowa.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Case.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" means, without limitation, all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, in law, equity, or otherwise.

"**Chapter 11 Case**" or "**Case**" means the chapter 11 case commenced by the Debtor.

"**Claims Register**" means the official register of Claims against and Interests in the Debtor.

"**Class**" means a class of Claims or Interests as classified under this Plan.

"**Collateral**" means any property or interest in property of the Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

"**Confirmation**" means entry of the Confirmation Order by the Bankruptcy Court.

"**Confirmation Hearing**" means the duly noticed hearing held by the Bankruptcy Court to consider Confirmation of the Plan under section 1128 of the Bankruptcy Code, including any continuances thereof.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

"**Consummation**" means the occurrence of the Effective Date.

"**DIP Credit Agreement**" means that certain Debtor-in-Possession Credit Agreement, effective as of June 13, 2023 by and among the Debtor and Keystone Savings Bank, and all exhibits, amendments, including amendments made in this Plan, and supplements thereto, and all "Loan Documents" as defined therein.

"**DIP Facility**" means the debtor-in-possession financing provided to the Debtor during the Chapter 11 Case under the DIP Credit Agreement.

"**Disallowed**" means, when referring to a Claim, a Claim or any portion thereof, that (a) has been disallowed or expunged, in whole or in part, by a Final Order; (b) has been withdrawn by agreement between the Debtor and the holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the holder thereof; (d) is listed in the Schedules as zero or as disputed, contingent, or unliquidated and in respect of which a Proof of Claim has not been timely Filed or deemed timely Filed under the Plan, the Bankruptcy Code, or any Final Order; (e) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination, or estimation results in a reduction in the Filed amount of any Proof of Claim; or (f) is evidenced by a Proof of Claim which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court, or which is required to be Filed by order of the Bankruptcy Court, but as to which such Proof of Claim was not timely or properly Filed. In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

"**Disallowed Claim**" means a Claim that is Disallowed.

"**Disclosure Statement**" means the disclosure statement for the Plan, as it may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), or 1145 of the Bankruptcy Code or Bankruptcy Rule 3018.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

"**Disputed Claim**" means any Claim as to which a Claims Objection is pending, Filed, or contemplated[1] by the Debtor or the Reorganized Debtor, as applicable.

"**Distribution**" means any payment of Cash or issuances of ownership interests in any Reorganized Debtor called for under the Plan.

"**Effective Date**" means the first day after the conditions to effectiveness of the Plan provided in Section 9.1 below have been satisfied.

"**Estate**" means the Debtor's estate created in this Chapter 11 Case under section 541 of the Bankruptcy Code.

"**Executory Contract**" means a contract to which the Debtor is party that is considered an executory contract under the Bankruptcy Code and applicable case law.

"**Federal Judgment Rate**" means the interest rate provided for in 28 U.S.C. § 1961(a)."**File**" or "**Filed**" means file or filed on the Claims Register or the docket of the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

"**Final DIP Order**" means the Final Order approving the DIP Facility.

"**Final Order**" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing, in form and substance, satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

"**General Unsecured Claim**" means any unsecured Claim other than a Priority Tax Claim, Priority Non-Tax Claim, or Administrative Expense Claim.

"**Interest**" means any equity or ownership interests in and with respect to the Debtor, including any warrants, options, or contract rights to purchase or acquire such interests at any time.

"**Liquidating Trust**" means the trust established pursuant to Section 5.20 of this Plan.

---

1. To be contemplated means that the intent to object to the Claim is to be set forth in writing in the Plan or the Claim is marked as "Disputed" on Debtor's Schedules of Assets and Liabilities.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

"**Lists of Holders of Interests**" means the sole owner of the Debtor as of the date this Plan was filed, Dennis Bruce as well as any equity security holders and any amendments thereto the Debtor Filed in accordance with Bankruptcy Rule 1007.

"**Petition Date**" means June 13, 2023.

"**Plan**" means this Chapter 11 plan, either in its present form or as the same may be altered, amended, or modified from time to time, and including the Plan Supplement.

"**Plan Sponsor**" means Building Diverse Communications Group, LLC[2] or its successor or assignee.

"**Plan Sponsor New Equity Interest**" means 100% of the new equity interests of the Reorganized Debtor issued to the Plan Sponsor under Article VIII 8.6a below.

"**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to be Filed on or before 7 days prior to the Confirmation Hearing.

"**PMSI**" means purchase-money security interest as defined in Iowa Code § 554.9103.

"**Priority Non-Tax Claim**" means any Claim entitled to priority under section 507(a)(1), (4), (5), (6), or (7) of the Bankruptcy Code.

"**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professional Fee Claim**" means a Claim for Professional Fees.

"**Professional Fees**" shall have the meaning set forth in Section 3.03 of this Plan.

"**Professionals**" means the professionals retained by the Debtor under Bankruptcy Code sections 327 or 1103 and to be compensated under Bankruptcy Code sections 327, 328, 330, 331, or 503(b)(2), (4), or (5).

"**Proof of Claim**" means a proof of claim Filed in connection with any of the Chapter 11 Cases.

"**Reorganized Debtor**" means the Debtor as reorganized as of the Effective Date.

"**Schedules**" means, collectively, the Schedules of Assets and Liabilities, the List of Holders of Interests, and the Statement of Financial Affairs.

---

2. Building Diverse Communications Group, LLC is an Iowa Limited Liability Company organized by Candace Bruce.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

"**Schedules of Assets and Liabilities**" means the schedules of assets and liabilities and any amendments thereto the Debtor Filed in accordance with Bankruptcy Rule 1007.

"**Secured Claim**" means a Claim that is secured by a Lien on property in which the Debtor's Estate has an interest, which Lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined under section 506(a) of the Bankruptcy Code.

"**Statements of Financial Affairs**" means the statement of financial affairs and any amendments thereto the Debtor Filed in accordance with Bankruptcy Rule 1007.

"**Unimpaired**" means a Claim, Interest, or Class thereof that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"**U.S. Trustee**" means the Office of the United States Trustee of the Northern District of Iowa.

2.2 **Rules of Interpretation:** Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

2.3 **Computation of Time:** In computing any period of time prescribed or Allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

## ARTICLE III. TREATMENT OF UNCLASSIFIED CLAIMS

3.1 **Administrative Expense Claims:** Any party who claims to hold an Administrative Expense Claim (other than a Claim for Professional Fees) must File a motion seeking allowance of such Administrative Expense Claim on no later than 28 days after the Effective Date, regardless of whether or not such party has previously asserted an Administrative Expense Claim in a Proof of Claim. Except to the extent any Entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Claim for Professional Fees) shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim by the later of either (i) the Effective Date or as soon thereafter as is reasonably practicable, or (ii) the date that is 14 days after the Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

3.2   **DIP Facility Claim:** The terms of the DIP Credit Agreement will continue in full force and effect after the Effective Date subject to only the following modifications and amendments:

- The Reorganized Debtor hereby ratifies, affirms, and approves the DIP Credit Agreement in full, and agrees to be bound thereby to the same extent as the Debtor and as if the Reorganized Debtor was the "Debtor" and "Borrower" as defined therein and an original party to the DIP Credit Agreement. Every reference to "Debtor" and "Borrower" in the DIP Credit Agreement includes the Reorganized Debtor.

- "Maturity Date" is deleted and revised to mean "the earliest of (a) November 1, 2024; (b) the consummation of a sale(s) of all or substantially all of the assets of the Debtor; (c) the occurrence of an Event of Default; and (d) such later date as the DIP Lender may agree in its sole discretion to in writing with the Borrower."

- The definitions for "Carve-Out" and "Professional Fee Escrow" and "Professional Fee Escrow Account" are deleted and all references to "Carve-Out" and "Professional Fee Escrow" and "Professional Fee Escrow Account" shall be ignored and treated as if the same were omitted from the DIP Credit Agreement.

- The "Change of Control" contemplated by this Plan shall not constitute an Event of Default, provided, however, that the Plan Sponsor and each parent company (if applicable) and eventual individual owner of the Plan Sponsor shall provide their unlimited commercial guarantees of the Obligations under the DIP Credit Agreement to the DIP Lender as of the Effective Date.

