**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 11 |
| BDC GROUP, INC., | Case No. 23-00484 |
| Debtor. | Hon. Thad J. Collins |
| | **REPLY IN SUPPORT OF FIRST INTERIM FEE APPLICATION OF SMITH GAMBRELL & RUSSELL AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

Smith Gambrell & Russell LLP ("SGR"), counsel to the Official Committee of Unsecured Creditors (the "Committee") of BDC Group, Inc. (the "Debtor"), submits this reply in support of its first interim fee application (the "Fee Application") (ECF No. 192). In support hereof, SGR states as follows:

**Argument**

Keystone Savings Bank ("KSB"), the Debtor's pre-petition and post-petition secured lender, filed an objection to SGR's Fee Application raising two primary objections: (1) SGR's rates are excessive; and (2) SGR did not carry burden of demonstrating that fees are compensable as administrative expenses of the estate and its services did not add value to the estate. KSB's objections are factually and legally baseless, as discussed below.

I.   **SGR's Rates Are Reasonable and Appropriate and Were Approved by the Court.**

KSB complains that SGR's Chicago market rates are excessive for the Iowa market and warrant a downward adjustment to $400/hour – the rate charged by a Committee member's counsel in a separate litigation prior to this bankruptcy case. KSB's arguments are without merit. For one, KSB forgets that SGR's retention application – which disclosed SGR's rates – was already approved by this Court. *See* ECF No. 91 (application disclosing rates) and ECF No. 94 (order

approving SGR's retention on an hourly basis). KSB did not object to SGR's retention or its fees. Accordingly, it has waived this argument. *See e.g. In re AFY, Inc.*, 571 B.R. 825, 835 (B.A.P. 8th Cir. 2017) (recognizing that a failure to object to bankruptcy court's authority constitutes waiver of that objection).

For another, SGR's rates are in fact reasonable in this market. *See Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) ("As a general rule, a reasonable hourly rate is the prevailing market rate, that is the ordinary rate for similar work in the community where the case has been litigated.") (internal quotation omitted). Courts may rely on its knowledge of customary billing practices in the local community to determine a reasonable rate. *See In re King*, 546 B.R. 682, 728 (Bankr. S.D. Tex. 2016). SGR's top rate in this case is only $20/hour higher than the Debtor's counsel's highest rate. *See* ECF No. 162 (ABLS' highest rate of $575/hour) and ECF No. 192 (SGR's highest rate of $595/hour). SGR notes that its rates are actually low for the Chicago market and it reduced its standard rates for this case as an accommodation to the Committee and the estate given the limited available resources. Declaration of Elizabeth L. Janczak ¶ 5, attached hereto as Exhibit 1. Indeed, this Court recently approved rates for Chicago-based debtor's counsel and New Jersey-based committee counsel ranging from $675 to $1,850 in the *Mercy Hospital* case. *In re Mercy Hospital, Iowa City, Iowa*, Case No. 23-00623, ECF Nos. 148, 226 (authorizing employment of debtors' counsel having rates $725-$1,850), 228, and 355 (limiting rates to a blended rate of $675).

KSB's reliance on *In re VeroBlue Farms, Inc.* to support a downward adjustment is inappropriate. In that case, the Court considered an attorneys' fee award as a discovery sanction. *In re VeroBlue Farms, Inc.*, 2023 WL 2011756, at *3 (Bankr. N.D. Iowa. Apr. 19, 2023). Unlike the present circumstances, the attorneys in that case were not retained estate professionals and their rates had not been approved by the Court. Even so, the rate ultimately imposed by the Court in

2

*VeroBlue* was $450/hour. *Id.* at *5. SGR's blended rate for the Fee Application is $487.46/hour, an immaterial difference. (Fee Application at p. 4.)

Notably, KSB had no issue with SGR's fees or rates until recently – after the Committee successfully opposed KSB's attempt to clawback ABLS's attorney fee retainer, dared to request documents from KSB in Rule 2004 discovery, and opposed KSB's attempt to scoop up $500,000 of cash in the middle of the Debtor's bankruptcy case to pay its prepetition debt. Indeed, KSB consented to a carve-out of $12,500 per week but ceased funding that amount in September. *See* ECF No. 126.

Finally, KSB's suggestion that Committee members themselves should be responsible for any portion of SGR's fees is completely without merit and KSB cites no authority supporting its contention. KSB's objection to SGR's rates should be rejected.

## II. SGR's Services Were Reasonable, Necessary, and Benefitted the Estate.

KSB further objects to SGR's fees as a whole on the basis that SGR has not demonstrated it provided any benefit to the estate. KSB misstates the facts and the legal standard applicable to SGR's Fee Application.

Section 330 of the Bankruptcy Code permits reasonable compensation to professionals whose services were necessary to the administration of the bankruptcy case or reasonably likely to benefit the bankruptcy estate. *See* 11 U.S.C. § 330(a)(4)(A). A determination of whether services were reasonably likely to benefit a debtor's estate "must be based on the circumstances at the time the services were performed, and not simply in hindsight." *In re Gluth Bros. Const., Inc.*, 459 B.R. 351, 370 (Bankr. N.D. Ill. 2011). *See also* 11 U.S.C. § 330(a)(3)(C) (identifying as a relevant factor in determining reasonable compensation "whether the services were necessary to the administration of, or beneficial *at the time at which the service was rendered*") (emphasis added). Courts must conduct an objective inquiry based on what services a reasonable professional would

3

have performed in the same circumstances. *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 862-63 (Bankr. D. Del. 2004).

