## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>BDC GROUP, INC.,<br><br>Debtor. | Case No. 23-00484<br><br>**DECLARATION OF TRAVIS ARMSTRONG** |

I, Travis Armstrong, do depose and state:

1.     My name is Travis Armstrong. I am a Senior Vice President at Keystone Savings Bank (the "Bank"). I am personally familiar with the facts set forth herein, and all statements are made based upon my personal knowledge and the Bank's books and business records.

2.     On about April 25, 2022, BDC Group Inc. executed and delivered promissory note 301683 to Keystone Savings Bank. The loan provided BDC Group Inc. with funds needed to purchase equipment including a mud reclaimer and AT40 drill. A security agreement was executed in conjunction with the loan. Copies of the April 2022 promissory note and security agreement are included in the Bank's Appendix in Support of Motion for Summary Judgment.

3.     On about October 14, 2022, Keystone Savings Bank acquired two loans from Farmers & Merchants Savings Bank. These loans included promissory notes 300020246 and 300020255 and related modifications, extension, security agreements, and other documents. Copies of these promissory notes and certain security agreements are included in the Bank's Appendix in Support of Motion for Summary Judgment.

4.     A copy of the October 14, 2022 loan assignment agreement is included in the Bank's Appendix in Support of Motion for Summary Judgment.

5.     The security interests conveyed by BDC Group Inc. to Keystone Savings Bank,

directly and by virtue of the loan acquisition from Farmers & Merchants Savings Bank, were filed with the Iowa Secretary of State in financing statements. Copies of the Uniform Commercial Code financing statements are included in the Bank's Appendix in Support of Motion for Summary Judgment.


I verify under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.


Dated: _11-8-2023_          By: _____

*MML*

## Promissory Note

| BDC GROUP INC.<br>1936 51ST STREET NE<br>CEDAR RAPIDS, IA 52402 | FARMERS & MERCHANTS SAVINGS BANK - DT<br>200 1ST ST SW<br>CEDAR RAPIDS, IA 52404 | Loan Number: 300020246<br>Date: 05-05-2020<br>Maturity Date: 04-05-2021<br>Loan Amount: $ 1,500,000.00<br>Renewal Of: |
|---|---|---|
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | SSN# ████████ |

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of   one million five hundred thousand and
no/100                                                                                                                                                 Dollars $ 1,500,000.00.

☐ **Single Advance.** I will receive all of this principal sum on _____ . No additional advances are contemplated under this note.

☒ **Multiple Advance.** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____

                I will receive the amount of $ _____   and future principal advances are contemplated.

       **Conditions.** The conditions for future advances are   MINIMUM $500.00.  ALL ADVANCES WILL BE SUBJECT TO BANK'S REVIEW OF BORROWER'S
       FINANCIAL CONDITION AND THE NON-EXISTENCE OF ANY MATERIAL ADVERSE CHANGES IN THE FINANCIAL CONDITION OF THE BORROWER.

       ☒ **Open End Credit.** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all
         other conditions and expires on 04-05-2021 .

       ☐ **Closed End Credit.** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST.** I agree to pay interest on the outstanding principal balance from 05-05-2020                                         at the rate of              4.750%
per year until   07-01-2020 .

☒ **Variable Rate.** This rate may then change as stated below.

       ☒ **Index Rate.** The future rate will be  1.000 percent above               the following index rate:  NEW YORK CITY PRIME RATE. THE RATE AT THIS
       TIME IS 3.25%.

       ☐ **No Index.** The future rate will not be subject to any internal or external index. It will be entirely in your control.

       ☒ **Frequency and Timing.** The rate on this note may change as often as every month beginning 07-01-2020
       A change in the interest rate will take effect On the first day of the following month

       ☒ **Limitations.** During the term of this loan, the applicable annual interest rate will not be more than              N/A% or less than
       4.750%. The rate may not change more than _____ % each _____ .

       **Effect of Variable Rate.** A change in the interest rate will have the following effect on the payments:

       ☒ The amount of each scheduled payment will change.              ☒ The amount of the final payment will change.

       ☐

**ACCRUAL METHOD.** Interest will be calculated on a  Actual/360                                   basis.

**POST MATURITY RATE.** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

       ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).

       ☒ at a rate equal to 21.00%

☒ **LATE CHARGE.** If a payment is made more than 10                  days after it is due, I agree to pay a late charge of 5.000% of the payment amount
of principal and interest

☐ **ADDITIONAL CHARGES.** In addition to interest, I agree to pay the following charges which   ☐ are   ☐ are not  included in the principal amount
above: _____

**PAYMENTS.** I agree to pay this note as follows:

On demand, but if no demand is made then monthly payments of accrued interest calculated on the amount of credit outstanding beginning on 06-05-2020 and principal
due on 04-05-2021. This is a variable rate loan and the payment amounts may change. The final payment may also change. The actual amount of my final payment will
depend on my payment record.

☒ **Unpaid Interest.** Any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of Lender's demand)
      will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this note.

**ADDITIONAL TERMS.** SEE ATTACHED EXHIBIT "A"

| ☒ **SECURITY.** This note is separately secured by (describe separate document type and date):<br>S/A'S DATED 04-05-19, 05-05-20, & ALL OTHER S/A'S & A PERSONAL GUARANTY DATED 05-05-20<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE.** The purpose of this loan is  OPERATING LINE OF CREDIT - SBA WORKING CAPITAL CAPLINE #12346974-02 |
|---|---|

Universal Note-IA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2018

UN-IA 5/1/2018
(1805).00
Page 1 of 3

Bank Appendix 3

**DEFINITIONS.** As used in this note, "☒ " means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW.** The law of the state of Iowa will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this note cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this note. No modification of this note may be made without your express written consent. Time is of the essence in this note.

**COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**PAYMENTS.** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST.** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this note for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this note, you agree to refund it to me.

**INDEX RATE.** The index will serve only as a device for setting the rate on this note. If the index is no longer available, I agree and consent to you selecting a substitute index and an alternative margin - all at your sole discretion. You will give me advance notice of your selection. As used in this section, "no longer available" includes, but is not limited to, when an index is terminated, becomes deregulated, or becomes unacceptable for use by a regulator. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD.** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated in this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE.** For purposes of deciding when the "Post Maturity Rate" applies, the term "maturity" means the date of the last scheduled payment stated in this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS.** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS.** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER.** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF.** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

  "Right to receive money from you" means:
  (1) any deposit account balance I have with you;
  (2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
  (3) any repurchase agreement or other nondeposit obligation.

  "Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

  If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

  You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY.** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of

the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT.** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you, including this note; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, as provided by 7 CFR Part 12.

**REMEDIES.** Except as provided in the next paragraph, if this note is secured by agricultural land (as defined in Iowa Code § 172C.1) and I am in default on this note, you will give me notice of my right to cure. You may exercise your remedies only if I fail to cure my default within 45 days after you mail the notice for 45 days after actual delivery if you use a means other than certified mail).

  A notice of right to cure is not necessary and you may immediately exercise your remedies if you have: a) given me the notice with respect to two prior defaults, b) you have given me the notice with respect to a default occurring within 12 months before the current default, or I voluntarily surrender the agricultural land and accept it in full satisfaction of the debt.

  Subject to the above limitations and any limitations imposed by Iowa Code Chapter 654A, if I am in default on this note you have, but are not limited to, the following remedies:
  (1) You  may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
  (2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "set-off" paragraph herein.
  (3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
  (4) You may refuse to make advances to me or allow purchases on credit by me.
  (5) You may use any remedy you have under state or federal law.
  By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES.** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER.** I give up my rights to require you to do certain things. I will not require you to:
  (1) demand payment of amounts due (presentment);
  (2) obtain official certification of nonpayment (protest); or
  (3) give notice that amounts due have not been paid (notice of dishonor).
  I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT.** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this note without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this note without your prior written approval.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE.** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is provided in this note. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address as provided in this note, or to any other address that you have designated.

**CREDIT AGREEMENT.** A "credit agreement" under Iowa Code § 535.17 means any contract made or acquired by a lender to loan money or extend credit for any purpose. A "credit agreement" does not mean a contract to extend credit by means of a credit card, or open end credit, or a home equity line of credit.

  This note is not subject to Iowa Code § 535.17 if it is a "credit agreement" made primarily for a personal, family, or household purpose where the credit extended is twenty thousand dollars or less.

Universal Note-IA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2018

UN-IA 5/1/2018
(1805).00
Page 2 of 3

Bank Appendix 4

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

[X] If checked, this note is a credit agreement subject to Iowa Code § 535.17 and the following notice is applicable to this note.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THESE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

**SIGNATURES. I AGREE TO ALL OF THE TERMS WITHIN THIS NOTE.** I acknowledge receipt of a copy of this note on today's date.

Borrower
BDC GROUP INC.
Corporation

_____   5-5-2020
DENNIS C. BRUCE, PRESIDENT          Date                                    Date

_____          _____
                                    Date                                    Date

Lender
FARMERS & MERCHANTS SAVINGS BANK - DT

_____          _____
CHAD A. KELLOGG, SENIOR VICE PRESIDENT   Date                              Date

[ ] Refer to the attached *Signature Addendum* for additional parties and signatures.

Universal Note-IA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2018

UN-IA 5/1/2018
(1805).00
Page 3 of 3

EXHIBIT "A"

WHEN SBA IS THE HOLDER, THIS NOTE WILL BE INTERPRETED AND ENFORCED UNDER FEDERAL LAW, INCLUDING SBA REGULATIONS. LENDER OR SBA MAY USE STATE OR LOCALPROCEDURES FOR FILING PAPERS, RECORDING DOCUMENTS, GIVING NOTICE, FORECLOSING LIENS, AND OTHER PURPOSES. BY USING SUCH PROCEDURES, SBA DOES NOT WAIVE ANY FEDERAL IMMUNITY FROM STATE OR LOCAL CONTROL, PENALTY, TAX, OR LIABILITY. AS TO THIS NOTE, BORROWER MAY NOT CLAIM OR ASSERT AGAINST SBA ANY LOCAL OR STATE LAW TO DENY ANY OBLIGATION, DEFEAT ANY CLAIM OF SBA, OR PREEMPT FEDERAL LAW.



# *AMENDMENT & EXTENSION*

The undersigned hereby agree to amend and extend Promissory Note #300020246 dated May 5, 2020 in the amount of $1,500,000.00 as follows:

> The undersigned hereby agrees to an amendment of the interest rate from 1.00% above New York Prime to an interest rate of 2.250% above New York Prime effective January 22, 2020.  The maturity date will be extended until May 31, 2021.

In all other respects, the undersigned agree that the obligations of all of the parties in this note shall remain the same and hereby affirm all of the provisions of this note.  I (we) hereby acknowledge receipt of a copy of this document.

## IMPORTANT:  READ BEFORE SIGNING

**THE TERMS OF THIS NOTE AMENDMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE.  NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THE WRITTEN NOTE EXTENSION AND THE NOTE MAY BE LEGALLY ENFORCED.  YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

Dated: January 22, 2021

Farmers & Merchants Savings Bank                    BDC Group Inc.

Chad A. Kellogg, Senior Vice President              Dennis C. Bruce, President

# *AMENDMENT*

The undersigned hereby agree to amend Promissory Note #300020246 dated May 5, 2020 in the amount of $1,500,000.00 as follows:

The undersigned hereby agrees to an amendment of the interest rate to remove the floor rate of 4.75% effective July 1, 2020.

In all other respects, the undersigned agree that the obligations of all of the parties in this note shall remain the same and hereby affirm all of the provisions of this note.  I (we) hereby acknowledge receipt of a copy of this document.

## IMPORTANT:  READ BEFORE SIGNING

**THE TERMS OF THIS NOTE AMENDMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE.  NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THE WRITTEN NOTE EXTENSION AND THE NOTE MAY BE LEGALLY ENFORCED.  YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

Dated: July 1, 2020

Farmers & Merchants Savings Bank                BDC Group Inc.

