**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 11 |
| BDC GROUP, INC., | Case No. 23-00484 |
| Debtor. | Hon. Thad J. Collins |
| | **RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR SUMMARY JUDGMENT IN FAVOR OF NON-MOVING PARTY** |

The Official Committee of Unsecured Creditors (the "Committee") of BDC Group, Inc. (the "Debtor"), submits this response in opposition to the motion for summary judgment (the "Motion") (ECF No. 291) filed by Keystone Savings Bank ("KSB") on its motion to recognize lien (ECF No. 290) and the Committee's request for summary judgment in favor of non-moving party pursuant to Federal Rule 56(f), made applicable by Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure. In support of this response, the Committee states as follows:

**Preliminary Statement**

The Committee opposes KSB's Motion because a common sense reading of section 552 of title 11 of the United States Code (the "Bankruptcy Code) and the overwhelming weight of the case law demonstrate that a secured lender's pre-petition liens do not extend to Chapter 5s[1] held by the Debtor's estate. KSB misapplies the principles recognized in the Eighth Circuit's recent decision in *In re Simply Essentials, LLC*, 78 F.4th 1006 (8th Cir. 2023), as its relates to Iowa's Uniform Commercial Code and the Bankruptcy Code.

---

[1] "Chapter 5s" as used in this response refers to avoidance actions arising under chapter 5 of the Bankruptcy Code including, without limitation, sections 542, 544, 545, 547, 548, 550, 551, and 553 of the Bankruptcy Code, and fraudulent conveyance, fraudulent transfer, and illegal dividend/distribution laws arising under applicable state law.

As discussed in detail below, Chapter 5s only come into existence upon the filing of a bankruptcy petition and vest in the bankruptcy estate for the sole benefit of the estate. Accordingly, Chapter 5s are after-acquired property, not the proceeds of unmatured interests in a hypothetical future bankruptcy estate. A plain reading of section 552 and applicable policy considerations require that the Court deny KSB's Motion and, instead, grant summary judgment in favor of the Committee as the non-moving party.

## **Legal Standard**

A motion for summary judgment may be brought by a party at any time. Fed. R. Civ. P. 56(b). Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Transcontinental Ins. Co. v. W.G. Samuels Co., Inc.*, 370 F.3d 755, 757 (8th Cir. 2004). In ruling on a motion for summary judgment, courts must evaluate admissible evidence in the light most favorable to the non-moving party. *Iowa 80 Group. Inc. v. I.R.S.*, 406 F.3d 950, 952 (8th Cir. 2005).

The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is no genuine issue of material fact that requires a trial to resolve. Fed. R. Civ. P. 56(e); *Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 794 (8th Cir. 2012) ("Speculation and conjecture are insufficient to defeat summary judgment.") "Summary judgment is not a dress rehearsal or practice run; it 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (citation omitted). Summary judgment is the "put up or shut up moment in a lawsuit," when a party must show what evidence it has that would convince a trier of fact to accept its version of the events. *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2010) (internal quotation omitted).

A court may grant summary judgment in favor of a nonmovant after giving notice and a reasonable time to respond. Fed. R. Civ. P. 56(f)(1).

### Argument

The Committee is entitled to summary judgment as the non-moving party because the relevant facts are not in dispute and applicable statutory and case law demonstrates that Chapter 5s are unencumbered by pre-petition liens and preserved for the benefit of the estate.

**I. KSB Misapplies *Simply Essentials*.**

Recently, in *In re Simply Essentials, LLC*, 78 F.4th 1006 (8th Cir. 2023), the Eighth Circuit considered the question of whether Chapter 5s are property of the bankruptcy estate which may be sold by a chapter 7 trustee. This Court had previously ruled that such actions were salable and the target of those Chapter 5s, Pitman Farms,[2] appealed contending that Chapter 5s are not property of the estate, but were powers of a trustee under the Bankruptcy Code. *Id.* at 1008; *Opening Brief of Appellant Pitman Farms*, 2022 WL 2523157, at *9-17, *Pitman Farms v. ARKK Food Company, LLC*, Case No. 22-2011 (8th Cir. July 1, 2022).

