**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| IN RE:<br><br>BDC GROUP, INC.,<br><br>Debtor. | Case No. 23-00484<br><br>**KEYSTONE SAVINGS BANK'S REPLY SUPPORTING ITS MOTION FOR SUMMARY JUDGMENT** |

Keystone Savings Bank provides the following reply in opposition to the resistance filed by the Official Committee of Unsecured Creditors (the "Committee"), ECF 306, and in support of its Motion for Summary Judgment on its Motion to Recognize Lien.

1. ***Simply Essentials* Gave the Debtor a Prepetition Interest in Avoidance Actions and Iowa Law Makes that Interest Lienable.**

The Committee's reply fails to answer a basic question: How a debtor can have a prepetition interest in avoidance actions that becomes property of the estate under Bankruptcy Code section 541(a)(1) yet simultaneously fail to have such an interest for purposes of granting a prepetition lien under Iowa's Uniform Commercial Code.

The reason the Committee hasn't answered this question is because it can't. If a debtor's prepetition interest can enter the estate through Bankruptcy Code section 541(a)(1)—which *Simply Essentials* expressly held it can—then that interest is lienable under section 554.9203 of the UCC. *In re Simply Essentials, LLC*, 78 F.4th 1006, 1009 (8th Cir. 2023) ("[T]he debtor has an inchoate interest in the avoidance actions prior to the commencement of the bankruptcy proceedings."); Iowa Code § 554.9203 (security interests attach if "the debtor has rights in the collateral"). Both Bankruptcy Code section 541(a)(1) and UCC section 554.9203 generally aim to encompass all of a debtor's interests or rights in property. 11 U.S.C. § 541(a)(1); *see* Iowa Code § 554.9203 cmt. 6 (explaining that a security interest attaches to "whatever rights a debtor may have" in collateral). There is no reason to pry them apart from each other.

The Committee's attempt to create daylight between a debtor's section 541(a)(1) interest in avoidance actions and the debtor's ability to place a lien on that interest amounts to a request to overturn *Simply Essentials*. For instance, the Committee argues that BDC Group, Inc. (the "Debtor") had "no actual rights" in the avoidance actions because those actions "only exist once a bankruptcy case is filed." Reply at 4-5. But this derogates the Eighth Circuit's ruling that a debtor does indeed have prepetition rights in avoidance actions. 78 F.4th at 1009. Put in a different way, if the Committee were correct that a debtor did *not* have any "actual rights" in avoidance actions, those actions could not be incorporated into the estate through section 541(a)(1), contrary to *Simply Essentials*' explicit holding. *Id.* Thus, to find for the Committee is to accept arguments the Eighth Circuit previously rejected and overturn *Simply Essentials*.[1] And since this Court cannot do that, it should rule that the Bank has a security interest in the Debtor's prepetition inchoate interest in avoidance actions.

**2. The Bank Correctly Identifies The Debtor's Property Interests As General Intangibles.**

Despite asserting that the collateral classification issue is "moot," Reply at 9 n.7, the Committee suggests avoidance actions are "commercial tort claims" which, under the UCC, must be particularly described in the Bank's security agreement, *id.*; *see* Iowa Code § 554.9108(5)(a). Under Iowa law, however, fraudulent transfer actions arise in equity, not in law as tort actions do. *Kruse v. Repp*, 611 F. Supp. 3d 666, 693-98 (S.D. Iowa 2020). The "majority" of jurisdictions take the same view. *Id.* at 696; *see* Uniform Voidable Transactions

---

[1] The Committee's caselaw is inapposite because it does not address the impact of *Simply Essentials* on the issues before the Court. *In re Se. R.R. Contractors, Inc.*, 235 B.R. 619, 621 (Bankr. E.D. Tenn. 1996) (rejecting the IRS's position that it had a tax lien in preference recoveries because the recoveries did not "belong" to the debtor for purposes of 26 U.S.C. § 6321); *Myers v. First Source Fin., LLP (In re Demma Fruit Co.)*, 2002 Bankr. Lexis 1781, at *11 (Bankr. D. Neb. May 28, 2002) (pre-*Simply Essentials* case).

Act § 4, cmt. 10 (explaining that a voidable transaction "need not bear any resemblance to common-law fraud" and further distinguishing voidable transactions from the tort of "common-law fraud"). The same is naturally true of preference actions because there is nothing tortious about accepting payment to retire antecedent debt. Thus the interests recognized by *Simply Essentials* are not commercial tort claims and rather are general intangibles, which the Debtor pledged in its security agreements.