- Paragraph 8(a) with respect to Remedies is deleted and revised to state "Upon the occurrence and during the continuance of any Event of Default the DIP Lender may provide written notice to the Borrower and if the Borrower has not cured such Event of Default within ten (10) business days from the date of such written notice, the DIP Lender may declare the principal amount of the Advances made under this Agreement, together with any interest thereon, to be due and payable, and the principal amount of the Advances made under this Agreement, together with any such interest and all other amounts and Obligations due and owing by Debtor under this Agreement and the Loan Documents, shall thereupon immediately become due and payable

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

without presentment, further notice, protest or other requirements of any kind, all of which are hereby expressly waived by the Borrower."

- Additional and executed "Loan Documents" will be provided to the DIP Lender under Paragraph 15 as of the Effective Date.

- "DIP Collateral" is revised to mean "any and all of Debtor's right, title and interest in all real and personal property of the Debtor and its estate existing as of the Petition Date or acquired after the Petition Date, including, without limitation, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, whether titled or not titled, including, without limitation, all permits, contracts, management agreements, general intangibles, permits, licenses, statutory entitlements, instruments, equipment, vehicles, accounts, and documents, all goods, inventory and fixtures, all documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, claims (including all commercial tort claims), causes of action, money, insurance, receivables, receivables records, deposit accounts, contract rights, payment intangibles, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, tradenames and other intellectual property, all equity interests, all books and records relating to the foregoing, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of Iowa and where applicable the Bankruptcy Code).

- "DIP Order" is revised to clarify scope that includes the Confirmation Order for purposes of the modifications and amendments in this Plan Section 3.2.

These modifications and amendments apply prospectively and without change or alteration to rights or provisions existing under the DIP Credit Agreement prior to the Effective Date. The continuation of the DIP Credit Agreement and Advances available thereunder will not be used by the Reorganized Debtor in a manner inconsistent with the provisions of this Plan.

Within thirty (30) days of the Effective Date, Keystone Savings Bank will provide a statement showing the balance of the DIP Facility Claim as of the Effective Date, which shall be deemed to be an Allowed Claim, and the amount of the DIP Facility Claim attributable to the Professional Fee Escrow. The Reorganized Debtor will separately account and continue to collect receivables arising between the Petition Date and Effective Date and apply collections towards payment of the DIP Facility Claim. Any other DIP Collateral or equity in DIP Collateral that was unencumbered by the Debtor as of the Petition Date or that arose after the Petition Date (new assets and not proceeds of prepetition assets) but before the Effective Date may also be liquidated and applied towards payment of the DIP Facility Claim, consistent with the rights of Keystone Savings Bank under the DIP Credit Agreement.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

Notwithstanding Liens already existing against general intangibles, Keystone Savings Bank will retain its Lien on any Avoidance actions, including all proceeds, settlements, recoveries, and property preserved or transferred in relation to the same, for the amount of the DIP Facility Claim attributable to the Professional Fee Escrow until the DIP Facility Claim is paid in full.

3.3 **Professional Fee Claims:** All Professionals seeking payment of Professional Fees or reimbursement of expenses incurred through and including the Effective Date under section 330 of the Bankruptcy Code must File their respective final applications no later than 45 days after the Effective Date. Except to the extent that the holder of a Professional Fee Claim agrees to different treatment, each holder of an Allowed Professional Fee Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Claim as soon as practicable after such Claim is Allowed by the Bankruptcy Court.

3.4 **Post-Effective Date Professional Fees:** From and after the Effective Date, the Reorganized Debtor shall pay in Cash the reasonable fees and expenses incurred by the Reorganized Debtor's respective professionals, if any, without any further notice to or action, order or approval of the Bankruptcy Court. For the avoidance of doubt, following the Effective Date, any requirement that a Professional comply with sections 327 through 331 of the Bankruptcy Code in seeking compensation for services rendered to the Debtor after such date shall terminate.

3.5 **Priority Tax Claims:** Except to the extent a holder of an Allowed Priority Tax Claim agrees to different treatment, the holder of such Claim shall receive from the Reorganized Debtor three equal annual payments starting two years after the Petition Date in amounts sufficient to fully pay those claims with interest at the rate defined in section 511 of the Bankruptcy Code.

3.6 **Statutory Fees:** On the Effective Date, the Debtor shall make all payments required to be paid to the U.S. Trustee under section 1930 of Title 28 of the United States Code. All fees payable under section 1930 of Title 28 of the United States Code after the Effective Date shall be paid by the Reorganized Debtor on a quarterly basis until the Chapter 11 Case is closed, converted, or dismissed.

## ARTICLE IV. DESIGNATION OF CLASSES

4.1 **General Rules:** Unless otherwise specified—

a. All undersecured claims are bifurcated under 11 U.S.C. § 506(a)(1), and the unsecured portions of bifurcated claims are treated under as General Unsecured Claims.

b. All adequate protection payments made before the Effective Date will be applied to principal.

c. If Debtor or the Reorganized Debtor is retaining a Secured Creditor's Collateral the Secured Creditor will retain its Lien on the retained Collateral until the debt that Collateral secures is paid off or the Lien is released. Upon repayment of the

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

debt the retained Collateral secures the Secured Creditor will release the Lien. For the avoidance of doubt, Liens retained for PMSI Secured Claims outside of Class 1 and Class 2 are exclusive of cross collateralization for other non-PMSI debt.

d.  If a Secured Creditor has multiple Secured Claims and at least one of them is oversecured then the Secured Creditor will attribute its Attributable Attorney Fees to each Secured Claim and may recover them only to the extent each Secured Claim is oversecured.

e.  "**10-Year Interest Rate**" means the 10-year Treasury bond rate on the date this Plan is filed, adjusted to constant maturity, plus 1.00%. *See In re Topp*, 75 F.4th 959 (8th Cir. 2023); *United States v. Doud*, 869 F.2d 1144 (8th Cir. 1989).

f.  All Classes are Impaired and entitled to vote to accept or reject this Plan.

g.  Collateral that is shaded gray in the table describing the treatment of a creditor's claim has been or is being turned over to the secured creditor for liquidation.

4.2 **PMSI Secured Claim General Treatment:** Unless otherwise stated PMSI Secured Claims will be treated in one of two general ways described below:

a.  **Type A:** The Class is oversecured. For any Collateral the Reorganized Debtor is not retaining the Creditor will sell the Collateral or collect applicable insurance proceeds. It will pay its costs of sale and then apply the net sale proceeds to the outstanding balance of each individual note or loan. Any excess funds after repaying the prepetition claim will first be applied to postpetition interest and Attributable Attorney Fees for the specific note. Any excess proceeds after this will be paid to Keystone Savings Bank for application to the DIP Facility or its Class 1 Claim. The Reorganized Debtor will repay the remaining loan balance, plus postpetition interest and Attributable Attorney Fees up to the Collateral Value, minus any adequate protection payments made, net sale proceeds applied, and insurance proceeds paid. On the Effective Date this debt will be reamortized over 10 years at the 10-Year Interest Rate, with payments due the first of each month starting with the month after the Effective Date. Any post-Effective Date application of net sale proceeds or insurance proceeds will cause the payments due to decrease as the remaining principal will be reamortized over the remaining term.

b.  **Type B:** The Class is undersecured. For any Collateral the Reorganized Debtor is not retaining the Creditor will sell the Collateral or collect applicable insurance proceeds. It will pay its costs of sale and then apply the net sale proceeds to the outstanding balance on the debt. The Reorganized Debtor will repay the value of the Collateral it is retaining minus any adequate protection payments made. On the Effective Date this debt will be reamortized over 10 years at the 10-Year Interest Rate, with payments due the first of each month starting with the month after the Effective Date.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