Success does not determine whether or not fees are reasonable so long as there was a reasonable chance of success which outweighed the cost of pursuing the action. *See e.g. In re Jefsaba, Inc.*, 172 B.R. 786, 799 (Bankr. E.D. Pa. 1994) ("[W]e do not conclude that only successful actions may be compensated under § 330. To the contrary, so long as there was a reasonable chance of success which outweighed the cost in pursuing the action, the fees relating thereto are compensable. Moreover, professionals must often perform significant work in making the determination whether a particular course of action could be successful. Such services are also compensable so long as, at the outset, it was not clear that success was remote.")

A creditors' committee is responsible for representing the interests of its constituents and maximizing their recovery. *See, e.g., Official Unsecured Creditors' Committee v. Michaels (in re Marin Motor Oil, Inc.)*, 689 F.2d 445 (3d Cir.1982) (internal quotation omitted); *Retail Marketing Company v. Northwest National Bank (In re Mako, Inc.)*, 120 B.R. 203, 212 (Bankr.E.D.Okla.1990) (creditors' committee is intended to be integrally involved in formulation of chapter 11 plan to optimize the return to the class). *See also Virginia Bell & Paul Jones, Creditors' Committees and their Roles in Chapter 11 Reorganizations*, 1993 DET.C.L.REV. 1551, 1571 (main function of creditors' committee is to maximize recovery for creditors it represents). To this end, the Bankruptcy Code authorizes such committees to, inter alia: consult with the trustee concerning the administration of the case; investigate the acts, conduct and financial condition of the debtor; investigate the operation of the debtor's business and the desirability of having such business continue; participate in the formulation of a plan; and provide advice to those whom the committee represents regarding any plan that is formulated. *See* 11 U.S.C. § 1103(b).

4

All of SGR's actions on behalf of the Committee have been designed to fulfill these responsibilities in an effort to protect unsecured creditors' interests and maximize potential recoveries to unsecured creditors. For example, the Committee investigated the validity, priority, and extent of secured creditors' liens – including KSB – to identify unencumbered collateral or excess value in certain collateral above and beyond a secured creditor's claim. *See* Fee Application at pp. 5-6 (discussing secured creditor issues) and Group Exhibit A at pp.16-23 (time entries for same). The fact that the Committee's investigation did not lead to an adversary complaint challenging the validity, priority, and extent of any particular secured creditor's liens does not mean that the services were not reasonable or compensable. *See e.g. Channel Master Holdings*, 309 B.R. at 862-63 (describing the standard for compensability as based on what services a reasonable professional would have performed in the same circumstances).

The Committee also successfully objected to KSB's attempt to wrongfully extend its pre-petition liens to ABLS' pre-petition legal fee retainer, protecting $70,000 of cash available to fund the Debtor's administrative expenses during this case. *See* ECF No. 217. SGR's services also related to representing the Committee in fulfilling their statutory duty to investigate pre-petition causes of action, *see* Fee Application at pp. 5 and 7; Group Exhibit A at pp. 9-11 and 38-39, and otherwise representing the interests of the Committee in connection with general case issues including executory contract assumptions and rejections and reviewing pleadings filed in the case. All of these services were reasonable and necessary in order to carry out the purpose and function of an official committee of unsecured creditors.

KSB accuses SGR of a laundry list of vague purported failures, but does not offer a single specific instance of the Committee hindering the progress of the case. To the contrary, the Committee has repeatedly sought consensus among the various case constituencies on major issues including DIP financing terms and plan terms. Indeed, Committee has been asking for a draft final

5

DIP budget for weeks so that the parties can document and finalize their agreements on DIP terms and KSB lien issues, but as of the filing of this reply, no final budget has been circulated. KSB cannot identify a single instance in which the Committee has unnecessarily driven up fees or delayed this case. Instead, the Committee has merely reacted to overreaching action taken by KSB, including KSB wrongfully seeking to prevent ABLS from using its legal fee retainer.

In short, it appears that KSB's objection is more directed at the Committee's existence and participation in this case than any specific action taken by the Committee or SGR. SGR submits that its rates are reasonable and appropriate for this case and in this legal market and, further, that SGR's services are reasonable and provided a benefit to the estate because SGR's legal work has allowed the Committee to fulfill its statutory duties under section 1103 of the Bankruptcy Code, including actions to investigate, protect, and preserve estate assets.

Dated: October 23, 2023

SMITH GAMBRELL & RUSSELL LLP

By: /s/ Elizabeth L. Janczak
      One of Its Attorneys

Shelly A. DeRousse*
Elizabeth L. Janczak*
Tonita M. Helton (Iowa Bar No. AT0009125)
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
Tel:    312.360.6000
Fax:   312.360.6520
Email:  sderousse@sgrlaw.com
         ejanczak@sgrlaw.com
         thelton@sgrlaw.com
*Admitted pro hac vice

*Counsel for Official Committee of Unsecured Creditors of BDC Group, Inc.*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on October 23, 2023, the *Reply in Support of First Interim Fee Application of Smith Gambrell & Russell as Counsel to the Official Committee of Unsecured Creditors* was served electronically upon those parties receiving electronic notification through the Court's CM/ECF system.

                                                                      /s/ Elizabeth L. Janczak