Chad A. Kellogg, Senior Vice President          Dennis C. Bruce, President

| BDC GROUP INC. | FARMERS & MERCHANTS SAVINGS BANK - DT | |
|---|---|---|
| 1936 51ST STREET NE | 200 1ST ST SW | |
| CEDAR RAPIDS, IA  52402 | CEDAR RAPIDS, IA  52404 | Line of Credit No. 300020246 |
| | | Date          05-05-2020 |
| **BORROWER'S NAME AND ADDRESS** | **LENDER'S NAME AND ADDRESS** | Max. Credit Amt. 1,500,000.00 |
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. | Loan Ref. No.      300020246 |

You have extended to me a line of credit in the

**AMOUNT** of   one million five hundred thousand and no/100                                                    $ 1,500,000.00      .

You will make loans to me from time to time until _____ 12:00 ____ p.m. on  04-05-2021 _____ . Although the line of credit
expires on that date, I will remain obligated to perform all my duties under this agreement so long as I owe you any money advanced according to the
terms of this agreement, as evidenced by any note or notes I have signed promising to repay these amounts.
    This line of credit is an agreement between you and me. It is not intended that any third party receive any benefit from this agreement, whether by
direct payment, reliance for future payment or in any other manner. This agreement is not a letter of credit.

**1. AMOUNT:** This line of credit is:

☐ OBLIGATORY: You may not refuse to make a loan to me under this line of credit unless one of the following occurs:
a. I have borrowed the maximum amount available to me;
b. This line of credit has expired;
c. I have defaulted on the note (or notes) which show my indebtedness under this line of credit;
d. I have violated any term of this line of credit or any note or other agreement entered into in connection with this line of credit;

e. _____

_____ .

☒ DISCRETIONARY: You may refuse to make a loan to me under this line of credit once the aggregate outstanding advances equal or exceed
one and no/100                                                $ 1.00                      .

Subject to the obligatory or discretionary limitations above, this line of credit is:

☒ OPEN-END (Business or Agricultural only): I may borrow up to the maximum amount of principal more than one time.
☐ CLOSED-END: I may borrow up to the maximum only one time.

**2. PROMISSORY NOTE:** I will repay any advances made according to this line of credit agreement as set out in the promissory note, I signed on
_____ 05-05-2020 _____ , or any note(s) I sign at a later time which represent advances under this agreement. The note(s) set(s) out
the terms relating to maturity, interest rate, repayment and advances. If indicated on the promissory note, the advances will be made as follows:
MINIMUM $500.00. ALL ADVANCES WILL BE SUBJECT TO BANK'S REVIEW OF BORROWER'S FINANCIAL CONDITION AND THE NON-EXISTENCE OF ANY
MATERIAL ADVERSE CHANGES IN THE FINANCIAL CONDITION OF THE BORROWER.

_____

**3. RELATED DOCUMENTS:** I have signed the following documents in connection with this line of credit and note(s) entered into in accordance with
this line of credit:

| ☐ security agreement dated _____ | ☒ S/A'S DATED 04-05-19, 05-05-20, & ALL OTHER S/A'S |
| ☐ mortgage dated _____ | ☐ _____ |
| ☒ guaranty dated 05-05-2020 | ☐ _____ |

**4. REMEDIES:** If I am in default on the note(s) you may:
a. take any action as provided in the related documents;
b. without notice to me, terminate this line of credit.
    By selecting any of these remedies you do not give up your right to later use any other remedy. By deciding not to use any remedy should I
default, you do not waive your right to later consider the event a default, if it happens again.

**5. COSTS AND FEES:** If you hire an attorney to enforce this agreement I will pay your reasonable attorney's fees, where permitted by law. I will also
pay your court costs and costs of collection, where permitted by law.

**6. COVENANTS:** For as long as this line of credit is in effect or I owe you money for advances made in accordance with the line of credit, I will do the
following:
a. maintain books and records of my operations relating to the need for this line of credit;
b. permit you or any of your representatives to inspect and/or copy these records;
c. provide to you any documentation requested by you which support the reason for making any advance under this line of credit;
d. permit you to make any advance payable to the seller (or seller and me) of any items being purchased with that advance;

e. _____

_____ .

**7. NOTICES:** All notices or other correspondence with me should be sent to my address stated above. The notice or correspondence shall be effective
when deposited in the mail, first class, or delivered to me in person.

**8. MISCELLANEOUS:** This line of credit may not be changed except by a written agreement signed by you and me. The law of the state in which you
are located will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law per-
mits you and me to agree to such a variation.

FOR THE LENDER

CHAD A. KELLOGG

Title SENIOR VICE PRESIDENT

SIGNATURES: I AGREE TO THE TERMS OF THIS LINE OF CREDIT. I
HAVE RECEIVED A COPY ON TODAY'S DATE.

DENNIS C. BRUCE, PRESIDENT

© 1985 BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301  (1-800-397-2341)  FORM LCA  5/2/91

Bank Appendix 9

keb

# EXTENSION AGREEMENT

Line of Credit

Note No:      **300020246**      Date of Note:      **May 5, 2020**      Amount Extended:  **$1,500,000.00**

FOR VALUE RECEIVED ON                    **May 31, 2021**  the undersigned hereby agree to extend the date of payment of the unpaid balance of the above referenced note in the current amount of               $1,340,040.77  for a period of 12 months from          **May 31, 2021**  such balance to bear interest at   2.25 % above the New York Prime Rate.  The current New York Prime Rate is 3.25%.

The Security Agreement(s) and/or Mortgage(s) heretofore made,  executed & delivered by the Debtor(s) to the Bank shall remain in full force and effect to collateralize the Note.  The undersigned Debtor(s) hereby reaffirm and ratify all of the provisions of the Note and agree to pay said Note according to the terms of the same, as extended, I (we) hereby acknowledge receipt of a copy of this document.

### IMPORTANT: READ BEFORE SIGNING

**THE TERMS OF THIS NOTE EXTENSION SHOULD BE READ CAREFULLY BECAUSE
ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE.  NO OTHER TERMS OR
ORAL PROMISES NOT CONTAINED IN THIS WRITTEN NOTE EXTENSION AND THE
NOTE MAY BE LEGALLY ENFORCED.  YOU MAY CHANGE THE TERMS OF THIS
AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

FARMERS & MERCHANTS SAVINGS BANK
MANCHESTER/CEDAR RAPIDS/ANAMOSA/MONTICELLO, IA

BDC Group, INC.

By: _____

Nathaniel W. Dunn/President & CEO

By: _____

Dennis C. Bruce, President

Dated:                    May 31, 2021

*ms* keb

# EXTENSION AGREEMENT

Line of Credit

| | | | | |
|---|---|---|---|---|
| Note No: | 300020246 | Date of Note: | May 5, 2020 | Amount Extended: **$1,500,000.00** |

FOR VALUE RECEIVED ON **May 31, 2022** the undersigned hereby agree to extend the date of payment of the unpaid balance of the above referenced note in the current amount of **$985,066.90** for a period of 24 months from **May 31, 2022** such balance to bear interest at 2.25% above the New York Prime Rate, as may adjust daily. The current New York Prime Rate is 4.00%. Payments of accrued interest shall be due on the 30th of each month.

The Security Agreement(s) and/or Mortgage(s) heretofore made, executed & delivered by the Debtor(s) to the Bank shall remain in full force and effect to collateralize the Note. The undersigned Debtor(s) hereby reaffirm and ratify all of the provisions of the Note and agree to pay said Note according to the terms of the same, as extended, I (we) hereby acknowledge receipt of a copy of this document.

### IMPORTANT: READ BEFORE SIGNING

THE TERMS OF THIS NOTE EXTENSION SHOULD BE READ CAREFULLY BECAUSE
ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR
ORAL PROMISES NOT CONTAINED IN THIS WRITTEN NOTE EXTENSION AND THE
NOTE MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS
AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

FARMERS & MERCHANTS SAVINGS BANK
MANCHESTER/CEDAR RAPIDS/ANAMOSA/MONTICELLO, IA

BDC Group, Inc.

By: _____

Nathaniel W. Dunn, President & CEO

By: _____

Dennis C. Bruce, President

Dated:            May 31, 2022

## Promissory Note

| | | |
|---|---|---|
| BDC GROUP INC.<br>1936 51ST STREET NE<br>CEDAR RAPIDS, IA 52402<br><br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | FARMERS & MERCHANTS SAVINGS BANK - DT<br>200 1ST ST SW<br>CEDAR RAPIDS, IA 52404<br><br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Loan Number: 300020255<br>Date: 06-12-2020<br>Maturity Date: 12-31-2020<br>Loan Amount: $ 1,400,000.00<br>Renewal Of:<br>SSN# ▮▮▮▮▮▮▮ |

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of   **one million four hundred thousand and no/100**

Dollars $ **1,400,000.00**

☐ **Single Advance.** I will receive all of this principal sum on _____ . No additional advances are contemplated under this note.

☒ **Multiple Advance.** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____

I will receive the amount of $ _____ and future principal advances are contemplated.

**Conditions.** The conditions for future advances are **MINIMUM $500.00.   ALL ADVANCES WILL BE SUBJECT TO BANK'S REVIEW OF BORROWER'S FINANCIAL CONDITION AND THE NON-EXISTENCE OF ANY MATERIAL ADVERSE CHANGES IN THE FINANCIAL CONDITION OF THE BORROWER.**

☒ **Open End Credit.** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on 12-31-20.

☐ **Closed End Credit.** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST.** I agree to pay interest on the outstanding principal balance from **06-12-2020** at the rate of **4.750%** per year until **08-01-2020**

☒ **Variable Rate.** This rate may then change as stated below.

☒ **Index Rate.** The future rate will be **1.500 percent above** the following index rate: **NEW YORK CITY PRIME RATE. THE RATE AT THIS TIME IS 3.25%.**

☐ **No Index.** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ **Frequency and Timing.** The rate on this note may change as often as **every month beginning 08-01-2020**
A change in the interest rate will take effect **On the first day of the following month**

☐ **Limitations.** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____ .

**Effect of Variable Rate.** A change in the interest rate will have the following effect on the payments:

☒ The amount of each scheduled payment will change.   ☒ The amount of the final payment will change.

☐

**ACCRUAL METHOD.** Interest will be calculated on a **Actual/360** basis.

**POST MATURITY RATE.** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).

☒ at a rate equal to **21.00%**

☒ **LATE CHARGE.** If a payment is made more than **10** days after it is due, I agree to pay a late charge of **5.000% of the payment amount** of principal and interest

☐ **ADDITIONAL CHARGES.** In addition to interest, I agree to pay the following charges which   ☐ are   ☐ are not   included in the principal amount above: _____

**PAYMENTS.** I agree to pay this note as follows:

On demand, but if no demand is made then monthly payments of accrued interest calculated on the amount of credit outstanding beginning on 07-31-2020 and principal due on 12-31-2020. This is a variable rate loan and the payment amounts may change. The final payment may also change. The actual amount of my final payment will depend on my payment record.

☒ **Unpaid Interest.** Any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of Lender's demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this note.

**ADDITIONAL TERMS. SEE ATTACHED EXHIBIT "A".**

| | |
|---|---|
| ☒ **SECURITY.** This note is separately secured by (describe separate document by type and date):<br>S/A'S DATED 04-05-19, 06-12-20, & ALL OTHER S/A'S & A PERSONAL GUARANTY DATED 06-12-20<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE.** The purpose of this loan is  SUMMITIG, LLC  CONTRACT - SBA CONTRACT CAPLINE #23171079-01 |

**DEFINITIONS.** As used in this note, " ☒ " means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW.** The law of the state of Iowa will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this note cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this note. No modification of this note may be made without your express written consent. Time is of the essence in this note.

**COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**PAYMENTS.** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST.** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this note for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this note, you agree to refund it to me.

**INDEX RATE.** The index will serve only as a device for setting the rate on this note. If the index is no longer available, I agree and consent to you selecting a substitute index and an alternative margin - all at your sole discretion. You will give me advance notice of your selection. As used in this section, "no longer available" includes, but is not limited to, when an index is terminated, becomes deregulated, or becomes unacceptable for use by a regulator. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD.** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated in this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE.** For purposes of deciding when the "Post Maturity Rate" applies, the term "maturity" means the date of the last scheduled payment stated in this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS.** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS.** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER.** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF.** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY.** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of

the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT.** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you, including this note; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) I default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, as provided in 7 CFR Part 12.