The Eighth Circuit rejected Pitman Farms' argument and held that Chapter 5s are, indeed, property of the estate as the definition is broad and includes "inchoate or contingent interests held by the debtor prior to the filing of bankruptcy." *Id.* at 1009. "Because debtors have the right to file for bankruptcy and the debtor in possession or the Trustee may file avoidance actions to recover property, the debtor has an inchoate interest in the avoidance actions prior to the commencement of the bankruptcy proceedings." *Id.* at 1009.[3]

---

[2] Pitman Farms was represented by the same counsel as now represents KSB in this case.

[3] The court went on to caveat its holding, explaining that even if the debtor did not have an interest in avoidance actions prior to filing a bankruptcy petition such claims are property of the estate under section 541(a)(7). *Id.* at 1009.

3

KSB contends that this case stands for the proposition that its pre-petition liens extend to inchoate interests whose "proceeds" are the estate's choate interests in Chapter 5s. As discussed in detail below, KSB's application of *Simply Essentials*' holding far exceeds its scope, is contrary to section 552(a), and is unsupported by any statute or case law.

II. **KSB Does Not Have an Enforceable Pre-Petition Lien in Chapter 5s Because Such Lien Did Not Attach to Anything.**

KSB's purported lien in an "inchoate interest" is really no lien at all. This is because an inchoate interest is one that has not yet vested and, thus, KSB's security interest could not have attached to anything prior to the Petition Date.[4]

"An inchoate interest is an interest that has not fully developed, matured, or vested." *In re Bucchino*, 439 B.R. 761, 772 (Bankr D.N.M. 2010). A security interest only attaches to property once it becomes "choate." Under Iowa law, "[a] security interest attaches to the collateral when it becomes enforceable against the debtor with respect to the collateral . . . ." Iowa Code § 554.9203(1). "[A] security interest is enforceable against the debtor . . . with respect to the collateral only if:

a. value has been given;
b. the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
c. one of the following conditions is met:
   (1) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned; . . . ."

Iowa Code § 554.9203(2). Here, it is clear that KSB's security interests could not have attached to Chapter 5s prior to the Petition Date because prior to that point, the Debtor had no actual rights in Chapter 5s or power to transfer rights in them because Chapter 5s only exist once a bankruptcy

---

[4] Capitalized terms not defined in this response shall have the meaning ascribed to them in the Committee's Statement of Uncontested Material Facts submitted contemporaneously herewith.

4

case is filed. Prior to filing a bankruptcy case, the Debtor could not have assigned, sold, or granted security interests in Chapter 5s because BDC – the pre-petition entity – had no right to do so.

While under *Simply Essentials* inchoate interest may exist in the pre-bankruptcy debtor, they only vest in the bankruptcy estate post-petition. *See e.g. Simply Essentials*, 78 F.4th at 1008 ("Whether the avoidance action is brought by the trustee or a creditor, the action is brought for the benefit of the estate and therefore belongs to the estate."); *Myers v. Raynor (In re Raynor)*, 406 B.R. 375, 381 (B.A.P. 8th Cir. 2009) ("Avoidance actions accrue when a debtor commences a case by filing a bankruptcy petition . . . ."). A debtor has no standing to bring Chapter 5s outside of a bankruptcy case and, therefore, cannot possibly grant a security interest in such actions. Take for example, section 549 claims, which exclusively address post-petition transfers. Those actions cannot exist pre-petition because they relate solely to post-petition conduct and arise only under the Bankruptcy Code. *See* 11 U.S.C § 549. Section 544 claims, too, cannot be brought by a debtor pre-bankruptcy. That statute simply gives a trustee standing to pursue voidable transfers that a creditor could have avoided under state law. *See* 11 U.S.C § 544(a).[5]