3. **Section 552(b) Extends the Bank's Security Interest to the Estate's Avoidance Actions Because Minimally They Are Proceeds of the Debtor's Prepetition Interest in Those Actions.**

   A. <u>Avoidance Actions Are Proceeds Under Section 552 Because They Arise from the Debtor's Prepetition Interest in Them.</u>

Given that the Bank has a security interest in the Debtor's inchoate interest in avoidance actions, Bankruptcy Code section 552(b)(1) extends the Bank's lien to the "proceeds" of the Debtor's inchoate interest in those actions. From one standpoint, this is immaterial because the inchoate interest is the avoidance action without resort to "proceeds" concepts, similar to a teenager turning eighteen and becoming an adult. But even if a second vantage is used—one where inchoate and choate avoidance interests are distinguished—the latter is proceeds of the former. 11 U.S.C. § 552(b)(1); Iowa Code § 554.9102(1)(bp)(3) (defining proceeds in part as "rights arising out of collateral"); *see Matter of Sunberg*, 35 B.R. 777, 783-84 (Bankr. S.D. Iowa 1983), *aff'd sub nom. In re Sunberg*, 729 F.2d 561 (8th Cir. 1984) ("The use of the term 'proceeds' in Section 552 is not limited to the technical definition of that term in the UCC" and "covers any property under which property subject to a security interest is converted"). Consequently, the Bank's security interest continues in avoidance actions.

Without citing Iowa or federal law, the Committee nevertheless contends that the avoidance actions are not section 552(b) proceeds by imposing two limitations on that section:

First, that the avoidance actions must be "directly attributable" to pre-petition collateral. Reply at 9-10; *contra Matter of Sunberg*, 35 B.R. at 784 (explaining that "proceeds" as used in section 552 "covers any property under which property subject to a security interest is converted"). Second, the avoidance actions must not arise from the "addition of estate resources." Reply at 10.

Even accepting these limitations, the Committee's contention is wrong. First, the basic holding of *Simply Essentials* was that avoidance actions *are* directly attributable to the debtor's pre-petition interest in them. 78 F.4th at 1009. That's how they become estate property under Code section 541(a)(1). *Id.* The Committee's alternative suggestion that the estate's avoidance actions exclusively arise from the Bankruptcy Code upon case commencement, not from the debtor's "hypothetical prepetition interest," is flatly contradictory to the Eighth Circuit's pronouncement. Reply at 10; 78 F.4th at 1009.

Second, because avoidance actions are directly attributable to the debtor's pre-petition interest, they are not "dependent upon the addition of estate resources[.]" Reply at 10. But even aside from this point, the Committee is misguided in contending that estate resources are involved in creating the avoidance actions at all. Under *Simply Essentials*, avoidance actions ultimately arise from the *debtor's* resources—its "right to file for bankruptcy"—not from estate resources. 78 F.4th at 1009. Moreover, the Committee begs the question by asserting that the avoidance actions *themselves* are the estate's resources, because the question under (the Committee's interpretation of) section 552(b) is whether avoidance actions are the *product* of estate resources. Reply at 10. The Committee has not identified any estate resources that went into creating avoidance actions, nor could it.

Just as *Simply Essentials* upsets the Committee's interpretation of section 552, it also gives the lie to the Committee's caselaw. Because each case was decided before *Simply Essentials*, none of the decisions address whether an avoidance action is a proceed of an inchoate interest in the avoidance action. *In re Se. R.R. Contractors, Inc.*, 235 B.R. 619, 622 (Bankr. E.D. Tenn. 1996) (failing to analyze the impact of a debtor's prepetition interest in avoidance actions on a creditor's rights to proceeds of that interest); *In re Lease-A-Fleet, Inc.*, 152 B.R. 431, 439 (Bankr. E.D. Pa. 1993) (same); *In re Sun Island Foods*, 125 B.R. 615, 619-20 (Bankr. D. Haw. 1991) (same). At most, the cases hold that an avoidance action is not proceeds of collateral that has been preferentially or fraudulently transferred. *See, e.g.*, *In re Sun Island Foods*, 125 B.R. 619-20. But that holding is clearly not the issue presented here (and decided by *Simply Essentials*)—whether avoidance actions are proceeds of inchoate interests in avoidance actions. The cases therefore are irrelevant.