4.3  **Classification:** Claims and Interests are classified for all purposes, including voting, Confirmation, and Distribution under the Plan, as shown below:

| Class # | Class Designation | Brief Collateral Description | Treatment Summary |
|---|---|---|---|
| 1 | Keystone Savings Bank | POC 77, blanket security interest plus PMSIs in specific equipment. | Term Out |
| 2 | U.S. SBA | POC 92, blanket security interest | Term Out |
| 3 | Ally Bank | POCs 4 & 5, PMSIs in specific equipment | Type B |
| 4 | Bank of America, N.A. | POC 3, PMSIs in specific equipment | Type A |
| 5 | Caterpillar Fin. Svcs. Corp. | POC 33, PMSIs in specific equipment | Type A |
| 6 | Ditch Witch Fin. Svcs. | POC 59, PMSIs in specific equipment | Type B |
| 7 | ECICOG | POC 32, PMSIs in specific equipment | Type A |
| 8 | GreenState Credit Union | POCs 81–84, PMSIs in specific equipment | Type A |
| 9a | Deere Oversecured Collateral | POCs 24, 25, and 27, PMSIs in specific equipment | Type A |
| 9b | Deere Undersecured Collateral | POCs 28–31, PMSIs in specific equipment | Type B |
| 10a | Manchester Oversecured Collateral | POCs 46–54, PMSIs in specific equipment | Type A |
| 10b | Manchester Undersecured Collateral | POC 55, PMSIs in specific equipment | Type B |
| 11 | Marlin Business Bank | Office furniture | Extinguished |
| 12 | GreatAmerica Financial Services | POC 56, PMSIs in specific equipment | Surrender |
| 13 | Fully Undersecured Non-PMSI Creditors | Blanket security interests | Unsecured Class |
| 14 | Prepetition Wage & Benefit Claims | NA | Pay in the ordinary course of business as they arise. |

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

| Class # | Class Designation | Brief Collateral Description | Treatment Summary |
|---------|-------------------|------------------------------|-------------------|
| 15 | Critical Vendor Prepetition Claims | NA | Pay as agreed |
| 16 | General Unsecured Claims | NA | Paid from Liquidating Trust |
| 17 | Interests in Debtor | NA | Extinguished |

## ARTICLE V. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.1** **Class 1: Keystone Savings Bank's Claim**

a. **Class Description:** Keystone Savings Bank loan numbers 1234697402 & 2317107901, which it acquired from F&M Bank (F&M Bank loan numbers 300020246 & 300020255), and Keystone Savings Bank's Loan #301683.

b. **Claim Amount:** $3,081,954.64 plus postpetition interest ($105,814.86 through November 1, 2023), costs, and Attributable Attorney Fees (estimated at $50,000.00).

c. **Collateral:** Blanket security interest in all prepetition collateral pledged by BDC in various security agreements, as well as titled vehicles noted below. The Class 1 priority position is senior to all other Claims and Liens, except it is junior to certain PMSIs and Keystone Savings Bank's DIP Facility. Collateral includes without limitation:

| Description | VIN/SN | POC # |
|-------------|--------|-------|
| Ditch Witch AT40 and accessories | DWPAT40AVN0000014 | 77 |
| Ditch Witch MR90 Mud Reclaimer | CMWMR90XLF0000049 | 77 |
| Falcon Receiver Locator | 30190868 | 77 |
| MV800 Vacuum | DWPMV800TM0000835 | 77 |
| 2015 Ditch Witch T14R | 1DSB122X1F1701849 | 77 |
| 2010 Toyota Tundra Double Cab | 5TFUW5F1XAX112293 | 77 |
| 2017 Chevrolet Silverado | 1GC1KUEG7HF114968 | 77 |
| 2017 Toyota Tundra Double Cab | 5TFUW5F19HX676236 | 77 |
| 2018 Ram Promaster 2500 | 3C6TRVDG6JE124720 | 77 |
| 2018 Ram Promaster 2500 | 3C6TRVDG2JE116212 | 77 |

All accounts and other rights to payment, inventory, equipment, instruments and chattel paper, general intangibles, documents, government payments and programs, investment property, and deposit accounts. The foregoing specifically includes the Debtor's unearned prepetition retainer with Ag. & Business Legal Strategies and all inchoate interests in avoidance actions. *See In re Simply Essentials, LLC*, 78 F.4th 1006, 1009 (8th Cir. 2023) ("[T]he debtor has an inchoate interest in the avoidance actions prior to the commencement of the bankruptcy proceedings.")

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

d. **Collateral Value:** The Debtor asserts the value of the collateral securing this Class's claim is ~$3.4 million and therefore this claim is oversecured.

e. **Treatment:** On the Effective Date (or before if authorized by Bankruptcy Court order) Keystone Savings Bank will apply all the collected prepetition accounts receivable held in Debtor's Keystone Savings Bank account with account number 5002661 (approximately $721,230.85) to this debt. This application and other payments on the Class 1 claim, except as otherwise noted, will be evenly split among and accounted for on the three loans that make up the Class 1 claim. If any single loan in the Class 1 claim is repaid in advance of others, further payments will be evenly split between and accounted for on the remaining loans in the Class 1 claim, and so on, until the Class 1 claim is repaid in full.

Starting 30 days after the Effective Date the Reorganized Debtor shall make 12 monthly payments of interest only until the first anniversary of the Effective Date. On the first anniversary of the Effective Date, a principal payment of 10% of the principal balance shall be due. Thereafter, the remaining balance shall be amortized in equal quarterly payments for nine years, with final maturity on the tenth anniversary of the Effective Date. Any provisions in the notes or related documents regarding maturity or renewal are modified by the terms of these plan provisions and are extended accordingly. All terms of the notes and related documents not modified herein will remain in full force and effect. For the avoidance of doubt, the Reorganized Debtor shall have the right to pre-pay any of the loans making up Class 1 in whole or in part at any time and without pre-payment penalty.

Keystone Savings Bank will sell the AT40 and accessories, the MR90 Mud Reclaimer, the Falcon Receiver Locator, MV800 Vacuum, and the 2015 Ditch Witch T14R or collect applicable insurance proceeds. It will pay its costs of sale and then apply the net sale proceeds to the outstanding balance of loan #301683. Proceeds from other equipment or vehicle collateral sales will be applied evenly to the Class 1 claim as noted above.

As of the Effective Date Debtor will assign Keystone Savings Bank all prepetition accounts receivable and retainage claims and Causes of Action, including the pending lawsuit against MidAmerican Energy to collect on a prepetition account receivable. Keystone Savings Bank will use reasonable efforts to investigate and collect assigned claims and Causes of Action and will apply those collections, net of collection costs, to this Class 1 debt. Claims assigned to Keystone Savings Bank may be venued in the Bankruptcy Court which, once venued, shall hold and retain exclusive jurisdiction to adjudicate those claims and any claims, theories, or defenses related thereto. Any agreements or statements to the contrary are modified by this Plan, along with the elimination of any provision that prohibits claim assignment or provides for the recovery of attorney or legal fees (whether directly, through indemnification, or otherwise). As the net collections are applied to the note, the payments due under the notes will decrease as the remaining principal will be reamortized over the remaining term of the notes. Debtor and Reorganized Debtor will fully co-

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

operate with Keystone Savings Bank's collection efforts and will provide documents and take such other action necessary to comply with Keystone Savings Bank's reasonable requests.

The loan guaranty from the U.S. Small Business Administration (75.00%) existing with respect to Keystone Savings Bank loan numbers 1234697402 & 2317107901 (F&M Bank loan numbers 300020246 & 300020255) will continue with respect to those loans and modified terms in this Class 1 Claim. Any collections on assigned claims, net of collection costs, that Keystone Savings Bank obtains above the value its Class 1 Claim will be remitted and applied to the SBA's Class 2 Claim.