**REMEDIES.** Except as provided in the next paragraph, if this note is secured by agricultural land (as defined in Iowa Code § 172C.1) and I am in default on this note, you will give me notice of my right to cure. You may exercise your remedies only if I fail to cure my default within 45 days after you mail the notice (or 45 days after actual delivery if you use a means other than certified mail).

A notice of right to cure is not necessary and you may immediately exercise your remedies if you have: a) given me the notice with respect to two prior defaults, b) you have given me the notice with respect to a default occurring within 12 months before the current default, or I voluntarily surrender the agricultural land and you accept it in full satisfaction of the debt.

Subject to the above limitations and any limitations imposed by Iowa Code Chapter 654A, if I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "set-off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES.** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER.** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT.** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this note without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this note without your prior written approval.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE.** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is provided in this note. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address as provided in this note, or to any other address that you have designated.

**CREDIT AGREEMENT.** A "credit agreement" under Iowa Code § 535.17 means any contract made or acquired by a lender to loan money or extend credit for any purpose. A "credit agreement" does not mean a contract to extend credit by means of a credit card, or open end credit, or a home equity line of credit.

This note is not subject to Iowa Code § 535.17 if it is a "credit agreement" made primarily for a personal, family, or household purpose where the credit extended is twenty thousand dollars or less.

Universal Note-IA
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2018

UN-IA 5/1/2018
(1805).00
Page 2 of 3

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

☒ If checked, this note is a credit agreement subject to Iowa Code § 535.17 and the following notice is applicable to this note.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THESE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

**SIGNATURES. I AGREE TO ALL OF THE TERMS WITHIN THIS NOTE.** I acknowledge receipt of a copy of this note on today's date.

Borrower
BDC GROUP INC.
Corporation

DENNIS C. BRUCE, PRESIDENT _____ Date _____          _____ Date

_____ Date _____          _____ Date

Lender
FARMERS & MERCHANTS SAVINGS BANK - DT

CHAD A. KELLOGG, SENIOR VICE PRESIDENT _____ Date          _____ Date

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Universal Note-IA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2018

UN-IA 5/1/2018
(1805).00
Page 3 of 3

EXHIBIT "A"

WHEN SBA IS THE HOLDER, THIS NOTE WILL BE INTERPRETED AND ENFORCED UNDER FEDERAL LAW,
INCLUDING SBA REGULATIONS. LENDER OR SBA MAY USE STATE OR LOCALPROCEDURES FOR FILING
PAPERS, RECORDING DOCUMENTS, GIVING NOTICE, FORECLOSING LIENS, AND OTHER PURPOSES. BY
USING SUCH PROCEDURES, SBA DOES NOT WAIVE ANY FEDERAL IMMUNITY FROM STATE OR LOCAL
CONTROL, PENALTY, TAX, OR LIABILITY. AS TO THIS NOTE, BORROWER MAY NOT CLAIM OR ASSERT
AGAINST SBA ANY LOCAL OR STATE LAW TO DENY ANY OBLIGATION, DEFEAT ANY CLAIM OF SBA, OR
PREEMPT FEDERAL LAW.



# *AMENDMENT & EXTENSION*

The undersigned hereby agree to amend and extend Promissory Note #300020255 dated June 12, 2020 in the amount of $1,400,000.00 as follows:

> The undersigned hereby agrees to an amendment of the interest rate from 1.50% above New York Prime to an interest rate of 2.250% above New York Prime effective December 31, 2020. The maturity date will be extended until May 31, 2021.

In all other respects, the undersigned agree that the obligations of all of the parties in this note shall remain the same and hereby affirm all of the provisions of this note. I (we) hereby acknowledge receipt of a copy of this document.

## IMPORTANT: READ BEFORE SIGNING

**THE TERMS OF THIS NOTE AMENDMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THE WRITTEN NOTE EXTENSION AND THE NOTE MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

Dated: <u>December 31, 2020</u>

Farmers & Merchants Savings Bank        BDC Group Inc.

_____     _____
Chad A. Kellogg, Senior Vice President      Dennis C. Bruce, President

*ms)* keb

# EXTENSION AGREEMENT

Line of Credit

| Note No: | **300020255** | Date of Note: | **June 12, 2020** | Amount Extended: **$1,400,000.00** |

FOR VALUE RECEIVED ON **May 31, 2021** the undersigned hereby agree to extend the date of payment of the unpaid balance of the above referenced note in the current amount of $1,400,000.00 for a period of 12 months from **May 31, 2021** such balance to bear interest at _2.25_ % above the New York Prime Rate. The current New York Prime Rate is 3.25%.

The Security Agreement(s) and/or Mortgage(s) heretofore made, executed & delivered by the Debtor(s) to the Bank shall remain in full force and effect to collateralize the Note. The undersigned Debtor(s) hereby reaffirm and ratify all of the provisions of the Note and agree to pay said Note according to the terms of the same, as extended, I (we) hereby acknowledge receipt of a copy of this document.

### IMPORTANT: READ BEFORE SIGNING

**THE TERMS OF THIS NOTE EXTENSION SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN NOTE EXTENSION AND THE NOTE MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

FARMERS & MERCHANTS SAVINGS BANK
MANCHESTER/CEDAR RAPIDS/ANAMOSA/MONTICELLO, IA

BDC Group, INC.

By: _____

Nathaniel W. Dunn/President & CEO

By: _____

Dennis C. Bruce, President

Dated:                     May 31, 2021

# EXTENSION AGREEMENT

Note No:                  **300020255**          Date of Note:      **June 12, 2020**          Line of Credit
                                                                                                Amount Extended:  **$1,400,000.00**

             FOR VALUE RECEIVED ON                                    **May 31, 2022**   the undersigned hereby agree to extend the
date of payment of the unpaid balance of the above referenced note in the current amount of            $1,225,000.00  for a period
of 24 months from         **May 31, 2022**  such balance to bear interest at 2.25% above the New York Prime Rate, as may adjust daily.
The current New York Prime Rate is 4.00%.

The Security Agreement(s) and/or Mortgage(s) heretofore made,  executed & delivered by the Debtor(s) to the Bank
shall remain in full force and effect to collateralize the Note.  The undersigned Debtor(s) hereby reaffirm and ratify
all of the provisions of the Note and agree to pay said Note according to the terms of the same, as extended,
I (we) hereby acknowledge receipt of a copy of this document.

## IMPORTANT: READ BEFORE SIGNING

THE TERMS OF THIS NOTE EXTENSION SHOULD BE READ CAREFULLY BECAUSE
ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE.  NO OTHER TERMS OR
ORAL PROMISES NOT CONTAINED IN THIS WRITTEN NOTE EXTENSION AND THE
NOTE MAY BE LEGALLY ENFORCED.  YOU MAY CHANGE THE TERMS OF THIS
AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

FARMERS & MERCHANTS SAVINGS BANK
MANCHESTER/CEDAR RAPIDS/ANAMOSA/MONTICELLO, IA

                                                                        BDC Group, Inc.

By: _____                          By: _____
Nathaniel W. Dunn, President & CEO                              Dennis C. Bruce, President

    Dated:              May 31, 2022

# COMMERCIAL SECURITY AGREEMENT

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| BDC GROUP INC. | FARMERS & MERCHANTS SAVINGS BANK - DT |
| 1936 51ST STREET NE | 200 1ST ST SW |
| CEDAR RAPIDS, IA 52402 | CEDAR RAPIDS, IA 52404 |

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable) IA_____
☐ If checked, refer to addendum for additional Debtors and signatures.

The date of this Commercial Security Agreement (Agreement) is **04-05-2019** .

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____
_____ (Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☒ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☒ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☒ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☒ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☒ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

Security Agreement for Commercial And Agricultural Transactions-IA
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2000

VMPC570IIA) (1701).00
SA-BUS-IA 1/1/2017
Page 1 of 3

Bank Appendix 19

☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

2019 GMC YUKON VIN - 1GKS2CKJ8KR197853

2018 RAM 3500 VIN - 3C63R3NL9JG430492

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 3. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property.

Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Secured Party may notify additional parties regarding Secured Party's interest in Debtor's farm products if Secured Party provides Debtor with the name and address of the additional party any time prior to such notification. Debtor agrees to plant, cultivate, and harvest crops in due season.

If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and

Security Agreement for Commercial And Agricultural Transactions-IA
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2000

VMPC570(IA) (1701).00
SA-BUS-IA 1/1/2017
Page 2 of 3

Bank Appendix 20

the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order

application of this formula. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:
(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;
(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;
(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;
(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.
(5) Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, as provided by 7 CFR Part 12.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:
(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;
(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;
(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;
(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1, 2 and 3 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| BDC GROUP INC. | FARMERS & MERCHANTS SAVINGS BANK - DT |
| | |
| DENNIS C. BRUCE | CHAD A. KELLOGG |
| PRESIDENT | SENIOR VICE PRESIDENT |

Security Agreement for Commercial And Agricultural Transactions-IA
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2000

VMPC570(IA) (1701).00
SA-BUS-IA 1/1/2017
Page 3 of 3

## COMMERCIAL SECURITY AGREEMENT

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| BDC GROUP INC.<br>1936 51ST STREET NE<br>CEDAR RAPIDS, IA 52402 | FARMERS & MERCHANTS SAVINGS BANK - DT<br>200 1ST ST SW<br>CEDAR RAPIDS, IA 52404 |

Exhibit "A"

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable) IA_____
☐ If checked, refer to addendum for additional Debtors and signatures.

The date of this Commercial Security Agreement (Agreement) is 05-05-2020_____ .

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____
_____ (Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):



☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☒ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☒ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☒ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☒ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☒ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

Security Agreement for Commercial And Agricultural Transactions-IA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2000

VMPC570(IA) (1701).00
SA-BUS-IA 1/1/2017
Page 1 of 3

[X] **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

[ ] **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 3. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property.

Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Secured Party may notify additional parties regarding Secured Party's interest in Debtor's farm products if Secured Party provides Debtor with the name and address of the additional party any time prior to such notification. Debtor agrees to plant, cultivate, and harvest crops in due season.

If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and

Security Agreement for Commercial And Agricultural Transactions-IA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2000

VMPC570(IA) (17011).00
SA-BUS-IA 1/1/2017
Page 2 of 3

the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order

Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:
(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;
(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;
(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;
(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.
(5) Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, as provided by 7 CFR Part 12.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:
(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;
(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;
(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;
(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1, 2 and 3 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| BDC GROUP INC. | FARMERS & MERCHANTS SAVINGS BANK - DT |
| DENNIS C. BRUCE | CHAD A. KELLOGG |
| PRESIDENT | SENIOR VICE PRESIDENT |

Security Agreement for Commercial And Agricultural Transactions-IA
Bankers SystemsTM VMP®
Wolters Kluwer Financial Services © 2000

VMPC5-70(IA) (1701).00
SA-BUS-IA 1/1/2017
Page 3 of 3

Exhibit "A"

THE LOAN SECURED BY THIS LIEN WAS MADE UNDER A UNITED STATES SMALL BUSINESS
ADMINISTRATION (SBA) NATIONWIDE PROGRAM WHICH USES TAX DOLLARS TO ASSIST SMALL
BUSINESS OWNERS. IF THE UNITED STATES IS SEEKING TO ENFORCE THIS DOCUMENTS, THEN
UNDER SBA REGULATIONS: WHEN SBA IS THE HOLDER OF THE NOTE, THIS DOCUMENT AND ALL
DOCUMENTS EVIDENCING OR SECURING THIS LOAN WILL BE CONSTRUED IN ACCORDANCE
WITH FEDERAL LAW. LENDER OR SBA MAY USE LOCAL OR STATE PROCEDURES FOR PURPOSES
SUCH AS FILING PAPERS, RECORDING DOCUMENTS, GIVING NOTCE, FORECLOSING LIENS, AND
OTHER PURPOSES. BY USING THESE PROCEDURES, SBA DOES NOT WAIVE ANY FEDERAL
IMMUNITY FROM LOCAL OR STATE CONTROL, PENALTY, TAX OR LIABILITY. NO BORROWER OR
GUARANTOR MAY CLAIM OR ASSERT AGAINST SBA ANY LOCAL OR STATE LAW TO DENY ANY
OBLICATION OF BORROWER, OR DEFEAT ANY CLAIM OF SBA WITH RESPECT TO THIS LOAN. ANY
CLAUSE IN THIS DOCUMENT REQUIRING ARBITRATION IS NOT ENFORCEABLE WHEN SBA IS THE
HOLDER OF THE NOTE SECURED BY THIS INSTRUMENT.