The case law supports this conclusion as well. *See In re Southeast R.R. Contractors, Inc.*, 235 B.R. 619, 621-24 (Bankr. E.D. Tenn. 1996) (holding that preference recoveries are property of the estate and do not belong to the debtor and, accordingly, were not subject to IRS tax lien on property belonging to the debtor); *Myers v. First Source Fin., LLP (In re Demma Fruit Co.)*, 2002 Bankr. Lexis 1781, at *11 (Bankr. D. Neb. May 28, 2002) ("The debtor did not own the right to pursue a fraudulent transfer action … and therefore could not have encumbered or assigned that

---

[5] In this respect, *Simply Essentials* misconstued the nature of at least some avoidance actions as not all relate to "transfers made by the debtor prior to the commencement of bankruptcy that were made voidable by the Bankruptcy Code." *Simply Essentials*, 78 F.4th at 1009.

5

right[.]"). Thus, the Debtor could not have encumbered Chapter 5s pre-petition because it had no ownership interest or right to transfer the property.[6]

Indeed, as property of the estate any assignment, sale, or grant of a security interest in such assets must be approved by a bankruptcy court to be effective. *See* 11 U.S.C. § 363(b)(1) (requiring notice and a hearing to use, sell, or lease property of the estate outside the ordinary course of business); 11 U.S.C. § 364(c) (requiring notice and a hearing to obtain secured credit and grant lien on estate property). Accordingly, under Iowa law, KSB's pre-petition liens did not attach to Chapter 5s or any purported interest therein.

### III. Section 552 Bars KSB's Pre-Petition Liens from Encumbering Chapter 5s.

Section 552 of the Bankruptcy Code addresses the post-petition effect of a security interest and generally provides that a pre-petition security interest does not extend to after-acquired property, but does extent to the proceeds of pre-petition collateral. Contrary to KSB's arguments, Chapter 5s are after-acquired property and do not constitute proceeds of any identifiable pre-petition collateral.

A. <u>Chapter 5s are after-acquired property under Section 552(a).</u>

While under *Simply Essentials* an inchoate interest may exist in Chapter 5s, the avoidance actions themselves are clearly after-acquired property to which KSB's pre-petition liens do not attach. Section 552(a) prohibits attachment of pre-petition liens to post-petition after-acquired property and provides that "property acquired **by the estate** or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a) (emphasis added).

---

[6] And as explained in Section II, any assignment, sale, or grant of security interests in Chapter 5s require Court approval.

For purposes of section 552(a), the burden of proving that a lien survives post-petition has been placed upon the secured party. *Official Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC)*, 501 B.R. 549, 612 (Bankr. S.D.N.Y. 2013); *In re Ledis*, 259 B.R. 472, 477-78 (D. Mass. 2001); *American President Lines, Ltd. v. Lykes Bros. S.S. Co. (In re Lykes Bros. S.S. Co.)*, 216 B.R. 856, 863-64 (Bankr. M.D. Fla. 1996) (outlining proof necessary to preserve a security interest from the invalidating provisions of section 552).

Chapter 5s are indisputably property acquired *by the estate*. They do not accrue or vest until a debtor files a bankruptcy case. *See e.g.*, *Simply Essentials*, 78 F.4th at 1008 *Raynor*, 406 B.R. at 381. *Simply Essentials* expressly acknowledged this in its decision, holding that "avoidance actions clearly qualify as property of the estate under subsection (7) which includes 'any interest in property that the estate acquires **after** commencement of the case.'" *Simply Essentials*, 78 F.4th at 1009 (emphasis added). There is an important distinction between subsections 541(a)(6) and (a)(7) of the Bankruptcy Code – subsection (a)(6) includes proceeds of property interests a debtor holds as of the commencement of the case while subsection (a)(7) includes after-acquired property of the estate. *See In re Molina Y Vedia*, 150 B.R. 393, 398 (Bankr. S.D. Tex. 1992) (explaining that sections 541(a)(6) and 541(a)(7) address overlapping but not identical categories of estate property). Because the Eighth Circuit ruled that Chapter 5s are property the estate under section 541(a)(7), they necessarily constitute after-acquired property to which KSB's liens do not attach.