B.  Avoidance Actions Are Not After-Acquired Property Under Section 552(a).

The Committee's argument that avoidance actions are after-acquired property under section 552(a) and do not come within section 552(b)(1)'s proceeds provision is flawed because the estate's avoidance actions arise out of the Debtor's prepetition interest in them. Reply at 7; *Simply Essentials*, 78 F.4th at 1009. Although it is true that *Simply Essentials* held that avoidance actions could be after-acquired property under section 541(a)(7), this was an advisory holding to its primary conclusion that such actions become estate property through section 541(a)(1). 78 F.4th at 1009 ("Even if we were to conclude the debtor does not have an interest in the avoidance actions prior to the commencement of the bankruptcy proceeding, the avoidance actions clearly qualify as property of the estate under [541(a)] subsection (7)[.]"). As long as the Debtor has a section 541(a)(1) inchoate interest in avoidance actions,

which is exactly what *Simply Essentials* ruled, the avoidance actions themselves must be proceeds of that interest because they "aris[e]" out of it. Iowa Code § 554.9102(1)(bp)(3); *see Matter of Sunberg*, 35 B.R. at 783-84.

In addition, the Committee is mistaken in arguing that since *Simply Essentials* reasoned that the estate could acquire avoidance actions as after-acquired property under section 541(a)(7), those actions cannot also be proceeds. Reply at 7. Not only is this position inconsistent with *Simply Essentials*, which found that a debtor's 541(a)(1) *pre*petition interest in avoidance actions underlies the estate's ownership of those actions. It also relies on the faulty assumption that if collateral is after-acquired property under 541(a)(7), it cannot also be proceeds. Reply at 7. *Simply Essentials*, however, specifically rejected an argument very much like that, explaining that "redundancies" between section 541(a)(7) and 541(a)(6) (section 541's proceeds subsection) "are particularly likely" in light of the Bankruptcy Code's "drafting history" and "complex nature." 78 F.4th at 1009-1010. In other words, what counts as a proceed likely will also count as an item of after-acquired property. *Id.* Thus, the Committee's inference that avoidance actions cannot be proceeds because they could be after-acquired property is invalid and should be rejected.

What's more, the Committee's caselaw is again off the mark. Because the caselaw predates *Simply Essentials*, the Eighth Circuit's directive that a "debtor has an inchoate interest in the avoidance actions prior to the commencement of the bankruptcy proceedings" undermines whatever support the Committee's outmoded decisions could offer. *Id.*; *In re Integrated Testing Prod. Corp.*, 69 B.R. 901, 905 (D.N.J. 1987) (rejecting the position, now required by *Simply Essentials*, that the debtor had an inchoate or "contingent" right with respect to preference actions); *In re Residential Cap., LLC*, 497 B.R. 403, 414 (Bankr. S.D.N.Y.

2013) (holding, in contradiction to *Simply Essentials*, that avoidance-action "must" be after-acquired property and not section 541(a)(1) property); *In re Tek-Aids Indus., Inc.*, 145 B.R. 253, 256 (Bankr. N.D. Ill. 1992) (denying contention that preference actions were pre-petition property of the estate under section 552(b) but overlooking the possibility, which is critical to *Simply Essentials*' holding, that the debtor had an inchoate interest in the preference actions); *In re Connolly Geaney Ablitt & Willard, P.C.*, 585 B.R. 644, 653 (Bankr. D. Mass. 2018) (adopting *In re Residential Cap., LLC*'s incomplete analysis); *In re Ludford Fruit Prod., Inc.*, 99 B.R. 18, 25 (Bankr. C.D. Cal. 1989) (failing to consider that a debtor has a prepetition interest in avoidance actions that is the basis for the estate's ownership of the avoidance actions).

Finally, *Collier* cannot come to the Committee's rescue. Reply at 9. This is because *Collier* disagrees with the Eighth Circuit that avoidance actions are property of the estate. 5 *Collier on Bankruptcy* ¶ 541.07 n.1 (16th ed.) (explaining that avoidance actions are not property of the estate). Given that disagreement, *Collier* does not recognize a debtor's prepetition interests in such actions under 541(a)(1) and, therefore, does not consider how these actions could constitute proceeds of prepetition collateral under section 552(b). *See* Reply at 9 (quoting 5 *Collier on Bankruptcy* ¶ 552.02 (16th ed.)). Because of the fundamental disagreement between *Collier* and the Eighth Circuit on whether avoidance actions are property of the estate, that treatise's analysis cannot be persuasive.

C. <u>Policy Is for Congress, Not the Court.</u>

The Committee next advances policy preferences to attempt to support its position that section 552 strips the Bank's lien. Reply at 11-12. But section 552 represents a judgment call made by Congress, *In re Underbakke*, 60 B.R. 705, 707 (Bankr. N.D. Iowa 1986) (detailing the legislative history of section 552), and this Court "cannot 'alter the balance struck by the

statute,'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017) (quoting *Law v. Siegel*, 571 U.S. 415, 427 (2014)). In other words, since section 552 plainly extends the Bank's lien to the estate's avoidance actions, policy considerations cannot change that.