## 5.2   **Class 2: U.S. Small Business Administration**

a. **Class Description:** U.S. Small Business Administration Secured Claim as shown on Proof of Claim 92.

b. **Claim Amount:** $521,293.83.

c. **Collateral:** Junior position to Claim 1 on all accounts and other rights to payment, inventory, equipment, instruments and chattel paper, general intangibles, documents, government payments and programs, investment property, and deposit accounts. The foregoing specifically includes the Debtor's unearned prepetition retainer with Ag & Business Legal Strategies and all inchoate interests in avoidance actions. *See In re Simply Essentials, LLC*, 78 F.4th 1006, 1009 (8th Cir. 2023) ("[T]he debtor has an inchoate interest in the avoidance actions prior to the commencement of the bankruptcy proceedings.")

d. **Collateral Value:** The Debtor asserts the value of the collateral securing this Class's claim is $150,037.54 and therefore this claim is partly secured.

e. **Treatment:** The Reorganized Debtor shall make monthly payments of interest only at the contract rate of 3.75% until the first anniversary of the Effective Date. Thereafter, the remaining balance shall be amortized in equal monthly payments with final maturity on December 31, 2050. The Debtor estimates the interest only payments to be $593.60/month and the amortized payments beginning after the interest only payments to be $734.46/month. The Reorganized Debtor may liquidate its equipment that is subject to SBA's security interest provided the proceeds are used to pay liquidation costs, security interests senior to the U.S. SBA's interest, or the U.S. SBA's claim. Any provisions in the notes or related documents regarding maturity or renewal are modified by the terms of these plan provisions and are extended accordingly. All terms of the notes and related documents not modified herein will remain in full force and effect. For the avoidance of doubt, the Reorganized Debtor shall have the right to pre-pay any of the loans making up Class 2 in whole or in part at any time and without pre-payment penalty.

Payments made or recoveries transferred to the U.S. SBA from Keystone Savings Bank as outlined in Class 1 above will be remitted and applied to the SBA's Class 2 claim. As the net collections are applied to the note, the payments due under the

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

note will decrease as the remaining principal will be reamortized over the remaining extended term of the note.

5.3  **Class 3: Ally Bank**

a.  **Class Description:** Ally Bank's PMSI Secured Claim as shown on Proofs of Claim 4 & 5.

b.  **Claim Amount:** $90,173.05.

c.  **Collateral:**

| Description | VIN/SN | POC # |
|---|---|---|
| 2022 GMC Canyon | 1GTG6FEN1N1330347 | 4 |
| 2022 GMC Canyon | 1GTG6CEN7N1281475 | 5 |

d.  **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $59,636.00 and therefore this Claim, and each individual Claim that comprises it, is undersecured.

e.  **Treatment:** Type B.

5.4  **Class 4: Bank of America**

a.  **Class Description:** Bank of America N.A.'s PMSI Secured Claim as shown on Proof of Claim 3.

b.  **Claim Amount:** $35,183.96 plus postpetition interest, costs, and Attributable Attorney Fees.

c.  **Collateral:**

| Description | VIN/SN | POC # |
|---|---|---|
| 2021 GMC Sierra 2500 | 1GT49REY5MF123533 | 3 |

d.  **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $48,563.00 and therefore this Claim is oversecured.

e.  **Treatment:** Type A.

5.5  **Class 5: Caterpillar Financial Services Corp.**

a.  **Class Description:** Caterpillar Financial Services Corp.'s PMSI Secured Claim as shown on Proofs of Claim 33.

b.  **Claim Amount:** $23,498.71 plus postpetition interest, costs, and Attributable Attorney Fees.

c.  **Collateral:**

| Description | VIN/SN | POC # |
|---|---|---|
| 2017 Cat TH255C Telehandler | JK200447 | 33 |
| Trail King TKT16U Trailer | 1TKU02827LR072082 | 33 |
| Trail King TKT16U Trailer | 1TKU02829LR072083 | 33 |

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

| Trail King TKT16U Trailer | 1TKU02820LR072084 | 33 |
| Trail King TKT16U Trailer | 1GC1KUEG7HF114968 | 33 |

d. **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $74,831.70 and therefore this Claim, and each individual Claim that comprises it, is oversecured.

e. **Treatment:** Type A.

5.6 **Class 6: Ditch Witch Financial Services**

a. **Class Description:** Ditch Witch Financial Services' PMSI Secured Claim as shown on Proof of Claim 59.

b. **Claim Amount:** $127,712.05.

c. **Collateral:**

| Description | VIN/SN | POC # |
| --- | --- | --- |
| Ditch Witch JT20 Drill | DWPJT20BPM0000746 | 59 |
| Felling FT-24 Trailer | 5FTCE2923J2000763 | 59 |
| FM13X | DWPFM13XCM0001565 | 59 |
| Tracker | 8482804 | 59 |
| Display | 8483458 | 59 |
| Beacon | 8483158 | 59 |

d. **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $30,750.00 and therefore this Claim is undersecured.

e. **Treatment:** Type B.

5.7 **Class 7: East Central Iowa Council of Governments**

a. **Class Description:** East Central Iowa Council of Governments' PMSI Secured Claim as shown on Proof of Claim 32.

b. **Claim Amount:** $209,752.98, plus postpetition interest, costs, and Attributable Attorney Fees.

c. **Collateral:**

| Description | VIN/SN | POC # |
| --- | --- | --- |
| 2018 Dodge RAM 3500 | 3C7WRTCL6JG362728 | 32 |
| 2018 Dodge RAM 3500 | 3C7WRTCL0JG294961 | 32 |
| 2018 Dodge RAM 5500 | 3C7WRNFL3JG317639 | 32 |
| 2018 Dodge RAM 2500 | 3C6UR5CL6JG332586 | 32 |
| 2018 Dodge RAM 2500 | 3C6UR5CL8JG332587 | 32 |
| 2018 Dodge RAM 3500 | 3C7WRTCL9JG414384 | 32 |
| 2018 Dodge RAM 5500 | 3C7WRNFL9JG361905 | 32 |
| 2018 Dodge RAM 5500 | 3C7WRNFL1JG321382 | 32 |
| 2018 Dodge RAM 5500 | 3C7WRNFL6JG320437 | 32 |

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

d. **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $355,284.00 and therefore this Claim is oversecured.

e. **Treatment:** Type A.

5.8  **Class 8: GreenState Credit Union**

a. **Class Description:** GreenState Credit Union's PMSI Secured Claims as shown on Proofs of Claim 81–84.

b. **Claim Amount:** $214,102.69, plus postpetition interest, costs, and Attributable Attorney Fees.

c. **Collateral:**

| Description | VIN/SN | POC # |
|---|---|---|
| XAVS400 Compressor System | XAVS400 | 81 |
| Toyota 8FGU25 Warehouse Forklift | 52481 | 81 |
| 160 Roose Reel Cable Trailer RR | 595YC1113KM000325[3] | 81 |
| Various other collateral | Various | 81 |
| 2020 Dodge Ram 2500 Crew Cab Big Horn | 3C6UR5CL4LG104301 | 82 |
| 2019 Dodge Ram 1500 4WD Quad Cab | 1C6RR7FT7KS619362 | 82 |
| 2019 Dodge Ram 1500 4WD Quad Cab | 1C6RR7FT5KS599953 | 82 |
| 2020 Ram 3500 Tradesman Crew Cab | 3C63RGLXLG184522 | 83 |
| 2020 Ram 3500 Tradesman Crew Cab | 3C63R3GL0LG154879 | 83 |
| 2020 Ram 3500 Tradesman Crew Cab | 3C63R3CL0LG129079 | 83 |
| 2019 Dodge Ram 4WD Crew Cab | 3C6UR5HL3KG707747 | 84 |
| 2019 Dodge Ram 2500 4WD Crew Cab | 3C6UR5HL0KG640976 | 84 |
| 2019 Dodge Ram 1500 4WD Crew Cab | 3C6RR7KT9KG725292 | 84 |

d. **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $391,530.00 and therefore this Claim, and each individual Secured Claim that comprises it, is oversecured.

e. **Treatment:** Type A.

5.9  **Class 9a: John Deere Construction & Forestry Co. Oversecured Collateral**

a. **Class Description:** John Deere's PMSI Secured Claims as shown on Proofs of Claim 24, 25, and 27.

---

3. Proof of Claim 81 has a typo in the last digit of this VIN, saying it is an 8 instead of a 5. The VIN check digit confirms 5 is correct.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

b. **Claim Amount:** $53,262.56, plus postpetition interest, costs, and Attributable Attorney Fees.

c. **Collateral:**

| Description | VIN/SN | POC # |
|---|---|---|
| 2020 John Deere 35G Compact Excavator | 1FF035GXCLK289466 | 24 |
| 2019 John Deere 35G Compact Excavator | 1FF035GXHKK287568 | 25 |
| John Deere Hyd Thumb | 1000011 | 25 |
| 2020 John Deere 17G Compact Excavator | 1FF017GXCLK230189 | 27 |
| 2020 John Deere 17G Compact Excavator | 1FF017GXLKK229815 | 27 |

d. **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $98,840.00 and therefore this Claim, and each individual Secured Claim that comprises it, is oversecured.

e. **Treatment:** Type A.