## COMMERCIAL SECURITY AGREEMENT

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| BDC GROUP INC.<br>1936 51ST STREET NE<br>CEDAR RAPIDS, IA  52402 | FARMERS & MERCHANTS SAVINGS BANK - DT<br>200 1ST ST SW<br>CEDAR RAPIDS, IA  52404 |

EXHIBIT "A"

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable) IA
☐ If checked, refer to addendum for additional Debtors and signatures.

The date of this Commercial Security Agreement (Agreement) is 06-12-2020 .

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____ (Borrower) owes to Secured Party:

☒  **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):
ASSIGNMENT OF CONTRACT - SUMMITIG, LLC

☐  **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☐  **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☐  **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☐  **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☐  **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐  **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☐  **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐  **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐  **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐  **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

Security Agreement for Commercial And Agricultural Transactions-IA
Bankers SystemsTM VMP®
Wolters Kluwer Financial Services © 2000

VMPC570(IA) (1701).00
SA-BUS-IA 1/1/2017
Page 1 of 3

☐ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☐ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:
(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;
(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;
(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and
(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 3. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property.

Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Secured Party may notify additional parties regarding Secured Party's interest in Debtor's farm products if Secured Party provides Debtor with the name and address of the additional party any time prior to such notification. Debtor agrees to plant, cultivate, and harvest crops in due season.

If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and

Security Agreement for Commercial And Agricultural Transactions-IA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2000

VMPC570(IA) (1701).00
SA-BUS-IA 1/1/2017
Page 2 of 3

Bank Appendix 27

the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order

Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:

(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;

(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;

(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;

(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

(5) Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, as provided by 7 CFR Part 12.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:

(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;

(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;

(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;

(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1, 2 and 3 of this Agreement and acknowledges receipt of a copy of this Agreement.

| **DEBTOR** | **SECURED PARTY** |
|---|---|
| BDC GROUP INC. | FARMERS & MERCHANTS SAVINGS BANK - DT |
| DENNIS C. BRUCE | CHAD A. KELLOGG |
| PRESIDENT | SENIOR VICE PRESIDENT |

Security Agreement for Commercial And Agricultural Transactions-IA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2000

VMPC5708(IA) (1701).00
SA-BUS-IA 1/1/2017
Page 3 of 3

Exhibit "A"

THE LOAN SECURED BY THIS LIEN WAS MADE UNDER A UNITED STATES SMALL BUSINESS
ADMINISTRATION (SBA) NATIONWIDE PROGRAM WHICH USES TAX DOLLARS TO ASSIST SMALL
BUSINESS OWNERS. IF THE UNITED STATES IS SEEKING TO ENFORCE THIS DOCUMENTS, THEN
UNDER SBA REGULATIONS: WHEN SBA IS THE HOLDER OF THE NOTE, THIS DOCUMENT AND ALL
DOCUMENTS EVIDENCING OR SECURING THIS LOAN WILL BE CONSTRUED IN ACCORDANCE
WITH FEDERAL LAW. LENDER OR SBA MAY USE LOCAL OR STATE PROCEDURES FOR PURPOSES
SUCH AS FILING PAPERS, RECORDING DOCUMENTS, GIVING NOTCE, FORECLOSING LIENS, AND
OTHER PURPOSES. BY USING THESE PROCEDURES, SBA DOES NOT WAIVE ANY FEDERAL
IMMUNITY FROM LOCAL OR STATE CONTROL, PENALTY, TAX OR LIABILITY. NO BORROWER OR
GUARANTOR MAY CLAIM OR ASSERT AGAINST SBA ANY LOCAL OR STATE LAW TO DENY ANY
OBLICATION OF BORROWER, OR DEFEAT ANY CLAIM OF SBA WITH RESPECT TO THIS LOAN. ANY
CLAUSE IN THIS DOCUMENT REQUIRING ARBITRATION IS NOT ENFORCEABLE WHEN SBA IS THE
HOLDER OF THE NOTE SECURED BY THIS INSTRUMENT.

**savings bank**
*for today & tomorrow*

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 301683 | BDC GROUP INC | | 04/25/22 | TSA |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $711,210.00 | Not Applicable | 5.500% | 04/25/29 | Commercial |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
(Commercial - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is April 25, 2022. The parties and their addresses are:

**LENDER:**
KEYSTONE SAVINGS BANK
807 ROSEDALE DRIVE
PO BOX 904
CENTER POINT, IA 52213
Telephone: (319) 849-1555

**BORROWER:**
BDC GROUP INC
an Iowa Corporation
1525 KETELSEN DRIVE
HIAWATHA, IA 52233

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

G. **Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $711,210.00 (Principal) plus interest from April 25, 2022 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 5.500 percent (Interest Rate).

A. **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at 21.000 percent until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the Iowa usury laws under Iowa Code §§ 537.2601 and 535.2 et.seq.

D. **Accrual.** Interest accrues using an Actual/360 days counting method.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

Lien Notation. A(n) Lien Notation fee of $60.00 payable from the loan proceeds.
Origination fee. A(n) Origination fee of $250.00 payable from the loan proceeds.
UCC Termination/Lien Release. A(n) UCC Termination/Lien Release fee of $30.00 payable from the loan proceeds.
UCC Recording. A(n) UCC Recording fee of $30.00 payable from the loan proceeds.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

A. **Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Amount of Payment. However, this charge will not be greater than $30.00. I will pay this late charge promptly but only once for each late payment.

**6. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay this Note in 84 payments. A payment of $10,247.95 will be due May 25, 2022, and on the 25th day of each month thereafter. A final payment of the entire unpaid balance of Principal and interest will be due April 25, 2029.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due, then to principal that is due, and finally to any charges that I owe other than principal and interest. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is EQUIPMENT PURCHASE.

**10. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document | Date of Security Document |
|---|---|---|
| Security Agreement - BDC GROUP INC | BDC GROUP INC | APRIL 25, 2022 |

**11. LIMITATIONS ON CROSS-COLLATERALIZATION.** The cross-collateralization clause on any existing or future loan, but not including this Loan, is void and ineffective as to this Loan, including any extension or refinancing.

BDC GROUP INC
Iowa Promissory Note
IA/4KMONAGHA00000000002693031N

Wolters Kluwer Financial Services ®1996, 2022 Bankers Systems™

Page 1

The Loan is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

   **A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

   (1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

   (2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signor.

   (3) You may release, substitute or impair any Property securing this Note.

   (4) You, or any institution participating in this Note, may invoke your right of set-off.

   (5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

   (6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

   (7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

   **B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**15. APPLICABLE LAW.** This Note is governed by the laws of Iowa, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Iowa, unless otherwise required by law.

**16. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my successors and assigns.

**17. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**18. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**19. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**20. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**21. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

---

**IMPORTANT:  READ BEFORE SIGNING.**

THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN AGREEMENT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

THIS NOTICE IS APPLICABLE TO THE FOLLOWING CREDIT AGREEMENTS: .

---

**22. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

   BDC GROUP INC.

   By _____   Date  9-28-78

   DENNIS C BRUCE, President

**KEYSTONE**
savings bank
*...for today & tomorrow*
Member FDIC

## SECURITY AGREEMENT

**DATE AND PARTIES.** The date of this Security Agreement (Agreement) is April 25, 2022. The parties and their addresses are:

SECURED PARTY:
KEYSTONE SAVINGS BANK
807 ROSEDALE DRIVE
PO BOX 904
CENTER POINT, IA 52213

DEBTOR:
BDC GROUP INC
an Iowa Corporation
1625 KETELSEN DRIVE
HIAWATHA, IA 52233

**Definitions.** For the purposes of this document, the following terms have the following meanings.

"Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I", "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

**1. SECURED DEBTS.** The term "Secured Debts" includes each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 301683, dated April 25, 2022, from me to you, in the amount of $711,210.00.

**B. All Debts.** All present and future debts from me to you, even if this Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Agreement. Nothing in this Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Agreement will not secure any debt which is also secured by real property or for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan", as those terms are defined by federal law governing unfair and deceptive credit practices. In addition, this Agreement will not secure any other debt if, with respect to such other debt, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**C. Sums Advanced.** All sums advanced and expenses incurred by you under the terms of this Agreement.

Loan Documents refer to all the documents executed in connection with the Secured Debts.

**2. LIMITATIONS ON CROSS-COLLATERALIZATION.** The cross-collateralization clause on any existing or future loan, but not including this Loan, is void and ineffective as to this Loan, including any extension or refinancing.

The Loan is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**3. SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

Property also includes any original evidence of title or ownership whether evidenced by a certificate of title or ownership, a manufacturer's statement of origin or other document when the Property is titled under any federal or state law. I will deliver the title documents and properly execute all title documents as necessary to reflect your security interest.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**4. PROPERTY DESCRIPTION.** The Property is described as follows:

**A. All Assets.** All present and future right, title and interest in and to any and all personal property of the Debtor, whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation, the following categories of property: goods (including inventory, equipment, fixtures, farm products and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter-of-credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), all supporting obligations and all proceeds, products, additions, accessions, substitutions and replacements of the foregoing property.

Any term used herein is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.

**B. Motor Vehicle, Mobile Home, Sport Craft, or Trailer.** A Motor Vehicle of Make: TOYOTA, Year: 2010, Model: TUNDRA DOUBLE CAB SR5, VIN: 5TFUW5F1XAX112293.

A Motor Vehicle of Make: CHEVROLET, Year: 2017, Model: SILVERADO K2500 HEAVY DUTY, VIN: 1GC1KUEG7HF114968.

A Motor Vehicle of Make: TOYOTA, Year: 2017, Model: TUNDRA DOUBLE CAB SR/SR5, VIN: 5TFUW5F1BHX676238.

A Motor Vehicle of Make: RAM, Year: 2018, Model: PROMASTER 2500 2500 HIGH, VIN: 3C6TRVDG6JE124720.

A Motor Vehicle of Make: RAM, Year: 2018, Model: PROMASTER 2500 2500 HIGH, VIN: 3C6TRVDG2JE116212.

A Motor Vehicle of Make: DITCH WITCH, Year: 2019, Model: T14R, VIN: 1DSB122X1F1701849.

**C. Specific Property.** 2015 DITCH WITCH MR90 MUD RECLAIMER (SERIAL NUMBER: CMWVMR90XLF0000049)   2022 DITCH WITCH AT40 W/ DRILLLOK, F5 FALCON RECIEVER, 10.9" AURORA (SERIAL NUMBER: DWPAT40AVN0000014)

**5. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Agreement is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Agreement and the obligation evidenced by this Agreement are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

Bank Appendix 32

**D. Business Name.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**E. Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

## 6. DUTIES TOWARD PROPERTY.

**A. Protection of Secured Party's Interest.** I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

**B. Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my address, name or, if an organization, any change in my identity or structure.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

**C. Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**D. Additional Duties Specific to Motor Vehicles, Sport Craft, or Trailers.** So long as I am not in default under this Agreement, the Motor Vehicle, Sport Craft, or Trailer portion of the Property will not be restricted to a specific location and may be moved as necessary during ordinary use. However, they may not be taken out of state permanently nor removed from the United States or Canada without your prior written consent.

**7. INSURANCE.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. This insurance coverage does not satisfy any liability or property insurance that may be mandated by applicable state or federal law. I acknowledge and agree that you or one of your affiliates may receive commissions on the purchase of this insurance.

**8. COLLECTION RIGHTS OF THE SECURED PARTY.** Account Debtor means the person who is obligated on an account, chattel paper, or general intangible. I authorize you to notify my Account Debtors of your security interest and to deal with the Account Debtors' obligations at your discretion. You may enforce the obligations of an Account Debtor, exercising any of my rights with respect to the Account Debtors' obligations to make payment or otherwise render performance to me, including the enforcement of any security interest that secures such obligations. You may apply proceeds received from the Account Debtors to the Secured Debts or you may release such proceeds to me.