The overwhelming weight of the relevant case law supports this conclusion. In *Mellon Bank (E.), N.A. v. Glick (In re Integrated Testing Prods. Corp.)*, 69 B.R. 901, 905 (D.N.J. 1987), the secured creditor made an argument similar to KSB's – that the right to recover preferences attached prior to the bankruptcy filing but was contingent (*i.e.* inchoate) on a bankruptcy filing. *Id.* at 905. The court rejected the secured creditor's argument, explaining that because right to recover

7

preferences clearly attaches only post-petition the secured creditor could not have acquired the right pre-bankruptcy as required by section 552. *Id.*

In *Off. Comm. of Unsec. Creds. v. UMB Bank, N.A. (In re Residential Capital, LLC)*, 497 B.R. 403 (Bankr. S.D.N.Y. 2013), the court denied a similar request from a secured creditor. There, chapter 11 debtors and a creditors' committee brought an adversary proceeding for determination of junior secured creditors' liens and the secured creditors counterclaimed asserting that the proceeds of avoidance actions were subject to their liens. *Id.* at 409. The court rejected the secured creditors' contention, explaining that "[a]voidance actions, including those arising under state law, can only be brought by the trustee after the petition is filed .... These claims, therefore, arise post-petition and must be considered after-acquired property belonging to the estate." *Id.* at 414.

The court in *In re Tek-Aids Indus., Inc.*, 145 B.R. 253 (Bankr. N.D. Ill. 1992), reached the same result. In that case, the secured lender argued that preference actions and their recoveries were the proceeds of property "acquired" before the commencement of the case. *Id.* at 256. The court rejected the lender's reasoning as flawed:

> The estate's causes of action for the preferences did *not* exist before the filing of the Chapter 11 petition. If the Debtor had never filed bankruptcy, none of the preference actions could ever have been brough by anybody. Since it was the filing of the Chapter 11 petition that gave birth to the existence of the causes of action to recover preferences, and since this case was "commenced" by the voluntary Chapter 11 petition . . . it is obvious that the preferences could not be part of the "property of the estate acquired *before* the commencement of the case."

*Id.* at 256. *See also Connolly Geaney Ablitt & Willard, P.C. v. Durham Commercial Capital Corp. (In re Connolly Geaney Ablitt & Willard, P.C.)*, 585 B.R. 644, 653 (Bankr. D. Mass. 2018) (holding that pre-petition liens do not extend to avoidance action recoveries, adopting the reasoning in *Residential Capital*); *McGoldrick v. Juice Farms, Inc. (In re Ludford Fruit Prods., Inc.)*, 99 B.R. 18, 24-26 (Bankr. C.D. Cal. 1989) (holding that section 552(a) barred secured creditor's security interest in general intangibles from attaching to preference actions or

8

recoveries); *Hutson v. First–Citizens Bank & Trust Co. (In re Nat'l Gas Distribs., LLC)*, 2007 Bankr. Lexis 4703, at \*21–22 (Bankr. E.D.N.C. July 24, 2007) (concluding that trustee's preference and fraudulent transfer recovery actions constitute post-petition property of the estate not subject to pre-petition security interests).

Collier's, a leading treatise on bankruptcy law, agrees.

> Once a bankruptcy case commences, however, because all recoveries under the avoiding powers are property of the estate, administered almost exclusively by the trustee for the benefit of the estate as a whole rather than for any creditor individually, it is difficult to see how such recoveries can be other than "after-acquired property" within the meaning of section 552(a), rather than proceeds of prepetition collateral under section 552(b)(1). This is true for fraudulent transfers as well as preferences, and no persuasive distinction seems possible along these lines.