D.  Section 552(b)'s equities exception does not apply.

Section 552(b) contains an equity exception that is "seldom used." *In re Aspen Dairy*, No. A04-4050, 2005 WL 2547111, at *4 (Bankr. D. Neb. Feb. 14, 2005). It allows a court to limit the reach of a secured creditor's lien "based on the equities of the case[.]" 11 U.S.C. § 552(b)(1). This exception does not invite the Court to engage in a freewheeling equitable examination, however, but is instead directed at those instances "where expenditures of the estate enhance the value of proceeds which, if not adjusted, would lead to an unjust improvement of the secured party's position." *In re Cross Baking Co., Inc.*, 818 F.2d 1027, 1033 (1st Cir. 1987) (interpreting the section while surveying legislative history). The equities exception could apply, for example, where the estate expends "labor and capital" that creates or enhances the value of a secured creditor's proceeds, yet it would not apply if the proceeds were generated through "[m]inimal activity" of the estate representative, such as collecting rents on real estate. *Matter of Hollinrake*, 93 B.R. 183, 191 (Bankr. S.D. Iowa 1988) (citation omitted).

The equities exception does not apply here because the estate has not made any expenditures of time, money, or labor to create or enhance the value of the avoidance actions. It is hard to see how the estate could do so, given that the actions accrue upon case commencement and result from the transformation of the debtor's inchoate interest in the avoidance actions into the estate's choate interest in the actions. Therefore, the equities of the case exception cannot remove the Bank's lien.

## 4. Sections 541(c)(1)(B) and 363(l) Do Not Strip the Bank's Lien.

While serving different purposes, Bankruptcy Code sections 541(c)(1)(B) and 363(l) both void the operation of agreements that (1) are "conditioned" on the commencement of a bankruptcy proceeding and (2) "effect[] or give[] an option to effect a forfeiture, modification, or termination of the debtor's interest in property." 11 U.S.C. § 541(c)(1)(B); *id.* § 363(l). In a word, "section 541(c)(1)(B) acts to ensure that all property of the debtor becomes property of the bankruptcy estate upon the filing of the bankruptcy case," and section 363(l) "protects the 'use' of such property once it is in the hands of the bankruptcy estate." *In re Transcon Lines*, 58 F.3d 1432, 1438 (9th Cir. 1995), *as amended on denial of reh'g* (July 10, 1995).

The Committee asserts these sections remove the Bank's liens from the estate's avoidance actions. Reply at 13-14. But that is not so. Here, the Bank's security agreements with the Debtor does not contain a "condition" that hinges on the Debtor filing bankruptcy. Appendix at 19-29, ECF 291-4. Nor do they have any term that effects or permits a forfeiture of the Debtor's interest in the inchoate avoidance actions. Appendix at 19-29, ECF 291-4. In this regard, the Committee's position that the Bank's security agreement works a forfeiture of the Debtor's interest in avoidance actions is a misstep. Reply at 14. Though it is correct that the Debtor has no *post*-petition interest in avoidance actions, the reason is because of the Bankruptcy Code, not the parties' security agreements. At the time the Debtor commenced this case, the Bankruptcy Code created a bankruptcy estate comprising the Debtor's property. *See* 11 U.S.C. § 541. The estate, not the Debtor, became the owner of those assets. *See id.* So, because there is no "forfeiture" for purposes of sections 541(c) and 363(l) of any of the Debtor's other assets, there is no forfeiture of the avoidance actions either. *See In re Transcon Lines*, 58 F.3d at 1438 ("section 541(c)(1)(B) acts to ensure that all property of the debtor

becomes property of the bankruptcy estate"). Thus, sections 541(c) and 363(l) do not invalidate the Bank's security agreement.

**5. Conclusion.**

For the reasons above, the Bank respectfully requests that the Court grant its motion for summary judgment and deny the summary judgment motion submitted by the Committee.

Dated: December 8, 2023

Respectfully Submitted,

SIMMONS PERRINE MOYER BERGMAN PLC

/s/ Abram V. Carls
Abram V. Carls, AT0011818
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Phone: 319-366-7641
Facsimile: 319-366-1917
acarls@spmblaw.com
ATTORNEYS FOR KEYSTONE SAVINGS BANK

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 8, 2023, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system, and served electronically on those participants that receive service through the CM/ECF System.

/s/ Abram V. Carls