5.10 **Class 9b: John Deere Construction & Forestry Co. Undersecured Retained Collateral**

a. **Class Description:** John Deere's PMSI Secured Claims as shown on Proofs of Claim 28–31.

b. **Claim Amount:** $97,523.35.

c. **Collateral:**

| Description | VIN/SN | POC # |
|---|---|---|
| 2020 BIG-TEX 14LX Trailer | 16V1D1625M5009202 | 28 |
| 2020 BIG-TEX 14LX Trailer | 16V1D2120M5017723 | 28 |
| 2021 John Deere 35G Compact Excavator | 1FF035GXCMK293453 | 29 |
| 2021 BIGTOW Trailer, Model B6DT | 4KNBF2322ML161316 | 29 |
| 2021 John Deere 35G Compact Excavator | 1FF035GXTLK290411 | 30 |
| 2021 BIGTOW Trailer, Model B6DT | 4KNBF2325ML160614 | 30 |
| John Deere Hyd Thumb | 1000522 | 30 |
| TAG 18 inch Bucket | 327635-2 | 30 |
| 2021 John Deere 35G Compact Excavator | 1FF035GXJLK290512 | 31 |
| 2021 BIGTOW Trailer, Model B6DT | 4KNBF2328ML160560 | 31 |
| John Deere Hyd Thumb | 1000429 | 31 |
| TAG 18 inch Bucket | 324223-4 | 31 |

d. **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $100,725.00. However, this is barely more than the claim amount, and liquidation costs alone would eliminate any equity. Moreover, the three items

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

in red above were stolen postpetition, and the insurance deductibles eliminate any equity as well. Therefore, this Claim, and each individual Claim that comprises it, is undersecured.

    e.  **Treatment:** Type B.

5.11 <u>**Class 10a: Manchester Leasing Services, Inc. Oversecured Collateral**</u>

    a.  **Class Description:** Manchester Leasing Services, Inc.'s PMSI Secured Claims as shown on Proofs of Claim 45–54.

    b.  **Claim Amount:** $17,462.16, plus postpetition interest, costs, and Attributable Attorney Fees.

    c.  **Collateral:**

| Description | VIN/SN | POC # |
|---|---|---|
| 2018 Lane LRG 1008 Trailer | 1L9LF2720JG321747 | 45 |
| 2019 Ditch Witch VT20 | 1DST722L8K1701535 | 46 |
| 2019 Ditch Witch VT20 | 1DST722L8K1701552 | 47 |
| 2018 Lane LMH1920 Trailer | 1L9LR1318JG321784 | 48 |
| 2020 Lane LRG 1008 Trailer | 1L9LR1313LG321100 | 49 |
| 2020 Lane LRG 1008 Reel Trailer | 1L9LR1319LG321120 | 50 |
| 2020 Lane LRG 1008 Trailer | 1L9LR1314LG321154 | 51 |
| 2020 Lane LRG 1008 Trailer | 1L9LR1316LG321155 | 52 |
| 2020 Lane LRG 1008 Reel Trailer | 1L9LR1318LG321156 | 53 |
| 2018 Felling FT-40 Trailer | 5FTCF3727J1002169 | 54 |

    d.  **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $52,115.00 and therefore this Claim, and each individual Secured Claim that comprises it, is oversecured. The Debtor objects to the valuations Manchester Leasing Services, Inc. gave to its collateral on its proofs of claim to the extent those values exceed the values listed on Debtor's Schedules and Liquidation Analysis.

    e.  **Treatment:** Type A.

5.12 <u>**Class 10b: Manchester Leasing Services, Inc. Undersecured Collateral**</u>

    a.  **Class Description:** Manchester Leasing Services, Inc.'s PMSI Secured Claim as shown on Proof of Claim 55.

    b.  **Claim Amount:** $47,087.22.

    c.  **Collateral:**

| Description | VIN/SN | POC # |
|---|---|---|
| 2013 Toyota 7FGU45 Forklift | 7FGAU50-71140 | 55 |

    d.  **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $18,000.00 and therefore this Claim is undersecured. The Debtor

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

objects to the valuations Manchester Leasing Services, Inc. gave to its collateral on its proofs of claim to the extent those values exceed the values listed on Debtor's Schedules and Liquidation Analysis.

e. **Treatment:** Type B.

5.13 **Class 11: Marlin Business Bank**

a. **Class Description:** Alleged secured claim of Marlin Business Bank as evidenced by Iowa UCC-1 financing statement X21038238-5.

b. **Claim Amount:** Unknown—no POC filed.

c. **Collateral:** Office Furniture, as listed on quote date 4/5/21, and all replacements, substitutions, accessories, accessions, add-ons, and all proceeds and accounts of the debtor arising out of or related to the foregoing.

d. **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $0.00 and therefore this Claim is undersecured.

e. **Treatment:** On the Effective Date this Class will be extinguished. No Distribution will be made on account of this Class.

f. **No Right to Vote:** Under Bankruptcy Code § 1126(g) this class is conclusively deemed to reject this Plan and is not entitled to vote to accept or reject it.

5.14 **Class 12: GreatAmerica Financial Services.**

a. **Class Description:** GreatAmerica Financial Services' PMSI Secured Claim as shown on Proof of Claim 56.

b. **Claim Amount:** $18,454.41.

c. **Collateral:** DELL Custom T440 Server; Datto S3-X4 Mini desktop backup appliance; Meraki MS120-48LP Ethernet Switch - 48 ports; Meraki Enterprise License & support - MS120-48LP Cloud managed switch; Meraki MX64 Cloud Managed Security Appliance - 5 Port; Meraki MX64 Advanced Security License; Meraki MR33 IEEE 802.11ac 1.30 Gbit/s Wireless Access Point; Meraki MR Enterprise Cloud controller license & all products, proceeds and attachments.

d. **Collateral Value:** The Debtor asserts the value of the Collateral securing this Class's Claim is $6,550.29 and therefore this Claim is undersecured.

e. **Treatment:** The Debtor will surrender this collateral to GreatAmerica.

f. **Notes:** After the transaction where BDC purchased the Collateral described above BDC also financed the purchase of a 3-Year Meraki Systems Manager Enterprise Device License as an add-on to the underlying transaction. This license is not included in GreatAmerica's financing statement, so the $2,658.06 portion of GreatAmerica's claim for this add-on is unsecured. This does not change the overall treatment of GreatAmerica's claim.

5.15 **Class 13: Fully Undersecured Non-PMSI Secured Creditors**

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

a. **Class Description:** All alleged non-PMSI Secured Claims aside from those of Keystone Savings Bank, including but not limited to Kirkwood Community College's contingent secured claim; The United States Small Business Administration's contingent unsecured claim; Breakout Capital, LLC; Green Note Capital Partners, Inc.; KYF Global Partners, LLC; and Citibank.

b. **Collateral:** Blanket security interests.

c. **Collateral Value:** The Debtor asserts the value of this Class's Collateral, after senior security interests, is $0.00 and therefore these Claims are unsecured.

d. **Treatment:** These claims will be treated as Class 16 General Unsecured Claims.

5.16 **Class 14: Prepetition Wage & Benefit Claims**

a. **Class Description:** All prepetition wage & benefit claims. These are Allowed Priority Non-Tax Claims.

b. **Treatment:** As authorized by Doc. 190 Debtor paid most of these claims postpetition. It did not pay the prepetition wage claims of Dennis and Candace Bruce, and it did not pay the benefits claims, which were for accrued vacation. Dennis and Candace Bruce's prepetition wage claims are waived, and the Reorganized Debtor will honor accrued vacation benefits in the ordinary course of its ongoing business.