I specifically and irrevocably authorize you to exercise any of the following powers at my expense, without limitation, until the Secured Debts are paid in full:

A. demand payment and enforce collection from any Account Debtor or Obligor by suit or otherwise.

B. enforce any security interest, lien or encumbrance given to secure the payment or performance of any Account Debtor or any obligation constituting Property.

C. file proofs of claim or similar documents in the event of bankruptcy, insolvency or death of any person obligated as an Account Debtor.

D. compromise, release, extend, or exchange any indebtedness of an Account Debtor.

E. take control of any proceeds of the Account Debtors' obligations and any returned or repossessed goods.

F. endorse all payments by any Account Debtor which may come into your possession as payable to me.

G. deal in all respects as the holder and owner of the Account Debtors' obligations.

**9. AUTHORITY TO PERFORM.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Agreement or any other Loan Document, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

A. pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

B. pay any rents or other charges under any lease affecting the Property.

C. order and pay for the repair, maintenance and preservation of the Property.

D. file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

E. place a note on any chattel paper indicating your interest in the Property.

F. take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

G. handle any suits or other proceedings involving the Property in my name.

H. prepare, file, and sign my name to any necessary reports or accountings.

I. make an entry on my books and records showing the existence of this Agreement.

J. notify any Account Debtor or Obligor of your interest in the Property and tell the Account Debtor or Obligor to make payments to you or someone else you name.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**10. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

A. Payments. I fail to make a payment in full when due.

---

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.

C. **Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

E. **Other Documents.** A default occurs under the terms of any other Loan Document.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

N. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**11. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**12. REMEDIES.** After I default, you may at your option do any one or more of the following.

A. **Acceleration.** You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available to me on my default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

E. **Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

F. **Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Iowa Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing (where permitted by law).

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them (where permitted by law).

G. **Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

H. **Waiver.** By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**13. WAIVER OF CLAIMS.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**14. PERFECTION OF SECURITY INTEREST AND COSTS.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering all of my personal Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all taxes, fees and costs you pay or incur in connection with preparing, filing or recording any financing statements or other security interest filings on the Property. I agree to pay all actual costs of terminating your security interest.

**15. APPLICABLE LAW.** This Agreement is governed by the laws of Iowa, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Iowa, unless otherwise required by law.

**16. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. You may sue each Debtor individually or together with any other Debtor. You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property. Debtor agrees that you and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Debtor's consent. Such a change will not release Debtor from the terms of this Agreement. If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to me or my consent, and this Agreement will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned. This Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Secured Debts and shall be binding upon and enforceable against me and my successors and assigns.

**17. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**18. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**19. NOTICE AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Debtor will be deemed to be notice to all Debtors. I will inform you in writing of any change in my name, address or other application information. I will provide you any other, correct and complete information you request to effectively grant a security interest on the Property. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property. Time is of the essence.

---

**NOTICE - I agree that this Agreement secures all debts described in the Secured Debts section whether or not the Secured Debt is secured by any other collateral or indicates that it is secured by this Agreement.**

---

**SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

DEBTOR:

BDC GROUP INC

By _____    Date 4/25-22

DENNIS C BRUCE, President

## LOAN ASSIGNMENT AGREEMENT

This Loan Assignment Agreement (the "*Agreement*") is entered into effective as of October 14th, 2022 between Farmers & Merchants Savings Bank, an Iowa state bank ("*Seller*"), and Keystone Savings Bank, an Iowa state bank ("*Purchaser*") and BDC Group Inc., an Iowa corporation ("*Borrower*").

RECITALS

WHEREAS, Seller has loaned certain funds (collectively, the "*Loans*") to Borrower evidenced by the following agreements and instruments (collectively, the "*Loan Documents*"):

1.  The following Promissory Notes (collectively, the "*Notes*")

    a.  Promissory Note No. 300020246 executed and delivered by Borrower to Seller dated May 5, 2020 for open ended credit with a maximum amount of principal of $1,500,000.00 with an original maturity date of April 5, 2022, as modified and extended from time to time, including via that certain amendment dated July 1, 2020, and that certain amendment and extension executed on January 22, 2021 and that certain amendment and extension and extension agreement executed on May 31, 2022 and that certain extension agreement executed on May 31, 2022 extending the date of payment for the unpaid balance to May 31, 2024 ("*Note *0246*"); and

    b.  Promissory Note No. 300020255 executed and delivered by Borrower to Seller dated June 12, 2020 for open ended credit with a maximum amount of principal of $1,400,000.00 with an original maturity date of December 13, 2020, as modified and extended from time to time, including via that certain amendment and extension dated December 31, 2020 and that certain amendment and extension and extension agreement executed on May 31, 2022 and that certain extension agreement executed on May 31, 2022 extending the date of payment for the unpaid balance to May 31, 2024 ("*Note *0255*").

2.  The following Guarantees (collectively the "*Guarantees*"):

    a.  Guaranty dated May 5, 2020 executed by Dennis C. Bruce;

    b.  Guaranty dated June 6, 2020 executed by Dennis C. Bruce;

3.  The following Security Agreements (collectively the "*Security Agreements*"):

    a.  Security Agreement executed by Borrower in favor of Seller dated April 5, 2019;

    b.  Security Agreement executed by Borrower in favor of Seller dated April 22, 2019;

    c.  Security Agreement executed by Borrower in favor of Seller dated November 1, 2019;

    d.  Security Agreement executed by Borrower in favor of Seller dated December 4, 2019;

    e.  Security Agreement executed by Borrower in favor of Seller dated December 6, 2019;

    f.  Security Agreement executed by Borrower in favor of Seller dated January 1, 2020;

    g.  Security Agreement executed by Borrower in favor of Seller dated May 5, 2020; and

    h.  Security Agreement executed by Borrower in favor of Seller dated June 12, 2020.

4.  The following UCC-1 Financing Statements (collectively, the "*Financing Statements*"):

    a.  E19025755-9 filed with the Iowa Secretary of State on April 19, 2019;

    b.  E190854156-7 filed with the Iowa Secretary of State on November 12, 2019;

    c.  E19091049-5 filed with the Iowa Secretary of State on December 4, 2019;

    d.  E19092690-5 filed with the Iowa Secretary of State on December 10, 2019;

    e.  E20008769-5 filed with the Iowa Secretary of State on January 27, 2020;

1

WHEREAS, the Small Business Administration ("*SBA*") has partially guaranteed the Loans (the "*SBA Guarantees*") pursuant to documentation provided to the SBA from Seller and Borrower (the "*SBA Documents*") and has filed UCC-1 Financing Statement X20052638-6 with the Iowa Secretary of State on November 12, 2019;

WHEREAS, Purchaser would like to purchase Seller's interest in the Loans and the Loan Documents and have Seller's interest in the SBA Guarantees transferred to Purchaser; and

WHEREAS, in reliance on the express terms set forth in this Agreement, Seller is willing to sell its interest in the Loans and the Loan Documents and transfer its interest in the SBA Guarantees to Purchaser.

AGREEMENT

NOW, THEREFORE, for this and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, the parties agree as follows:

1. <u>Recitals.</u> The above recitals ("*Recitals*") are hereby incorporated into this Agreement.

2. <u>Transfer.</u>

    a. With seven (7) days of the date of this Agreement Seller shall prepare and submit a transfer of participation agreement (the "*SBA Transfer of Participation Agreement*") to the SBA requesting the SBA's approval to transfer the SBA Guarantees from Seller to Purchaser.

    b. Contingent upon notice of the SBA's approval of the Transfer of Participation Agreement ("*SBA Approval*") and effective at the Effective Time (as defined below) Seller assigns, sells and transfers to Purchaser its full right, title, and interest in and to the Loans and the Loan Documents and transfers its interest in the SBA Guarantees to Purchaser. Notwithstanding anything else in this Agreement to the contrary, this Agreement and all obligations or rights hereunder shall be null and void if SBA Approval is not obtained within sixty (60) days of the date of this Agreement.

3. <u>Assumption.</u> At the Effective Time (as defined below), Purchaser assumes all obligations of Seller pursuant to the Loan Documents, and any transferrable obligation under the SBA Guarantees, including without limitation any obligation to make further advances pursuant to any of the Loan Documents.

4. <u>Payment.</u> On date that is within seven (7) days after the SBA Approval and is mutually agreeable to Purchaser and Seller (the "*Effective Time*"), Purchaser will pay to Seller in good, immediately available funds, an amount equal to the amount reflected on the books and records of Seller as the aggregate outstanding principal amount of the Loans plus all accrued interest thereon, and costs and fees, through the Effective Time (the "*Purchase Price*").

    a. For sake of reference, the amount reflected on the books and records of Seller as the aggregate outstanding principal amount of the Loans plus all accrued interest thereon, and costs and fees, through the date of this Agreement is **$2,594,672.88** comprised as follows:

| | Principal | Interest | Costs and Fees | TOTAL |
|---|---|---|---|---|
| Note *0246 | $1,441,635.52 | $4,546.70 | $0.00 | $1,446,182.22 |
| Note *0255 | $1,145,000.00 | $3,490.66 | $0.00 | $1,148,490.66 |
| All Notes | | | | $2,594,672.88 |

5. <u>Warranties.</u> At the Effective Time, Seller shall transfer its full right, title, and interest in the Loans and the Loan Documents to Purchaser as-is. At the Effective Time, Purchaser shall accept the transfer and assumes all rights and obligations of Seller pursuant to the Loans and Loan Documents. Except as set forth in Section 6 below, Seller disclaims all other warranties (express or implied), including without limitation any warranty regarding repayment, or creditworthiness of any party to any of the Loan Documents, and except as expressly set forth in this Agreement, the assignment pursuant to this

Agreement, and any endorsement or assignment executed in connection with this Agreement will be without recourse to Seller and without any representation or warranty of any kind or character, express or implied.

6.   Seller Representations. Seller represents, warrants and covenants with Purchaser that, as of the date of this Agreement, and, also, at the Effective Time:

   a.   Authority. Seller has the authority to enter into this Agreement and to sell, assign and transfer the Loans and the Loan Documents to Purchaser, and that the individuals executing this Agreement on behalf of Seller are duly authorized to execute this Agreement, and to bind Seller thereto.

   b.   Compliance with Laws. The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated by this Agreement do not and will not (i) violate any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Seller or any property of Seller, (ii) result in a breach or constitute a default under any agreement to which Seller is subject, or (iii) require any authorizations, consents, approvals, licenses, exemptions from or filings or registrations with any state, commonwealth, federal, foreign, territorial, regulatory, or other governmental department, commission, board, bureau, agency or instrumentality except for the approved SBA Transfer of Participation Agreement identified above.

   c.   Title. Seller is the sole legal and beneficial owner of its interest in the Loan Documents and has not assigned or otherwise transferred to any third party any rights with respect to its interest in the Loans or any or any rights to the indebtedness represented by the Loan Documents or any rights to its interest in the collateral securing the Loans and has not released any collateral securing the Loans or modified or terminated its security interest in such collateral.

   d.   Amounts Owing. The Purchase Price shall represent the total amount of principal and interest, and costs and fees, reflected on the books and records of Seller as due to Seller and evidenced by the Loan Documents as of the Effective Time, and that upon the receipt of the Purchase Price in good funds from Purchaser, Borrower shall have no further obligations to Seller under the Loans and the Loan Documents.

   e.   Compliance with SBA Regulations. To the best of Seller's knowledge Seller has complied with all applicable SBA regulations or SOPs related to the Loans, and there are no known grounds for the SBA to deny to pay any part of the SBA Guarantees.

   f.   Loan Documents. There are no other documents or instruments pertaining to the Loans than those identified in the above Recitals.

   g.   Enforceability and Perfection of Security Interests. The Security Agreements create valid and fully enforceable security interests granted from Borrower in favor of Lender covering the collateral defined therein, which security interests have at all times been properly perfected in accordance with applicable law.

   h.   No Knowledge of Default, Adverse Claims. Seller has no knowledge of the current existence of any default by the Borrower with respect to any of the Loan Documents or any event that, but for the passage of time, will constitute a default by the Borrower with respect to any of the Loan Documents.  Seller has not given notice to Borrower of any default that remains uncured.  Seller has no knowledge of any claims asserted by the Borrower against Seller.