5 COLLIER ON BANKRUPTCY P. 552.02 (16th ed. 2023). As such, Chapter 5s constitute after-acquired property and KSB's pre-petition liens do not encumber any estate avoidance actions.

B. <u>Chapter 5s are not proceeds of an inchoate interest in Chapter 5s.</u>

KSB's argument relies on a fundamentally faulty premise – that Chapter 5s are "proceeds" of its pre-petition collateral – specifically general intangibles.[7] Section 552(b)'s exception to subsection (a) provides that a security interest "extends to <u>property of the debtor acquired before the commencement of the case and to proceeds</u>, products, offspring, or profits <u>of such property</u> . . . ." 11 U.S.C. § 552(b)(1) (emphasis added).

"Section 552(b) is intended to cover after-acquired property that is directly attributable to prepetition collateral, without addition of estate resources." 5 COLLIER ON BANKRUPTCY P. 552.02 (16th ed. 2023). Here, Chapter 5s are not directly attributable to pre-petition collateral, but are

---

[7] While the Committee does not concede that Chapter 5s are general intangibles, and contends that at least certain of the claims are better characterized as commercial tort claims which must be specifically identified in a security agreement, *see e.g. In re Nat'l Risk Assessment Inc.*, 612 B.R. 470, 472 (Bankr. W.D.N.Y. 2020) (fraudulent transfer claims are tort claims); *In re B.L. Jennings, Inc.*, 373 B.R. 742, 768 (Bankr. M.D. Fla. 2007) ("A fraudulent transfer under the UFTA is tortious conduct ...."), the Committee submits that the type of collateral is moot because KSB's pre-petition liens do not extend to after-acquired property anyway.

9

entirely dependent upon the addition of estate resources – the accrual of avoidance actions which did not exist and could not have been pursued by the Debtor prior to the Petition Date.

As explained above, Chapter 5s are not acquired before the commencement of the case; they vest only upon the filing of a bankruptcy petition. Therefore, they cannot be proceeds. KSB's argument is circular – the Debtor had a pre-petition unvested interest Chapter 5s and, upon filing bankruptcy, Chapter 5s vested and became the "proceeds" of the inchoate interest. KSB questions "where else would the *choate* avoidance actions come from if not a choate interest in them?" The answer is simple – from the rights afforded by the Bankruptcy Code, not from a hypothetical pre-petition interest. There was no disposition of the inchoate interest and nothing was collected thereupon. Chapter 5s cannot be proceeds of themselves. They are simply estate property which was created upon the bankruptcy filing.

Cases have rejected the contention that Chapter 5s are proceeds of general intangibles. *See Southeast R.R. Contractors, Inc.*, 235 B.R. at 621-24 (rejecting argument that preference recoveries are proceeds of pre-petition collateral); *Lease-A-Fleet, Inc. v. University Cadillac, Inc. (In re Lease-A-Fleet, Inc.)*, 152 B.R. 431, 439 (Bankr. E.D. Pa. 1993) (same); *Hennessy v. Kennedy (In re Sun Island Foods)*, 125 B.R. 615, 619-20 (Bankr. D. Haw. 1991) ("It is well settled that a Trustee's right to pursue a preference action does not become collateral to any party's security interest.")

Notably, KSB does not cite any case law supporting its contention that a lender's pre-petition liens extend to Chapter 5s – because there are none.[8] Indeed, KSB's own argument and cited law belie its position. KSB cites *In re Heron, Burchette, Ruckert & Rothwell*, 148 B.R. 660

---

[8] Some cases have held that pre-petition liens can extend to proceeds of Chapter 5s where the specific property sought to be recovered was pre-petition collateral of the secured lender, such as the fraudulent transfer of inventory to a third-party. *See e.g., In re Figearo*, 79 B.R. 914, 916-18 (Bankr. D. Nev. 1987). However, to the Committee's knowledge no cases have ever held a secured lender pre-petition liens extend to Chapter 5s as a blanket lien.