5.17 **Class 15: Critical Vendor Prepetition Claims**

a. **Class Description:** Prepetition unsecured claims of critical vendors as listed on Doc. 38.

b. **Treatment:** Under Doc. 56 this Class's Claims have been or are being paid as critical vendor claims on the terms outlined in Doc. 38. These payments will continue as outlined in Doc. 38. Any Avoidance Actions against critical vendors are waived.

5.18 **Class 16: General Unsecured Claims**

a. **Class Description:** All General Unsecured Claims as defined above, including but not limited to the undersecured portions of secured claims described above.

b. **Treatment:** General Unsecured Claims will have claims against the Liquidating Trust this Plan establishes in the amount of their Allowed Claim. The Liquidating Trust will make *pro rata* payments to General Unsecured Claims as it has assets to do so and after satisfying other secured or priority claims as identified in this Plan.

c. **Bankruptcy Code § 1129(a)(7)(A)(ii) Satisfied:** The Liquidation Analysis shows that in Chapter 7 this Class would receive less than $12,000.00. Since the Liquidating Trust will provide at least $90,000 in dividends to this Class it is better off under the Plan.

5.19 **Class 17: Interests in Debtor**

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

a. **Class Description:** All Interests in the Debtor.

b. **Treatment:** On the Effective Date this Class will be extinguished. No Distribution will be made on account of these Interests.

c. **No Right to Vote:** Under Bankruptcy Code § 1126(g) the owner is conclusively deemed to reject this Plan and is not entitled to vote to accept or reject it.

5.20 **Liquidating Trust:** On the Effective Date a Liquidating Trust will be established. It will take possession all avoidance actions arising under Bankruptcy Code Chapter 5 except any avoidance actions against critical vendors, the Debtor's Professionals and employees, and Keystone Savings Bank, which are waived. Further, beginning on the eighteen (18) month anniversary of the Effective Date the Reorganized Debtor will make payments of $5,000/month for eighteen months to the Liquidating Trust, for a total obligation of $90,000.00 which may be prepaid in full or in part prior to any monthly payment becoming due. The Liquidating Trust will be administered for the benefit of its beneficiaries: the DIP Facility Claim holder, Class 1 Claim holder, and the Allowed General Unsecured Claim holders.

The Liquidating Trust will liquidate its assets and use the proceeds to satisfy first its costs of liquidation, then the DIP Facility Claim, then Class 1 Claim, then Allowed General Unsecured Claims, as further detailed in the Liquidating Trust Agreement that will be submitted as part of the Plan Supplement. Notwithstanding the foregoing, the DIP Facility Claim holder and Class 1 and Class 2 Claim holders are not entitled to a distribution from the Reorganized Debtor's $90,000.00 earn-out payments.

5.21 **Cramdown:** If any Class fails to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any Class that is Impaired and votes not to accept the Plan.

5.22 **New Value Contribution:** On the Effective Date, the Plan Sponsor shall contribute its New Value Contribution of $100,000.00, that shall be utilized for payment of the Debtor's professional fees and the Plan Sponsor shall own the Reorganized Debtor. Any funds not necessary to pay Debtor's professional fees will be contributed to the Liquidating Trust.

## ARTICLE VI. PROVISIONS REGARDING RESOLUTION OF CLAIMS AND DISTRIBUTIONS UNDER THE PLAN

### 6.1 Method of Distributions Under the Plan

a. **In General:** Subject to Bankruptcy Rule 9010, all Distributions under the Plan shall be made to the holders of each Allowed Claim at the address of such holder as listed on the Schedules or Proof of Claim, as applicable.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

b. **Distributions of Cash:** Any Distributions made after the Effective Date under the Plan shall be made by the Reorganized Debtor except for Distributions by the Liquidating Trust, which will be made by the Liquidating Trust. Such Distributions shall be made by check unless a different method of payment is agreed upon between the individual Creditors and the Reorganized Debtor or the Liquidating Trust. All checks for Distribution shall be negotiated within 90 days of the date of such check, after which such check shall be void. The holder of an Allowed Claim or Interest that does not negotiate payment within the 90-day period shall have 30 days after the check becomes void to assert payment on account of its Claim under this Plan, after which time its Claim shall be reduced to zero. At such time, the Reorganized Debtor shall no longer be obligated to reserve for such Claim or make any further Distributions in respect of such Claim.

c. **Restrictions on De Minimis Distributions:** Notwithstanding any other provision of this Plan, the Debtor, the Reorganized Debtor, or the Liquidating Trust shall not be required to, but may in their discretion, make Distributions to any holder of a Claim in an amount less than $25.00. In addition, the Debtor, the Reorganized Debtor shall not be required to, but may in its discretion, make any payment on account of any Claim if the costs of making such payment exceeds the amount of such payment.

d. **Timing of Distributions:** Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

e. **Tax Withholding** Distributions to holders of Allowed Claims and Interests shall be net of amounts required to be withheld under applicable state and federal wage or backup withholding requirements. To receive a Distribution, a holder of an Allowed Claim must provide the Debtor, Reorganized Debtor, or Liquidating Trustee with a completed Department of Treasury Internal Revenue Service Form W-9.

6.2 **Claims Objections**

a. **Standing, Timing, and Compensation:** After the Effective Date, Claims Objections may be made, and Claims Objections made previous thereto shall be pursued, only by the Reorganized Debtor. The deadline for the Reorganized Debtor to File Claims Objections shall be 60 days after the Effective Date, subject to extension by motion to the Bankruptcy Court. After the Effective Date, the Reorganized Debtor shall, without further order of the Bankruptcy Court, have the right to retain and compensate counsel or other Professionals to assist with Claims Objections or any other duties of the Reorganized Debtor under the Plan.

b. **Authority to Settle De Minimis Claims Disputes:** After the Effective Date, the Reorganized Debtor may settle any Disputed Claims where the proposed Allowed Claim is to be less than $25,000.00 without notice and a hearing and without an order of the Bankruptcy Court. All other settlements shall be subject to notice

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

and a hearing under section 102(1) of the Bankruptcy Code and Bankruptcy Rule 9019.

6.3 **Disputed Claims:** If any Claim is a Disputed Claim, no Distribution provided hereunder shall be made on account of such Claim unless and until said Disputed Claim becomes an Allowed Claim. In the event any Distribution is made while there is an extant Disputed Claim, the Distribution that would be paid on account of the Disputed Claim shall be withheld until the Disputed Claim is Allowed or Disallowed. If the Claim is Allowed, the holder of the Allowed Claim shall receive its withheld Distribution. If the Claim is Disallowed, then any Distribution that was withheld with respect to such Claim shall be released to the Reorganized Debtor.

6.4 **Claims Estimation:** The Reorganized Debtor may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim under section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such Claims Objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time concerning any Claims Objection, including during the pendency of any appeal relating to any such Claims Objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the amount of such Allowed Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All the aforementioned procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism under this Plan or approved by the Bankruptcy Court.

6.5 **Claims Allowance:** Except as expressly provided in the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Reorganized Debtor as well as the assignee of the receivables (the Class 1 Claimholder) shall have and shall retain after the Effective Date all rights and defenses that the Debtor had with respect to any Claim as of the Petition Date. All Claims of any Entity, subject to section 502(d) of the Bankruptcy Code, shall be deemed Disallowed as of the Effective Date unless and until such Entity pays in full the amount that it owes the Debtor.

## ARTICLE VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 **Assumption or Rejection of Executory Contracts and Unexpired Leases:** Any Executory Contract or unexpired lease that has not expired by its own terms on or prior to the Effective Date and that (i) the Debtor has not assumed, assigned, or rejected with the approval of the Bankruptcy Court, (ii) is not identified as an Assumed Contract, and (iii) is not the subject of a motion to assume the same pending as of the Effective Date, shall be deemed rejected by the Debtor, and the

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection under sections 365(a) and 1123 of the Bankruptcy Code. The Debtor shall identify the contracts it is assuming and rejecting in the Plan Supplement to be filed seven (7) days before the Confirmation Hearing.