7.   Purchaser Representations. Purchaser represents and warrants to Seller as follows:

   a.   Authority. Purchaser has the authority to enter into this Agreement, and the individuals executing this Agreement on behalf of Purchaser are duly authorized to execute this Agreement, and to bind Purchaser thereto.

   b.   Investigation. That Purchaser has conducted its own investigation (that it deems sufficient) regarding the validity and enforceability of the Loan Documents, the creditworthiness of any party

Bank Appendix 38

obligated pursuant to the Loan Documents, and any possible claims or defenses of any party to the Loan Documents.

   c.  <u>No Seller Representations</u>. Purchaser represents and warrants that it has not relied on any representation of Seller except as expressly set forth in this Agreement.

8.  <u>Perfection</u>. It will be Purchaser's sole responsibility to provide such notices, and to make such filings, as Purchaser deems necessary to perfect interests (or to maintain the perfection of any interest) transferred pursuant to this Agreement. Seller covenants and agrees that it shall not terminate the Financing Statements and hereby consents to Purchaser's filing of an amendment to the Financing Statements to assign the same to Purchaser.

   a.  Borrower consents to, authorizes, and agrees to assist Purchaser in taking any and all actions that may be necessary or desirable, or that Purchaser may request, for establishing or maintaining the validity, perfection, enforceability and priority of the security interests in the collateral identified in the Loan Documents.

9.  <u>Assignment</u>. At the Effective Time, Seller will execute and deliver to Purchaser Allonges in substantially the same form as set forth on **<u>Exhibit A</u>** with respect to the Notes. The endorsements therein are subject to all terms and conditions of this Agreement.

10.  <u>Indemnification</u>.

   a.  Purchaser will indemnify, defend, and hold harmless Seller, together with all employees, agents, and other representatives, from any loss, claim, demand, cost and expense (including reasonable attorneys' fees) arising out of a breach of the Seller's representations, warranties, or covenants in Section 6.

   b.  Seller will indemnify, defend, and hold harmless Purchaser, together with all employees, agents, and other representatives, from any loss, claim, demand, cost and expense (including reasonable attorneys' fees) arising out of a breach of the Seller's representations, warranties, or covenants in Section 6.

11.  <u>Servicing</u>. At the Effective Time, Seller transfers to Purchaser all servicing rights and responsibilities (such servicing then being the sole obligation of Purchaser) with respect to the Loans.

12.  <u>Delivery of Documents</u>. At the Effective Time, Seller will deliver to Purchaser all original Loan Documents in Seller's possession. Provided, however, that Seller will deliver the original Notes and Guarantees to Purchaser, and will endorse all copies of the Loan Documents to reflect the transfer pursuant to this Agreement.

13.  <u>No Default</u>. The parties hereto acknowledge and agree that notwithstanding any terms or conditions contained in the Note to the contrary, the execution of this Agreement and the transfer contemplated herein shall not trigger a default under Notes or Loan Documents.

14.  <u>Amendments, Waiver</u>. Any amendment or waiver of any provision of this Agreement will be effective only if it is in writing and signed by Seller and Purchaser. Any such amendment or waiver will be effective only in the specific instance and for the specific purpose for which given.

15.  <u>Entire Agreement</u>. This Agreement is the entire agreement between the parties with respect to the transfer of the Loans and the Loan Documents. There are no other agreements or promises with respect to the transfer of the Loans or the Loan Documents (whether oral or written). Unless SBA Approval is not obtained as provided for in Section 2, all representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement and the closing of the transactions contemplated hereunder.

16.  <u>Notices</u>. All notices and other communication allowed or required under this Agreement will be in writing, and delivered by Regular First Class U.S. Mail, postage prepaid, and addressed as follows:

    <u>If to Seller:</u>                    <u>If to Purchaser:</u>

Farmers & Merchants Savings Bank
Attn: Nate Dunn
4000 1st Avenue NE
Cedar Rapids, IA 52402

Keystone Savings Bank
Attn: Travis Armstrong
807 Rosedale Drive, PO Box 904
Center Point, IA 52213

With a Copy to:

Abram Carls
Simmons Perrine Moyer Bergman, PLC
115 3rd St. SE, Suite 1200
Cedar Rapids, IA  52401

All notices provided in accordance with this Section 14 will be deemed delivered and received one (1) Business Day after placed for delivery with the U.S Postal Service.

17. <u>Notice of Assignment</u>. At the Effective Time, seller will deliver the Notice of Assignment attached as **Exhibit B**.

18. <u>Successors and Assigns</u>. This Agreement is binding upon and inures to the benefit of the party's respective successors and assigns. Each Party may assign its rights hereunder without the other Party's prior written consent.

19. <u>Governing Law</u>. This Agreement will be interpreted, construed, and enforced pursuant to the laws of the state of Iowa without giving effect to the choice of law rules thereof.

20. <u>Time of the Essence</u>. Time is of the essence to the parties' respective obligations pursuant to this Agreement.

21. <u>Headings</u>. The headings of this Agreement are for the convenience of reference, will not be used to interpret or construe this Agreement, and are not a part of this Agreement for any other purpose.

22. <u>Jury Trial Waiver.</u> THE PARTIES WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM, OR COUNTERCLAIM, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, ARISING OUT OF OR RELATED TO THIS AGREEMENT.

23. <u>Counterparts.</u> This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any .pdf or facsimile copy of any executed signature page of this Agreement shall be treated as an original signature page for all purposes.

24. <u>Further Assurances.</u> All parties hereto shall fully cooperate with each other, and shall promptly execute and deliver such documents and take such other action as is reasonably requested of it for the purposes of evidencing the transactions contemplated by this Agreement. Additionally, Seller agrees to cooperate with Purchaser and take all action reasonable necessary to ensure that the SBA Guarantees remain in full force and effect.

25. <u>Expenses.</u> All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

26. <u>Severability.</u> If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

*[Signature Page Follows]*

Bank Appendix 40

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

In Witness Whereof, the undersigned have executed this Loan Assignment Agreement as of the date first set forth above.

| | |
|---|---|
| **SELLER:** | **PURCHASER:** |
| **Farmers & Merchants Savings Bank** | **Keystone Savings Bank** |
| By: _____ | By: _____ |
| Name: *Nathaniel CO. Dunn* | Name: *Travis Armstrong* |
| Its: *President + CEO* | Its: *Senior Vice President* |

**BDC Group Inc.**

By: _____
Name:
Its:

State of Iowa          )
                               )
County of *Linn*      )

This instrument was acknowledged before me on the *14th of Oct*, 2022 by *Nate Dunn (Nathaniel N.)* as *President & CEO* of Farmers & Merchants Savings Bank, an Iowa state-chartered bank.

By: *Misti Steichen*
Notary Public State of Iowa

MISTI STEICHEN
Commission Number 838922
My Commission Expires
April 25, 2025
NOTARIAL SEAL IOWA

State of Iowa          )
                               )
County of *Linn*      )

This instrument was acknowledged before me on the *17th of October* 2022 by *Travis Armstrong* as *Senior Vice President* of Keystone Savings Bank, an Iowa state-charted bank.

By: *Misti Steichen*
Notary Public State of Iowa

MISTI STEICHEN
Commission Number 838922
My Commission Expires
April 25, 2025
NOTARIAL SEAL IOWA

*[Signature Page to Loan Assignment Agreement]*

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

In Witness Whereof, the undersigned have executed this Loan Assignment Agreement as of the date first set forth above.

**SELLER:**                                    **PURCHASER:**

**Farmers & Merchants Savings Bank**           **Keystone Savings Bank**

By: _____                     By: _____
Name:                                          Name:
Its:                                           Its:

**BDC Group Inc.**

By: _____
Name: _Dennis Bruce_
Its: _President & CEO_

State of Iowa          )
                       )
County of _Linn_       )

This instrument was acknowledged before me on the _October 14_ 2022 by _____ as _____ of Farmers & Merchants Savings Bank, an Iowa state-chartered bank.

By: _____
Notary Public State of Iowa

State of Iowa          )
                       )
County of _____    )

This instrument was acknowledged before me on the _____ 2022 by _____ as _____ of Keystone Savings Bank, an Iowa state-charted bank.

By: _____
Notary Public State of Iowa

*[Signature Page to Loan Assignment Agreement]*

State of Iowa        )
                   )
County of Linn    )

This instrument was acknowledged before me on the _October 14_ 2022 by _Dennis Bruce_ as _President & CEO_ of BDC Group Inc., an Iowa corporation.

By: _Kaylee Bruce_

Notary Public State of Iowa

KAYLEE BRUCE
Notarial Seal - Iowa
Commission Number 833103
My Commission Expires Jul 13, 2024

*[Signature Page to Loan Assignment Agreement]*

## EXHIBIT A

**ASSIGNMENT/ALLONGES**

*[See Attached]*

## ALLONGE – NOTE 300020246

**Pay to the order of KEYSTONE SAVINGS BANK,** as-is, without warranty, and without recourse pursuant to the terms of the Loan Assignment Agreement dated contemporaneously herewith involving the assignment, sale, and transfer of Promissory Note No. 300020246 executed and delivered by Borrower to Seller dated May 5, 2020 with a maximum principal amount of $1,500,000.00, as amended and extended.

Dated this _October 14th,_ 2022

**SELLER:**

**Farmers & Merchants Savings Bank**

By: _____

Name: _Nathaniel W. Dunn_

Its: _President + CEO_

State of Iowa          )
                             )
County of _Linn_      )

This instrument was acknowledged before me on the _14th of October_ 2022 by _Nathaniel W. Dunn_ as _President & CEO_ of Farmers & Merchants Savings Bank, an Iowa state-chartered bank.

By: _Misti Steichen_
Notary Public State of Iowa

> NOTARIAL SEAL IOWA
> MISTI STEICHEN
> Commission Number 838922
> My Commission Expires
> April 25, 2025

**Exhibit A to Allonge – Note 300020246**

**Note, Modifications, Amendments, and Extensions**

*[See Attached]*

## ALLONGE – NOTE 300020255

     **Pay to the order of KEYSTONE SAVINGS BANK**, as-is, without warranty, and without recourse pursuant to the terms of the Loan Assignment Agreement dated contemporaneously herewith involving the assignment, sale, and transfer of Promissory Note No. 300020255 executed and delivered by Borrower to Seller dated May 5, 2020 with a maximum principal amount of $1,500,000.00, as amended and extended.

Dated this _October 14th,_ 2022

**SELLER:**

**Farmers & Merchants Savings Bank**

By: _____

Name: _Nathaniel W. Dunn_

Its: _President + CEO_

State of Iowa     )
                   )
County of _Linn_    )

This instrument was acknowledged before me on the _14th of October_ 2022 by _Nathaniel W. Dunn_ as _President & CEO_ of Farmers & Merchants Savings Bank, an Iowa state-chartered bank.