10

(Bankr. D.D.C. 1992) for the proposition that a security agreement containing a proceeds and after-acquired property clause will reach a debtor's interest in inchoate causes of action. Motion at p. 2. Yet that case had nothing to do with a proceeds clause; it rested upon an after-acquired property clause, holding that a bank's security interest could extend to future contributions from partners to cover partnership liabilities. *Id.* at 683. This demonstrates that inchoate choses in action only become collateral as *after-acquired property*, not *proceeds*. The court in *Parker Roofing Co. v. Pacific First Federal Sav. Bank*, 59 Wash. App. 151 (Wash. App. Ct. 1990), explains it best. In addressing whether a security agreement could cover future causes of action, the court explained that an after-acquired property provision is designed to do exactly that – cover a cause of action that later came into existence. *Id.* at 157-58. That is the critical point – inchoate choses in action are only covered by a security agreement as after-acquired property and not as proceeds because they become collateral only when they come into existence.

    C. <u>Policy Reasons and the Equities of the Case Require that the Court Not Recognize KSB's Pre-Petition Liens in Chapter 5s.</u>

Policy considerations support the Committee's interpretation as well. Bankruptcy courts reject the notion that the Bankruptcy Code be interpreted in a way to improve a creditor's position by the mere filing of a bankruptcy petition. *See e.g.*, *In re Davis*, 170 F.3d 475, 481 (5th Cir. 1999) (noting that interpreting a Bankruptcy Code provision to put preferred creditors in a better position after a bankruptcy filing than before "may create an incentive for filing involuntary bankruptcies"); *In re Hall*, 99 B.R. 425, 428 (Bankr. N.D. Iowa 1989) ("Bankruptcy should not place Farmland in a better position *vis a vis* the farmers than it would have been outside bankruptcy."); *In re Brown*, 310 B.R. 341, 346 (Bankr. N.D. Ohio 2004) ("A basic goal of the Bankruptcy Code is to treat similarly situated creditors equally." Thus, once a bankruptcy petition is filed, creditors are generally not permitted to improve their position at the expense of another creditor.") If the Court

11

accepts KSB's position, KSB and nearly every other pre-petition secured lender will receive a significant windfall in the form of hundreds of thousands if not hundreds of millions of dollars in unbargained-for and unintended additional collateral to the significant detriment of unsecured creditors. *See Tek-Aids*, 145 B.R. at 256 ("Allowing a prepetition blanket security interest to reach preference actions would be tantamount to giving a creditor additional collateral it would not have had if the debtor had not filed a bankruptcy petition or had a petition filed against it. Such a windfall contradicts any notion of fair and equal treatment among creditors."). Recoveries under section 550 of the Bankruptcy Code are required to benefit the estate; extending KSB's pre-petition liens to Chapter 5s would not benefit the estate but KSB only.

Even if the Court were inclined to accept KSB's position, the Committee submits that the Court should apply the "equities of the case" exception in section 552(b). If KSB's pre-petition liens encumber Chapter 5s, it will likely wipe out any meaningful recovery to unsecured creditors in a case that has, so far, been run solely for the benefit of the Debtor's owner and its secured lenders. *See* Committee's Statement of Uncontested Material Facts ¶¶ 4-8 (out of more than $7 million in gross potential avoidance actions, less than $12,000 projected to general unsecured creditors in a Chapter 7 scenario if KSB's liens in Chapter 5s are approved). To recognize KSB's liens in Chapter 5s now would be a complete end-around the Bankruptcy Code and gift nearly all estate assets to the secured lender, despite that Chapter 5s are intended to be pursued for the sole benefit of the bankruptcy estate – not a single creditor. Under the circumstances, Chapter 5s must be preserved for the benefit of the estate and general unsecured creditors. *See United Va. Bank v. Slab Fork Coal Co.*, 784 F.2d 1188, 1191 (4th Cir. 1986) (holding that equities of the case may allow bankruptcy court to cut off pre-petition security interest in post-petition proceeds); *Ledis*, 259 B.R. at 479-80 (reading section 552(b)(1) as intending to protect unsecured creditors by preventing windfall benefits to secured creditors); *In re Patio & Porch Systems, Inc.*, 194 B.R.