7.2 **Rejection Damages Claims:** With respect to Claims arising from the rejection of Executory Contracts or unexpired leases under Section 7.1 of this Plan, the bar date to File Proofs of Claim in these Cases shall be reopened for a period of sixty (60) days after the Effective Date, and all such Proofs of Claim must be Filed with the Bankruptcy Court during that time. Any such Claim that is Allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured Claim. Any Claim arising from the rejection of an Executory Contract or unexpired lease under Section 7.1 of this Plan for which a Proof of Claim is not timely Filed within that time period shall be a Disallowed Claim and shall further forever be barred from assertion against the Estate, the Debtor, the Reorganized Debtor, its successors and assigns, or its assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

7.3 **Assumed Contracts; Cure of Defaults:** Any monetary amounts by which each Executory Contract or unexpired lease to be assumed is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each such Assumed Contract may otherwise agree. The Plan Supplement shall include the list of Assumed Contracts to be assumed by the Reorganized Debtor under the Plan. The Plan Supplement shall identify the Executory Contracts and unexpired contracts sought to be assumed, the counterparties thereto, and the proposed cure payments as of the projected Effective Date. The Debtor reserves the right to remove Executory Contracts or unexpired leases from such list or to modify the cure amounts executed in connection therewith at any time prior to the Confirmation Hearing.

Any objection to (a) the amount of any cure payments for the Assumed Contracts, (b) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or lease to be assumed, or (c) any other matter pertaining to assumption, shall be Filed and served on the Debtor on or before the deadline established by the Bankruptcy Court for filing objections to the Plan. In the event an objection is Filed, the Debtor shall attempt to resolve such objection prior to the Confirmation Hearing. To the extent the parties are unable to consensually resolve such objection prior to the Confirmation Hearing, such objection and any cure amounts to be paid shall be determined at the Confirmation Hearing or as otherwise agreed to by the parties or ordered by the Bankruptcy Court.

In the event that a dispute remains unresolved as of the Effective Date regarding (a) the amount of any cure payments, (b) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of sec-

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

tion 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such dispute, the Executory Contract at issue shall be deemed assumed by the Debtor unless otherwise ordered by the Bankruptcy Court. However, any such "deemed" assumption shall not affect any counterparty's rights or remedies under section 365 of the Bankruptcy Code or otherwise, which shall be preserved pending final resolution notwithstanding the "deemed" assumption.

## ARTICLE VIII. OTHER MEANS FOR IMPLEMENTATION AND EFFECT OF PLAN CONFIRMATION

8.1 **Term of Bankruptcy Injunction or Stays:** Except as otherwise expressly provided in the Plan, all injunctions or stays provided for in this Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence as of the date of entry of the Confirmation Order, shall remain in full force and effect until the closing of this Chapter 11 Case.

8.2 **Injunction Against Enforcing Guaranties:** In recognition of the essential nature of Dennis Bruce's efforts to the Reorganized Debtor's success and to allow him to focus on the Reorganized Debtor's growth, enforcement of any guaranties signed by Dennis Bruce of the Debtor's prepetition debts shall be enjoined so long as the Reorganized Debtor complies with its obligations under this Plan.

8.3 **Consummation of the Plan:** This Plan implements a comprehensive restructuring of the Debtor through the capital infusion from the Plan Sponsor as provided in Section 8.7. Conditions to Consummation of the Plan are:

a.     Entry of an order confirming this Plan in form and substance acceptable to Plan Sponsor; and

b.     The order confirming the Plan is not subject to a stay and has not been reversed or modified on appeal.

8.4 **Sources of Cash for Plan Distributions:** Except as otherwise provided for in this Plan or the Confirmation Order, all Cash required for Distributions shall come from the equity contribution as provided in Section 8.6.

8.5 **Compromise of Controversies:** Under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good-faith compromise and settlement of Claims and Interests and controversies resolved under this Plan. Distributions made to holders of Allowed Claims in any Class are intended to be final.

8.6 **Effect of Plan on Debtor:**

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

a. **Interests in Reorganized Debtor and Continued Existence:** Except as otherwise provided in this Plan, Reorganized Debtor shall exist on and after the Effective Date as a legal entity separate from the Debtor with all of the powers available to such legal entity under applicable law and under the Reorganized Debtor's by-laws, etc. On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, the Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law.

On the Effective Date, the ownership interests in BDC shall be cancelled. After giving effect to such cancellation, the Plan Sponsor shall be issued 100% of the ownership interests in Reorganized Debtor. The ownership interests in the foregoing Reorganized Debtor shall have the rights, privileges, limitations, and restrictions set forth by the Reorganized Debtor.

b. **Governance and Corporate Action:** All matters provided for in this Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with this Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the members, directors, or officers of the Debtor or the Reorganized Debtor or otherwise. On or (as applicable) before the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Reorganized Debtor, including the Plan Sponsor New Equity Interests and any and all agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section 8.6 shall be effective notwithstanding any requirements under non-bankruptcy law.

c. **Vesting of Assets:** Except as otherwise provided in this Plan, on and after the Effective Date, all assets of the Estate, including all claims, rights, and Causes of Action, and any property acquired by the Debtor under or in connection with this Plan, shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, and interests, except Liens and encumbrances attributable or securing the DIP Credit Agreement and DIP Facility Claim and Class 1 and Class 2 Claims, which Liens and encumbrances shall continue and remain. Subject to the terms of this Plan and applicable secured interests, on and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims, including any Administrative Expense Claims, and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order or other applicable law.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

### 8.7  **Issuance of the Plan Sponsor New Equity Interest**

a. The Plan will be funded through an equity contribution. In exchange for the Plan Sponsor's investment of $100,000.00, the Plan Sponsor shall receive the Plan Sponsor New Equity Interest. The Plan Sponsor New Equity Interest shall be authorized by the Reorganized Debtor and issued to the Plan Sponsor on the Effective Date. The Plan Sponsor New Equity Interest issuable in accordance with this Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable. The issuance of the Plan Sponsor New Equity Interest is authorized without the need for any further corporate action and without any further action by any holder of a Claim or Interest.

### 8.8  **Plan Transactions:** On or before the Effective Date or as soon as reasonably practicable thereafter, the Debtor and the Reorganized Debtor (as applicable), are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the terms of this Plan, including, without limitation: (i) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (iii) rejection or assumption, as applicable, of Executory Contracts or unexpired leases; (iv) the filing or execution of appropriate certificates or articles of incorporation or organization, reincorporation, merger, consolidation, conversion, or dissolution, and bylaws; and (v) all other actions that the Debtor or Reorganized Debtor determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

### 8.9  **Cancellation of Unexercised and Unvested Interests:** On the Effective Date, any contingent or unexercised option, warrant, or right, contractual or otherwise, to acquire or be awarded any Interest shall be cancelled without the exchange of any similar interest in any Debtor or Reorganized Debtor, or other form of consideration. Any Proof of Claim Filed on account of Interests cancelled by this Section shall be Disallowed and the Claims Register shall be adjusted to reflect such disallowance.

### 8.10  **Preservation of Causes of Action:** Except as expressly set forth in this Plan and in particular the assignments effectuated with respect to the Class 1 Claim treatment, and the avoidance actions assigned to the Liquidating Trust, the Reorganized Debtor shall retain all Causes of Action. Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a release, waiver, or relinquishment of any such Causes of Action. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such Causes of Action that the Debtor had immediately prior to the Petition

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Re-organized Debtor' legal and equitable rights respecting any Claim that are not spe-cifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

8.11 **Powers and Duties of Reorganized Debtor:** In addition to any other powers described in the Plan, the powers and duties of the Reorganized Debtor consist of the following:

a. To review, object to, seek equitable subordination of, or seek any other remedy with respect to Claims Filed against the Debtor;

b. To abandon, discontinue, dismiss, amend, settle, compromise, negotiate, or oth-erwise resolve all disputes, including all Causes of Action and Claims Objections Filed by the Debtor;

c. To make Distributions on account of all Allowed Claims and Interests consistent with the terms of this Plan;

d. To retain Entities and Professionals to assist in carrying out the powers and du-ties enumerated under this Plan;

e. To enter into contracts as necessary to assist in carrying out the powers and du-ties enumerated under this Plan;

f. To pay expenses incurred in carrying out the powers and duties enumerated un-der this Plan, including Professional Fees incurred after the Effective Date;

g. To open and maintain bank accounts and deposit funds and draw checks and make disbursements in accordance with the Plan;

h. To effectuate any of the provisions in this Plan;

i. To ask the Bankruptcy Court to enter the final decree; and

j. To execute all documents appropriate to convey assets of the Estate consistent with the terms of this Plan.