By: _Misti Steichen_

Notary Public State of Iowa

MISTI STEICHEN
Commission Number 838922
My Commission Expires
April 25, 2025

**Exhibit A to Allonge – Note 300020255**

**Note, Modifications, Amendments, and Extensions**

*[See Attached]*

**EXHIBIT B**

**NOTICE OF ASSIGNMENT OF LOAN DOCUMENTS**

*[See Attached]*

**Iowa Secretary of State**
**Uniform Commercial Code**
**Search Report**
**November 07, 2023**

Search type: [x] UCC   [ ] Federal
Search by: [ ] Person   [x] Business
Lien status: [ ] Include liens that have lapsed within the past year

Business: _BDC Group Inc._

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | FARMERS & MERCHANTS SAVINGS BANK | 200 1ST ST SW | CEDAR RAPIDS | IA | 52404 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367, 81 MAIN STREET | KEYSTONE | IA | 52249 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367 | KEYSTONE | IA | 52249 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E19025755-9 | FINANCING STATEMENT | 04/19/2019 09:12:32 | 2 |
| E22073265-2 | AMENDMENT | 11/04/2022 10:04:54 | 1 |
| E23019096-2 | ASSIGNMENT | 03/31/2023 14:34:54 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP, INC. | 1936 51ST ST. NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | EAST CENTRAL IOWA COUNCIL OF GOVERNMENTS | 700 16TH ST. NE | CEDAR RAPIDS | IA | 52402 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E19036188-3 | FINANCING STATEMENT | 05/28/2019 10:51:08 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST, NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | CATERPILLAR FINANCIAL SERVICES CORPORATION | 2120 WEST END AVENUE | NASHVILLE | TN | 37203 |

### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| X19046666-1 | FINANCING STATEMENT | 07/03/2019 12:30:51 | 1 |

---

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | B | BDC GROUP INC. | 1936 51ST, NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | CATERPILLAR FINANCIAL SERVICES CORPORATION | 2120 WEST END AVENUE | NASHVILLE | TN | 37203 |

### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| X19046667-8 | FINANCING STATEMENT | 07/03/2019 12:34:01 | 1 |

---

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | B | BDC GROUP INC. | 1936 51ST, NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | CATERPILLAR FINANCIAL SERVICES CORPORATION | 2120 WEST END AVENUE | NASHVILLE | TN | 37203 |

### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| X19050583-6 | FINANCING STATEMENT | 07/17/2019 16:04:01 | 1 |

---

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | B | BDC GROUP INC. | 1936 51ST, NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | CATERPILLAR FINANCIAL SERVICES CORPORATION | 2120 WEST END AVENUE | NASHVILLE | TN | 37203 |

### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| X19050589-8 | FINANCING STATEMENT | 07/17/2019 16:16:22 | 1 |

---

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | B | BDC GROUP INC. | 1936 51ST, NE | CEDAR | IA | 52402 |

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Secured | B | CATERPILLAR FINANCIAL SERVICES CORPORATION | 2120 WEST END AVENUE | RAPIDS NASHVILLE | TN | 37203 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X19050594-1 | FINANCING STATEMENT | 07/17/2019 16:19:28 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST, NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | CATERPILLAR FINANCIAL SERVICES CORPORATION | 2120 WEST END AVENUE | NASHVILLE | TN | 37203 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X19050595-8 | FINANCING STATEMENT | 07/17/2019 16:19:28 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST, NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | CATERPILLAR FINANCIAL SERVICES CORPORATION | 2120 WEST END AVENUE | NASHVILLE | TN | 37203 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X19052467-6 | FINANCING STATEMENT | 07/25/2019 09:34:05 | 1 |
| X19052540-7 | AMENDMENT | 07/25/2019 11:27:24 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST, NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | CATERPILLAR FINANCIAL SERVICES CORPORATION | 2120 WEST END AVE | NASHVILLE | TN | 372030986 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X19061894-4 | FINANCING STATEMENT | 08/29/2019 08:44:28 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST, NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | CATERPILLAR FINANCIAL SERVICES CORPORATION | 2120 WEST END AVE | NASHVILLE | TN | 372030986 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X19078757-4 | FINANCING STATEMENT | 10/21/2019 13:07:53 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367, 81 MAIN STREET | KEYSTONE | IA | 52249 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367 | KEYSTONE | IA | 52249 |
| Secured | B | FARMERS & MERCHANTS SAVINGS BANK | 200 1ST ST SW | CEDAR RAPIDS | IA | 52404 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E19085415-7 | FINANCING STATEMENT | 11/12/2019 16:29:54 | 2 |
| E22073266-9 | AMENDMENT | 11/04/2022 10:04:54 | 1 |
| E23019097-9 | ASSIGNMENT | 03/31/2023 14:34:54 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | FARMERS & MERCHANTS SAVINGS BANK | 200 1ST ST SW | CEDAR RAPIDS | IA | 52404 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367, 81 MAIN STREET | KEYSTONE | IA | 52249 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367 | KEYSTONE | IA | 52249 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E19091049-5 | FINANCING STATEMENT | 12/04/2019 15:11:36 | 2 |
| E22073267-6 | AMENDMENT | 11/04/2022 10:04:54 | 1 |
| E23019098-6 | ASSIGNMENT | 03/31/2023 14:34:54 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Debtor | B | KEYSTONE SAVINGS BANK | PO BOX 367 | KEYSTONE | IA | 52249 |
| Debtor | B | BDC GROUP INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367, 81 MAIN STREET | KEYSTONE | IA | 52249 |
| Secured | B | FARMERS & MERCHANTS SAVINGS BANK | 200 1ST STREET SW | CEDAR RAPIDS | IA | 52404 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E19092690-5 | FINANCING STATEMENT | 12/10/2019 09:24:30 | 2 |
| E22073269-0 | AMENDMENT | 11/04/2022 10:04:54 | 1 |
| E23019100-4 | AMENDMENT | 03/31/2023 14:34:54 | 1 |
| E23019114-0 | ASSIGNMENT | 03/31/2023 14:48:21 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Debtor | B | KEYSTONE SAVINGS BANK | PO BOX 367 | KEYSTONE | IA | 52249 |
| Debtor | B | BDC GROUP INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | FARMERS & MERCHANTS SAVINGS BANK | 200 1ST STREET SW | CEDAR RAPIDS | IA | 52404 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367, 81 MAIN STREET | KEYSTONE | IA | 52249 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E19092690-5 | FINANCING STATEMENT | 12/10/2019 09:24:30 | 2 |
| E22073269-0 | AMENDMENT | 11/04/2022 10:04:54 | 1 |
| E23019100-4 | AMENDMENT | 03/31/2023 14:34:54 | 1 |
| E23019114-0 | ASSIGNMENT | 03/31/2023 14:48:21 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP, INC. | 1936 51ST ST., NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | MANCHESTER LEASING SERVICES INC. | 18173 EDISON AVENUE | CHESTERFIELD | MO | 63005 |

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|-----|-----|
| Secured | B | WELLS FARGO BANK, NATIONAL ASSOCIATION AS AGENT | 14241 DALLAS PARKWAY, SUITE 1300 | DALLAS | TX | 75254 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E20002057-9 | FINANCING STATEMENT | 01/07/2020 11:21:03 | 7 |
| E21108118-5 | AMENDMENT | 11/15/2021 16:33:26 | 2 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|-----|-----|
| Debtor | B | BDC GROUP INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | FARMERS & MERCHANTS SAVINGS BANK | 200 1ST ST SW | CEDAR RAPIDS | IA | 52404 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367, 81 MAIN STREET | KEYSTONE | IA | 52249 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367 | KEYSTONE | IA | 52249 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E20008769-5 | FINANCING STATEMENT | 01/27/2020 16:00:45 | 1 |
| E22073268-3 | AMENDMENT | 11/04/2022 10:04:54 | 1 |
| E23019099-3 | ASSIGNMENT | 03/31/2023 14:34:54 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|-----|-----|
| Debtor | B | BDC GROUP INC. | 1936 51ST ST NE | CEDAR RAPIDS | IA | 52402-2459 |
| Secured | B | GREATAMERICA FINANCIAL SERVICES CORPORATION | 625 FIRST STREET | CEDAR RAPIDS | IA | 52401-2030 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X20030477-9 | FINANCING STATEMENT | 04/02/2020 12:21:02 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|-----|-----|
| Debtor | B | BDC GROUP INC. | 1936 51ST STREE NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | GREENSTATE CREDIT UNION | 2355 LANDON ROAD | NORTH LIBERTY | IA | 52317 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|

| File # | Type | File Time | Pages |
|---|---|---|---|
| X20038221-1 | FINANCING STATEMENT | 04/28/2020 10:56:15 | 2 |

## ─── Acknowledgement of Filing ───

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | B | BDC GROUP INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | KIRKWOOD COMMUNITY COLLEGE | PO BOX 2068 | CEDAR RAPIDS | IA | 52406 |

### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| E20044445-7 | FINANCING STATEMENT | 05/18/2020 09:01:39 | 1 |

## ─── Acknowledgement of Filing ───

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | B | BDC GROUP, INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | U.S. SMALL BUSINESS ADMINISTRATION | 10737 GATEWAY WEST, #300 | EL PASO | TX | 79935 |

### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| X20052638-6 | FINANCING STATEMENT | 06/08/2020 09:33:01 | 1 |

## ─── Acknowledgement of Filing ───

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | B | BDC GROUP INC. | 1936 51ST ST NE | CEDAR RAPIDS | IA | 524022459 |
| Secured | B | JOHN DEERE CONSTRUCTION & FORESTRY COMPANY | 6400 NW 86TH ST PO BOX 6600 | JOHNSTON | IA | 501316630 |

### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| X20057582-3 | FINANCING STATEMENT | 06/19/2020 03:40:58 | 1 |

## ─── Acknowledgement of Filing ───

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | B | BDC GROUP INC. | 1936 51ST ST NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | JOHN DEERE CONSTRUCTION & FORESTRY COMPANY | 6400 NW 86TH ST | JOHNSTON | IA | 50131 |

### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| X20077963-4 | FINANCING STATEMENT | 08/13/2020 05:01:35 | 1 |
| E22020793-1 | AMENDMENT | 03/01/2022 12:54:59 | 1 |

### Acknowledgement of Filing

#### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | B | BDC GROUP INC. | 1936 51ST ST NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | JOHN DEERE CONSTRUCTION & FORESTRY COMPANY | 6400 NW 86TH ST | JOHNSTON | IA | 50131 |

#### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| X20086282-2 | FINANCING STATEMENT | 09/10/2020 05:01:50 | 1 |

### Acknowledgement of Filing

#### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | B | BDC GROUP INC. | 1936 51ST ST NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | JOHN DEERE CONSTRUCTION & FORESTRY COMPANY | 6400 NW 86TH ST | JOHNSTON | IA | 50131 |

#### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| X20088939-7 | FINANCING STATEMENT | 09/17/2020 05:01:39 | 1 |

### Acknowledgement of Filing

#### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|---|---|---|---|---|---|---|
| Debtor | P | DENNIS CLIFFORD BRUCE | 565 EASTVIEW AVE. | MARION | IA | 52302 |
| Debtor | B | BDC GROUP INC. | 1936 51ST ST NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | CAPITALPLUS CONSTRUCTION SERVICES, LLC | 2510 SOLWAY RD | KNOXVILLE | TN | 37931 |

#### Releated Filings

| File # | Type | File Time | Pages |
|---|---|---|---|
| X20119588-3 | FINANCING STATEMENT | 12/23/2020 13:53:08 | 2 |
| X23014776-3 | TERMINATION | 05/04/2023 15:04:52 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP, INC. | 1936 51ST ST. NE | CEDAR RAPIDS | IA | 52405 |
| Secured | B | EAST CENTRAL IOWA COUNCIL OF GOVTS | 700 16TH ST. NE, SUITE 301 | CEDAR RAPIDS | IA | 52402 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E21007493-9 | FINANCING STATEMENT | 01/25/2021 11:55:53 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | P | DENNIS C BRUCE | 565 EASTVIEW AVE | MARION | IA | 52302 |
| Debtor | B | BDC GROUP INC. | 1936 51ST ST NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | DEERE CREDIT, INC. | 6400 NW 86TH STREET | JOHNSTON | IA | 50131 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E21013360-8 | FINANCING STATEMENT | 02/11/2021 11:30:01 | 2 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | P | DENNIS C BRUCE | 565 EASTVIEW AVE | MARION | IA | 52302 |
| Debtor | B | BDC GROUP INC. | 1936 51ST ST NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | DEERE CREDIT, INC. | 6400 NW 86TH STREET | JOHNSTON | IA | 50131 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E21017110-4 | FINANCING STATEMENT | 02/24/2021 08:03:26 | 2 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 |
| Secured | B | MARLIN BUSINESS BANK | 2795 E COTTONWOOD PKWY | SALT LAKE CITY | UT | 84121 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X21038238-5 | FINANCING STATEMENT | 04/20/2021 10:51:15 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1936 51ST ST NE | MARION | IA | 52402 |
| Secured | B | CITIBANK, N.A., ITS BRANCHES, SUBSIDIARIES AND AFFILIATES | 388 GREENWICH STREET, 10TH FLOOR | NEW YORK | NY | 10013 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X21047814-8 | FINANCING STATEMENT | 05/12/2021 21:55:26 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | P | DENNIS CLIFFORD BRUCE | 565 EASTVIEW AVE | MARION | IA | 52302 |
| Debtor | B | BDC GROUP INC. | 1525 KETELSEN DR | HIAWATHA | IA | 52233 |
| Secured | B | JOHN DEERE CONSTRUCTION & FORESTRY COMPANY | 6400 NW 86TH ST | JOHNSTON | IA | 50131 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X21094059-6 | FINANCING STATEMENT | 10/06/2021 05:02:41 | 2 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | P | DENNIS CLIFFORD BRUCE | 565 EASTVIEW AVE | MARION | IA | 52302 |
| Debtor | B | BDC GROUP INC. | 1525 KETELSEN DR | HIAWATHA | IA | 52233 |
| Secured | B | JOHN DEERE CONSTRUCTION & FORESTRY COMPANY | 6400 NW 86TH ST | JOHNSTON | IA | 50131 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X21111178-2 | FINANCING STATEMENT | 11/25/2021 05:01:17 | 2 |
| X22064486-6 | TERMINATION | 12/03/2022 05:00:58 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1525 KETELSEN DR. | HIAWATHA | IA | 52233 |