569, 575 (Bankr. D. Md. 1996) ("This 'equities of the case' provision is intended to prevent secured creditors from receiving windfalls and to allow bankruptcy courts broad discretion in balancing the interests of secured creditors against the general policy of the Bankruptcy Code, which favors giving debtors a 'fresh start.' "); *In re Photo Promotion Assocs., Inc.*, 61 B.R. 936, 940 (Bankr. S.D.N.Y. 1986) ("The equities in this case reveal that the postpetition proceeds from the processed portraits should not be turned over to [the bank] and should remain property of the estate for all the unsecured creditors.").

**IV.    Sections 541(c)(1)(B) and 363(l) Bar KSB's Pre-Petition Liens from Encumbering Chapter 5s.**

Even if the Debtor could be viewed as having granted KSB an interest in Chapter 5s prepetition, the Bankruptcy Code voids it. The Bankruptcy Code prohibits the enforcement of a debtor's agreement with a lender or other third party to forfeit, modify, or terminate a debtor's interest in property which exists as a result or condition of the bankruptcy filing.

Section 541(c)(1)(B) states, in relevant part:

> an interest of the debtor in property becomes property of the estate … notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
> (B) that is conditioned … on the commencement of a case under this title … and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1)(B). As Chapter 5s only become property of the estate as a condition of a bankruptcy filing, the plain language of section 541(c)(1)(B) bars the relief KSB seeks.

Similarly, §363(l) states, in relevant part:

> (l) … the trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11 … of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease or applicable law that is conditioned … the commencement of a case under this title concerning the debtor … and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

13

11 U.S.C. §363(l). A condition to the attachment of KSB's pre-petition security interest in the alleged proceeds of an inchoate interest in Chapter 5s would necessarily require the filing of a bankruptcy case creating the Chapter 5s. The effect of the attachment of that alleged security interest would be a forfeiture, modification or termination of the Debtor's interest in Chapter 5s. Pursuant to §363(l), the Debtor may use Chapter 5s, irrespective of any alleged security interest.

Congress clearly intended through the plain language of the Bankruptcy Code to bar the enforcement of pre-petition contracts which forfeit, modify or terminate a Debtor's interest in property which the Debtor only acquires as a result of the bankruptcy filing. Accordingly, the Court should deny KSB's Motion and grant summary judgment in favor of the Committee.

## CONCLUSION

For the reasons set forth above, the Committee requests that the Court deny KSB's Motion and instead grant summary judgment in favor of the Committee, as the non-moving party, stating that KSB's pre-petition liens do not encumber the estate's Chapter 5s.

Dated: December 1, 2023

**SMITH GAMBRELL & RUSSELL LLP**

By: /s/ Elizabeth L. Janczak
      One of Its Attorneys

Shelly A. DeRousse*
Elizabeth L. Janczak*
Tonita M. Helton (Iowa Bar No. AT0009125)
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
Tel:    312.360.6000
Fax:   312.360.6520
Email:  sderousse@sgrlaw.com
           ejanczak@sgrlaw.com
           thelton@sgrlaw.com
*Admitted pro hac vice

*Counsel for Official Committee of Unsecured Creditors of BDC Group, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 1, 2023, the *Response in Opposition to Motion for Summary Judgment and Request for Summary Judgment in Favor of Non-Moving Party* was served electronically upon those parties receiving electronic notification through the Court's CM/ECF system.

/s/ Elizabeth L. Janczak