**Default Remedies:** If the Reorganized Debtor fails to comply with any of its obli-gations under the Plan, Creditors, or Interest holders, as applicable, shall move for relief in the Bankruptcy Court to enforce the terms of the Plan; provided, however, the creditors holding Class 1 and Class 2 Claims and creditors holding Class 3, 4, 5, 6, 7, 8, 9a, 9b, 10a, 10b, 12 Allowed Secured Claims must provide the Reorganized Debtor with a 10-business day notice of default  and right to cure after which the Allowed Secured Claim holder would be entitled to enforce its rights under applica-ble law without prior relief in the Bankruptcy Court.

8.12 **Discharge:** Except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created under the Plan, the Distribu-tions, rights, and treatment that are provided in the Plan shall be in complete satis-faction, discharge, and release, of Claims, Interests, and Causes of Action of any na-

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

ture whatsoever by any Entity against the Debtor, including any interest accrued on any Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor, the Estate, or any of their assets or properties, regardless of whether any property shall have been distributed or retained under the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt, right, or Interest is Filed or deemed Filed under section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed under section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan, effective as of the Effective Date. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created under the Plan, on the Effective Date, the Confirmation Order shall be a judicial determination of the complete and full discharge of all Claims and Interests by any Entity against the Debtor, subject to the Effective Date occurring.

## ARTICLE IX.EFFECTIVENESS OF THE PLAN

9.1 **Conditions Precedent to Effectiveness:** The Plan shall not become effective unless and until the following have been satisfied, or waived under Section 9.2 below:

a. The Confirmation Order, in form and substance reasonably satisfactory to the Debtor and the Plan Sponsor, shall have been entered by the Bankruptcy Court; and

b. There is no stay or injunction in effect with respect to the Confirmation Order.

9.2 **Waiver of Conditions Precedent:** Only the Debtor, with the approval of the Plan Sponsor, may waive the conditions listed in Section 9.1 above, and such waiver may be without notice to parties in interest or the Bankruptcy Court and without a hearing.

9.3 **Effect of Non-Occurrence of Effective Date:** If the conditions to the occurrence of the Effective Date have not been timely satisfied or waived under Section 9.2 above, and upon notification Filed by the Debtor with the Bankruptcy Court prior to the Confirmation Order becoming final, the Confirmation Order shall be vacated and the Debtor and all parties in interest shall be restored to the *status quo ante*. If the Confirmation Order is vacated, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor;

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

(2) prejudice in any manner the rights of the Debtor or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor in any respect.

## ARTICLE X. RETENTION OF JURISDICTION

10.1 Except as otherwise stated herein and to the extent permitted under applicable law, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of and related to the Chapter 11 Case and this Plan under, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.  To determine pending applications for the assumption or rejection of Executory Contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

b.  To determine any and all adversary proceedings, applications, and contested matters;

c.  To determine any Claims Objections and Administrative Expense Claims;

d.  To approve settlements between the Reorganized Debtor and the holder of a Disputed Claim, if Bankruptcy Court approval is necessary under the terms of the Plan;

e.  To issue such orders in aid of execution and Consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

f.  To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

g.  To determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

h.  To determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

i.  To determine disputes arising in connection with the recovery of all assets of the Debtor and property of the Estate, wherever located;

j.  To determine matters concerning taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

k.  To determine any other matter not inconsistent with the Bankruptcy Code; and

l.  To enter a final decree closing the Chapter 11 Case.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

## <u>ARTICLE XI.MISCELLANEOUS PROVISIONS</u>

11.1 **<u>Aid in Implementation of Plan</u>:** The Bankruptcy Court may direct the Reorganized Debtor, the Debtor, and any other Entity to execute or deliver or to join the execution or delivery of any instrument required to effectuate the Plan, and to perform any other act necessary to consummate the Plan.

11.2 **<u>Amendment or Modification of the Plan</u>:** Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtor at any time before entry of the Confirmation Order, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Plan may be altered, amended, or modified at any time after entry of the Confirmation Order and before substantial Consummation, provided that the Plan as altered, amended, or modified satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications. A holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

11.3 **<u>Severability</u>:** In the event that the Bankruptcy Court determines, before entry of the Confirmation Order, that any provision in the Plan is invalid, void, or unenforceable, such provision shall be invalid, void, or unenforceable with respect to the holder or holders of such Claims or Interests as to which the provision is determined to be invalid, void, or unenforceable. The invalidity, voidness, or unenforceability of any such provision shall not limit or affect the enforceability and operative effect of any other provision of the Plan.

11.4 **<u>Revocation or Withdrawal of the Plan</u>:** The Debtor shall have the right to revoke or withdraw the Plan before entry of the Confirmation Order. If the Debtor revokes or withdraws the Plan, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.

11.5 **<u>Binding Effect</u>:** The Plan shall be binding upon and inure to the benefit of the Debtor and the holders of Claims and Interests and their respective successors and assigns.

11.6 **<u>Notices</u>:** To be effective, all notices, requests, and demands to or upon the Debtor or the Reorganized Debtor shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when it arrives at the following mailing addresses or, in the case of notice by electronic mail, when the electronic mail is received by the following electronic mail accounts:

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

*If to the Debtor:*

BDC Group, Inc.
Attention: Dennis Bruce, President
1525 Ketelsen Road
Hiawatha, IA 52233

Email: dennis@bdcgroupinc.com

Copies to:

Joseph A. Peiffer
Austin J. Peiffer
Ag & Business Legal Strategies
P.O. Box 11425
Cedar Rapids, IA 52410-1425

Email: joe@ablsonline.com; austin@ablsonline.com

*If to the Reorganized Debtor:*

Building Diverse Communications Group, LLC
Attn: Candace Bruce
565 Eastview Ave
Marion IA 52302

11.7 **Governing Law:** Except to the extent the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Iowa without giving effect to the principles of conflicts of law of such jurisdiction.

11.8 **Allocation of Plan Distributions Between Principal and Interest:** To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

Dated this 17th day of October, 2023.

Respectfully submitted,

BDC GROUP, INC.:

*Dennis Bruce*
Dennis Bruce, President

AG & BUSINESS LEGAL STRATEGIES

/s/ Joseph A. Peiffer
Joseph A. Peiffer AT0006160
Austin J. Peiffer AT0014402
P.O. Box 11425
Cedar Rapids, Iowa 52410-1425
Telephone:   (319) 363-1641
Fax:         (319) 200-2059
Email:       joe@ablsonline.com
             austin@ablsonline.com
ATTORNEYS FOR DEBTOR-IN-
POSSESSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of October, 2023, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system, and served electronically on those participants that receive service through the CM/ECF system.

Signed: /s/ Leah M. Watson

Doc ID: a8db693432e6d313a75f3d0d3de9632da1412479

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| **Title** | 2023-10-17 BDC Reorganization Plan & Esignature Cover... |
| **File name** | 2023-10-17%20BDC%...0Cover%20Page.pdf |
| **Document ID** | a8db693432e6d313a75f3d0d3de9632da1412479 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | • Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| ⬀ **SENT** | **10 / 17 / 2023** 17:58:02 UTC | Sent for signature to BDC Group Inc. (dennis@bdcgroupinc.com) from leah@ablsonline.com IP: 162.253.44.159 |
| ◉ **VIEWED** | **10 / 17 / 2023** 19:24:06 UTC | Viewed by BDC Group Inc. (dennis@bdcgroupinc.com) IP: 198.199.62.250 |
| ⤹ **SIGNED** | **10 / 17 / 2023** 19:24:31 UTC | Signed by BDC Group Inc. (dennis@bdcgroupinc.com) IP: 198.199.62.250 |
| ✓ **COMPLETED** | **10 / 17 / 2023** 19:24:31 UTC | The document has been completed. |