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Secured | B | DITCH WITCH FINANCIAL SERVICES, A PROGRAM OF BANK OF THE WEST | 1625 W. FOUNTAINHEAD PKWY, AZ-FTN-10C-A, | TEMPE | AZ | 85282 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X21117147-3 | FINANCING STATEMENT | 12/14/2021 14:24:05 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC | 1525 KETELSEN DRIVE | HIAWATHA | IA | 52233 |
| Secured | B | KEYSTONE SAVINGS BANK | PO BOX 367 | KEYSTONE | IA | 52249 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E22038220-8 | FINANCING STATEMENT | 04/25/2022 15:31:06 | 2 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1525 KETELSEN DR | HIAWATHA | IA | 52233 |
| Secured | B | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | PO BOX 2576 UCCSPREP@CSCINFO.COM | SPRINGFIELD | IL | 62708 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X23001746-0 | FINANCING STATEMENT | 01/13/2023 16:39:34 | 2 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | P | DENNIS CLIFFORD BRUCE | 565 EASTVIEW AVE | MARION | IA | 52302 |
| Debtor | B | BDC GROUP INC. | 1525 KETELSEN DR | HIAWATHA | IA | 52233 |
| Secured | B | DEERE CREDIT, INC. | 6400 NW 86TH ST | JOHNSTON | IA | 50131 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X23005342-6 | FINANCING STATEMENT | 02/15/2023 05:01:17 | 2 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | P | DENNIS CLIFFORD BRUCE | 565 EASTVIEW AVE | MARION | IA | 52302 |
| Debtor | B | BDC GROUP INC. | 1525 KETELSEN DR | HIAWATHA | IA | 52233 |
| Secured | B | DEERE CREDIT, INC. | 6400 NW 86TH ST | JOHNSTON | IA | 50131 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X23005343-3 | FINANCING STATEMENT | 02/15/2023 05:01:19 | 2 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC | 1525 KETELSON DR | HIAWATHA | IA | 52233 |
| Secured | B | MANCHESTER LEASING SERVICES INC. | 18173 EDISON AVE | CHESTERFIELD | MO | 63005 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| E23017220-2 | FINANCING STATEMENT | 03/22/2023 17:48:19 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP, INC | 1525 KETELSEN DR | HIAWATHA | IA | 52233 |
| Secured | B | GREEN NOTE CAPITAL PARTNERS INC | 1019 AVENUE P, SUITE 401 | BROOKLYN | NY | 11223 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X23016810-3 | FINANCING STATEMENT | 05/21/2023 11:17:56 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC | 1525 KETELSEN DRIVE | HIAWATHA | IA | 52233 |
| Secured | B | KYF GLOBAL PARTNERS, LLC | 1 INDUSTRIAL WAY W BLDG C | EATONTOWN | NJ | 07724 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X23017364-8 | FINANCING STATEMENT | 05/25/2023 14:17:32 | 1 |

## Acknowledgement of Filing

### Filing Parties

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Debtor | B | BDC GROUP INC. | 1525 KETELSEN DRIVE | HIAWATHA | IA | 52233 |

| Type | B/P | Name | Address 1 | City | ST | Zip |
|------|-----|------|-----------|------|----|----|
| Secured | B | MARLIN LEASING CORP | 300 FELLOWSHIP RD | MOUNT LAUREL | NJ | 08054 |

### Releated Filings

| File # | Type | File Time | Pages |
|--------|------|-----------|-------|
| X23024975-6 | FINANCING STATEMENT | 08/01/2023 07:52:15 | 1 |

The information contained in this search report is current through 4:30 PM on 10/26/2023.

The undersigned filing officer certifies that, as of this time and date, a search of the Iowa Secretary of State's Information Management System, designating the above listed search criteria, using the filing office standard search logic, revealed the information reported above.

Paul D. Pate
Iowa Secretary of State

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**E19025755-9**

**FILED
IOWA SECRETARY OF STATE**

**2019-04-19    09:12**

A. NAME & PHONE OF CONTACT AT FILER (optional)

Kayla Klein
319-730-5911

B. E-MAIL CONTACT AT FILER (optional)

kklein@fmbank.biz

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)

Farmers & Merchants Savings Bank
200 1st St SW
Cedar Rapids, IA 52404

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

DEBTOR'S NAME: Provide only one Debtor name - use exact, full name; do not omit, modify, or abbreviate any part of the debtor's name

| ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BDC GROUP INC. | | | |
| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1936 51ST STREET NE | CEDAR RAPIDS | IA | 52402 | USA |

SECURED PARTY'S NAME: NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name

| ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FARMERS & MERCHANTS SAVINGS BANK | | | |
| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 200 1ST ST SW | CEDAR RAPIDS | IA | 52404 | USA |

COLLATERAL: This financing statement covers the following collateral:

Accounts and Other Rights to Payment: All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor. Inventory: All inventory held for ultimate sale or lease, or which as been or will be supplied under contract of service, or which are raw materials, work in process, or materials used or consumed in my business. Equipment: All equipment including, but not limited to machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The property includes any equipment described in a list or schedule I give to you, but such a list is not necessary to create or perfect a valid security interest in all of my equipment. Instruments and Chattel Paper: All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper. General Intangibles: All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use my name. Documents: All documents of title including, but not limited to bills of lading, dock warrants and receipts, and warehouse receipts. Government Payments and Program: All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program. Investment Property: All investment property including, but not limited to certificated securities, uncertificated securities, securities

entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets. Deposit Accounts: All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts. Specific Description: In addition to any property generally described above, the following property: 2019 GMC YUKON VIN – 1GKS2CKJ8KR197853; 2018 RAM 3500 VIN – 3C63R3NL9JG430492

Check only if applicable and check only one box: Collateral is: ☐ held in a Trust ☐ being administered by a Decedent's Personal Representative

Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

OPTIONAL FILER REFERENCE DATA

☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

Name and address of a RECORD OWNER of real estate described (if Debtor does not have a record interest):

Description of real estate:

MISCELLANEOUS

Bank Appendix 64

████████████
████
████████

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**E22073265-2**

**FILED**
**IOWA SECRETARY OF STATE**

**2022-11-04      10:04**

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)

Keystone Savings Bank
81 Main St, PO Box 367
Keystone, IA 52249

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

INITIAL FINANCING STATEMENT FILE NUMBER

E19025755-9

☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement.

☐ ASSIGNMENT (full or partial): Provide name and address of Assignee and name of Assignor in sections below.

☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

☑ PARTY INFORMATION CHANGE:

Check one of these two boxes: This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:

☑ CHANGE name and/or address: Give current record name, new name (if name change), and/or new address (if address change) in sections below.

☐ ADD name: Complete Name, and also Address section below.

☐ DELETE name: Give record name to be deleted in section below.

CURRENT RECORD INFORMATION: Complete for Party information Change - provide only one name

| | ORGANIZATION'S NAME |
|---|---|
| OR | FARMERS & MERCHANTS SAVINGS BANK |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

CHANGED OR ADDED INFORMATION: Complete for Assignment or Party information Change - provide only one name (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | ORGANIZATION'S NAME |
|---|---|
| OR | KEYSTONE SAVINGS BANK |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| PO BOX 367, 81 MAIN ST | KEYSTONE | IA | 52249 | USA |

COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (name of Assignor, if this is an Assignment). If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | ORGANIZATION'S NAME |
|---|---|
| OR | KEYSTONE SAVINGS BANK |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

OPTIONAL FILER REFERENCE DATA

Use this space for additional information

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**E23019096-2**

**FILED
IOWA SECRETARY OF STATE**

**2023-03-31     14:34**

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)

Abe Carls
Simmons Perrine Moyer Bergman PLC, 115 Third
Street SE, Suite 1200
Cedar Rapids, IA 52401

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

INITIAL FINANCING STATEMENT FILE NUMBER

E19025755-9

☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement.

☑ **ASSIGNMENT** (full or partial): Provide name and address of Assignee and name of Assignor in sections below.

☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes: This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Give current record name, new name (if name change), and/or new address (if address change) in sections below. ☐ ADD name: Complete Name, and also Address section below. ☐ DELETE name: Give record name to be deleted in section below.

CHANGED OR ADDED INFORMATION: Complete for Assignment or Party information Change - provide only one name (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|---|
| OR | Keystone Savings Bank | | | |
| | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO Box 367, 81 Main Street | Keystone | IA | 52249 | USA |

COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (name of Assignor, if this is an Assignment). If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|---|
| OR | Farmers & Merchants Savings Bank | | | |
| | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

OPTIONAL FILER REFERENCE DATA

Use this space for additional information

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**E22038220-8**

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |

**FILED**
**IOWA SECRETARY OF STATE**

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |

**2022-04-25     15:31**

| C. SEND ACKNOWLEDGEMENT TO: (Name and Address) |
| --- |
| Keystone Savings Bank |
| 81 Main St, PO Box 367 |
| Keystone, IA 52249 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

DEBTOR'S NAME: Provide only <u>one</u> Debtor name - use exact, full name; do not omit, modify, or abbreviate any part of the debtor's name

| ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| BDC GROUP INC | | | | |
| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1525 KETELSEN DRIVE | HIAWATHA | IA | 52233 | USA |

SECURED PARTY'S NAME: NAME (or NAME OF ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name

| ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| KEYSTONE SAVINGS BANK | | | | |
| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 367 | KEYSTONE | IA | 52249 | USA |

COLLATERAL: This financing statement covers the following collateral:

All present and future right, title and interest in and to any and all personal property of the Debtor, whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation, the following categories of property: goods (including inventory, equipment, fixtures, farm products and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter-of-credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), all supporting obligations and all proceeds, products, additions, accessions, substitutions and replacements of the foregoing property. Any term used herein is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction. This financing statement covers, and is intended to cover, all personal property of the Debtor. 2015 DITCH WITCH MR90 MUD RECLAIMER (SERIAL NUMBER: CMWMR90XLF0000049) 2022 DITCH WITCH AT40 W/ DRILLLOK, F5 FALCON RECIEVER, 10.9" AURORA (SERIAL NUMBER: DWPAT40AVN0000014) 2017 CHEVROLET SILVERADO K2500 HEAVY DUTY (VIN 1GC1KUEG7HF114968); 2010 TOYOTA TUNDRA DOUBLE CAB SR5 (VIN 5TFUW5F1XAX112293); 2017 TOYOTA TUNDRA DOUBLE CAB SR/SR5 (VIN 5TFUW5F19HX676236); 2018 RAM PROMASTER 2500 2500 HIGH (VIN 3C6TRVDG6JE124720); 2018 RAM PROMASTER 2500 2500 HIGH (VIN 3C6TRVDG2JE116212); 2015 DITCH WITCH T14R TRL (VIN 1DSB122X1F1701849)

Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is: ☐ held in a Trust ☐ being administered by a Decedent's Personal Representative

| Check <u>only</u> if applicable and check <u>only</u> one box: | Check <u>only</u> if applicable and check <u>only</u> one box: |
| --- | --- |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

OPTIONAL FILER REFERENCE DATA

☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

This FINANCING STATEMENT:

☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

| Name and address of a RECORD OWNER of real estate described (if Debtor does not have a record interest): | Description of real estate: |
|---|---|
| | |

MISCELLANEOUS

Bank Appendix 68