# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | Chapter 11 |
| BDC GROUP, INC., | Case No. 23-00484 |
| Debtor. | Hon. Thad J. Collins |
| | **SECOND INTERIM FEE APPLICATION OF SMITH GAMBRELL & RUSSELL AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

Smith Gambrell & Russell LLP ("SGR"), counsel to the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 case of BDC Group, Inc. (the "Debtor"), hereby submits this second application for compensation (the "Application") which seeks: (i) interim approval of compensation in the amount of $54,651.50 for services rendered and $367.50 for reimbursement of expenses incurred for the period of September 1, 2023 through November 30, 2023, and (ii) authorization of payment of $55,019.00 from its professional fee carve-out and any balance from the Debtor's estate, representing all unpaid amounts due and owing to SGR on account of this Application. In support hereof, SGR states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to sections 1334 and 157(a) of title 28 of the United States Code. This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

2. The statutory predicates for the relief requested herein are sections 330, 331, 503(b) and 507(a)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure.

SGR/43852342.1

**BACKGROUND**

3.  On June 13, 20123 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.  The Debtor is operating its business and managing its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  No trustee or examiner has been appointed in this chapter 11 bankruptcy case.

6.  On June 22, 2023, the Office of the United States Trustee appointed the Committee as an official committee to represent the interests of unsecured creditors of the Debtor pursuant to section 1102 of the Bankruptcy Code, as amended on June 26, 2023.

7.  On June 30, 2023, the Court entered an order granting the Committee's application to employ SGR as its counsel retroactive to June 26, 2023.

8.  At the July 20, 2023 hearing on the Debtor's counsel's employment and debtor-in-possession financing, the U.S. Trustee agreed on the record that the Committee's counsel could submit fee applications every 60 days consistent with its agreement with the Debtor's counsel.

9.  On October 26, 2023, the Court entered an order granting SGR's first interim fee application allowing $77,945.00 in fees and $616.85 in expenses, and further authorizing payment from the professional fee carve-out held by the Committee's counsel.

10. As of the date of this Application, SGR is holding $8,938.15 as its professional fee carve-out. SGR has not received any professional fee carve out payments since September 6, 2023, despite repeated requests made to BDC.

**RELIEF REQUESTED**

11. SGR rendered services on behalf of the Committee from September 1, 2023 through November 30, 2023 (the "Fee Application Period"), for which SGR seeks interim allowance of compensation and reimbursement of expenses. By this Application, SGR seeks an order: (1)

SGR/43852342.1

allowing SGR $54,651.50 in compensation and $367.50 in reimbursable expenses on an interim basis for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code, and (2) authorizing payment to SGR of $8,938.15 from the balance of SGR's professional fee carve-out and the remaining $46,080.85 by the Debtor's estate or a professional fee carve-out otherwise ordered by the Court.

## **DISCUSSION**

12.  Section 330(a) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court may award . . . reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person . . . and . . . reimbursement for actual, necessary expenses. . . . In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title

13.  The Eighth Circuit Court of Appeals has stated:

> "[Reasonable] [c]ompensation . . . presumably reflects (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained."

*P.A. Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 731-32 (8th Cir. 1992).

14.  In reviewing the Application, the Court should be guided by the Eighth Circuit's instruction to ascertain whether such services were rendered and billed in accordance with the established market for legal services in similar matters:

> Section 330 "is meant to encourage high standards of professional legal practice in the bankruptcy courts. . . . Bankruptcy courts must consider whether the fee awards are commensurate with fees for

professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts."

*Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir. 1984); *see also In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is so to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.").

15. "Services of counsel for a creditors committee are necessary if they are in furtherance of the committee's statutory functions under the Bankruptcy Code." *In re Wire Cloth Prods., Inc.*, 130 B.R. 798, 811 (Bankr. N.D. Ill. 1991). *See also In re Imerys Talc America, Inc.*, 2020 WL 6927654, at *5 (Bankr. D. Del. Nov. 20, 2020) ("services must benefit the estate *or* a particular constituency (e.g. an official committee).") (emphasis added). Keeping a creditor's committee apprised of developments in a case is necessary and beneficial to a committee and to unsecured creditors as a whole. *Wire Cloth Prods.*, 130 B.R. at 812.

16. A professional's actions may benefit the estate and be compensable even in the absence of a direct financial benefit to the estate. *In re Blue Stone Real Estate*, 487 B.R. 573, 576 (Bankr. M.D. Fla. 2013). Such benefit is not restricted solely to a monetary or economic benefit, but where the services promote the bankruptcy process or administration of the estate in accordance with the Bankruptcy Code. *In re Kitts Dev., LLC*, 474 712, 721 (Bankr. D.N.M. 2012). *See also In re Lifschultz Fast Freight, Inc.*, 140 B.R. 482, 484 (Bankr. N.D. Ill. 1992) (holding "that the cost of services performed by professionals on behalf of an unsecured creditors committee may be paid by the estate even if those services do not result in a monetary benefit to the estate.")

17. SGR's hourly rates of compensation for its attorneys and para-professionals during the Fee Application Period range from $150 to $1,125 (however, no professional with an hourly

rate in excess of $595 has performed services herein). Those rates are comparable to rates charged by other practitioners having the same amount of experience, expertise and standing for similar services in this jurisdiction. SGR consistently and consciously made every reasonable effort to represent the Committee in the most economical, efficient and practical manner possible.

18. A summary of the compensation requested herein regarding each of SGR's professionals and para-professionals is set forth below:

| Timekeeper | Title | Year of Bar Admission | Rate | Hrs. | Total |
|---|---|---|---|---|---|
| DeRousse, Shelly A. | Partner | 2001 | $ 595.00 | 12.50 | $ 7,437.50 |
| Isenberg, Shira R. | Partner | 2003 | $ 500.00 | 8.90 | $ 4,450.00 |
| Janczak, Elizabeth L. | Partner | 2010 | $ 500.00 | 78.80 | $ 39,400.00 |
| Manley, Morgan V. | Associate | 2017 | $ 425.00 | 1.40 | $ 595.00 |
| Rower, Kirstin N. | Paralegal | N/A | $ 300.00 | 2.30 | $ 690.00 |
| Webster, Jacqueline E. | Paralegal | N/A | $ 315.00 | 6.60 | $ 2,079.00 |
| | | | Totals: | 110.50 | $ 54,651.50 |
| | | | | Blended Rate: | $ 494.46 |

19. No agreement or understanding exists between SGR and any other person for the sharing of compensation received or to be received in connection with this case, other than as disclosed or authorized pursuant to the Bankruptcy Code, Bankruptcy Rules and the Local Rules.

20. SGR reserves the right to correct, amend or supplement this Application, including, without limitation, to seek payment in the event this Application is not approved in full.

## SERVICES PERFORMED

21. This Application sets forth in detail the work performed by SGR and the time spent during the Fee Application Period. SGR's detailed time records for all categories are attached hereto and incorporated herein as Group Exhibit A.

**A.  General                                                                                   $10,691.00**

22. SGR spent 20.2 hours at a cost of $10,691.00 on general matters. This category primarily includes time spent reviewing incoming pleadings, preparing for and attending Court

hearings on general case matters, corresponding with other parties-in-interest concerning general case matters, and performing other necessary tasks associated with a committee representation. This category also includes matters which encompass more than one discrete category.

**B.     Litigation                                                                          $3,048.00**

23.     SGR spent 6.6 hours at a cost of $3,048.00 on litigation matters. This category primarily includes time spent on Rule 2004 discovery including subpoenas to Keystone Savings Bank, F&M Bank, and the Debtor's former credit card company to investigate the Debtor's pre-petition operations and transactions, as well as reviewing the Debtor's complaint seeking to impose an injunction in favor of its principal Dennis Bruce and against Mr. Bruce's creditors.

**C.     Creditor Inquiries                                                              $750.00**

24.     SGR spent 1.5 hours at a cost of $750.00 communicating with creditors and addressing their inquiries regarding this bankruptcy case.

**D.     Secured Creditor Issues                                                    $23,977.00**

25.     SGR spent 48.7 hours at a cost of $23,977.00 on secured creditor issues. This category includes time spent relating to interim orders on the Debtor's motion to approve debtor-in-possession ("DIP") financing, communicating and negotiating with the Debtor and DIP lender Keystone Savings Bank regarding the same, reviewing proposed DIP budgets, and preparing for and attending hearings regarding the Debtor's DIP motion. This category also includes time spent reviewing various secured creditors' motions for relief from stay and orders relating to the same, including the Committee's opposition to Keystone Savings Bank's motion for relief from stay to pay $500,000 of its pre-petition debt from the Debtor's cash.

26.     Finally, time in this category includes the Committee's opposition to Keystone Savings Bank's motion to recognize its purported pre-petition liens in chapter 5 causes of action and motion for summary judgment on the same.

SGR/43852342.1

| | | |
|---|---|---|
| E. | **SGR Retention and Fee Applications** | **$2,618.00** |

27.　SGR spent 5.8 hours at a cost of $2,618.00 preparing SGR's first interim fee application and reviewing exhibits to the same.

| | | |
|---|---|---|
| F. | **Other Professional Retention** | **$1,028.50** |

28.　SGR spent 2.0 hours at a cost of $1,028.50 on other professional retention matters. Time in this category includes time spent relating to ABLS's retention, Keystone Savings Bank's objection to the same, and opposing Keystone Savings Bank's motion to reconsider the Court's ruling on the same.

| | | |
|---|---|---|
| G. | **Plan and Disclosure Statement** | **$5,635.50** |

29.　SGR spent 11.1 hours at a cost of $5,635.50 on plan and disclosure statement matters. Time in this category includes time spent relating to the Debtor's motion to terminate exclusivity, discussions and negotiations with the Debtor relating to proposed plan terms, reviewing and providing revisions to a creditor trust agreement, and reviewing the Debtor's filed chapter 11 plan and discussions with the Debtor and Keystone Savings Bank regarding the Committee's concerns regarding the same.

| | | |
|---|---|---|
| H. | **Executory Contracts and Unexpired Leases** | **$875.00** |

30.　SGR spent 1.9 hours at a cost of $875.00 on executory contract and unexpired lease matters. Time in this category includes time spent reviewing BMO's contracts to determine whether they are true leases, reviewing various motions to assume/reject leases, and communicating with lessors relating to the same.

| | | |
|---|---|---|
| I. | **Committee Meetings and Governance** | **$2,935.50** |

31.　SGR spent 5.7 hours at a cost of $2,935.50 on Committee meetings and governance issues. This category primarily consists of time spent drafting Committee bylaws, conducting

Committee meetings regarding open case matters, and communicating with Committee members regarding the same.

| | | |
|---|---|---|
| **J.** | **Investigation of Operations** | **$1,850.00** |

32.　SGR spent 3.7 hours at a cost of $1,850.00 on investigation of the Debtor's pre-petition operations. This category primarily consists of time spent reviewing and investigating the Debtor's pre-petition transactions including review of the Debtor's credit card statements to identify potential estate assets.

| | | |
|---|---|---|
| **K.** | **Schedules and Reports** | **$1,193.00** |

33.　SGR spent 3.2 hours at a cost of $1,193.00 on schedules and reports. This category primarily includes time spent reviewing monthly operating reports and the Debtor's financial performance, and reviewing the Debtor's amended schedules.

| | | |
|---|---|---|
| **L.** | **Claims Analysis** | **$50.00** |

34.　SGR spent 0.1 hours at a cost of $50.00 reviewing the Debtor's motion to set a claims bar date.

## REASONABLE EXPENSES INCURRED

35.　Expenses during the Application Period totaling $367.50 were incurred in connection with a document production fee charged by F&M Bank in connection with the Committee's Rule 2004 subpoena for bank documents.

36.　All expenses incurred by SGR in connection with its representation of the Committee were ordinary and necessary expenses. All expenses billed to the Committee were billed in the same manner as SGR bills non-bankruptcy clients.

37.　SGR does not bill its clients or seek compensation in this Application for certain overhead expenses, such as local and long-distance telephone calls, secretarial services, and facsimile transmissions. Such expenses are factored into SGR's hourly rates. SGR has not included

certain other charges described herein in its overhead because it has determined that it is fairer to its smaller clients who use proportionately less of these services to have these expenses billed separately.

## BENEFIT TO THE ESTATE/COMMITTEE

38. SGR's fees and expenses subject to this Application are compensable under section 330(a) of the Bankruptcy Code because its services were actual and necessary, and reflect reasonable compensation for such services.

39. SGR has remained active on all matters in its representation of the Committee as counsel during this case and assisted the Committee in exercising its powers and fulfilling its duties under section 1103(c) of the Bankruptcy Code including consulting with the Debtor concerning case administration; investigating the acts, conduct, assets, liabilities, and financial condition of the Debtor; participating in the formulation of a chapter 11 plan; and performing other services that are in the interest of the Committee and unsecured creditors. In particular, SGR: (1) obtained production of the Debtor's credit card and bank statements, which were unavailable from the Debtor, to investigate the Debtor's pre-petition transactions and identify potential estate assets; (2) took action to preserve and protect estate assets including the Debtor's cash and the estate's interest in chapter 5 causes of action for the benefit of the estate and unsecured creditors; (3) communicated case updates to Committee members and to other unsecured creditors who contacted Committee counsel; (4) assisted in drafting a creditor trust agreement in connection with the Debtor's proposed chapter 11 plan; and (5) provided necessary input on various motions, order, and agreements to protect the interests of unsecured creditors.

40. SGR submits that the services set forth herein benefitted the estates and their creditors by ensuring that the Debtor's assets were properly preserved and administered, and that

they gained the highest value under the circumstances to maximize the potential recovery for general unsecured creditors.

**WHEREFORE**, SGR respectfully requests that the Court enter an order:

(a) allowing SGR, on an interim basis, $54,651.50 in compensation for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(b) allowing SGR, on an interim basis, $367.50 in reimbursable expenses for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(c) authorizing payment to SGR of $8,938.15 from the SGR's professional fee carve-out and the balance of $46,080.85 from the Debtor's estate or any professional fee carve-out ordered by the Court; and

(d) granting such other and further relief as the Court deems just and proper.

Dated: December 22, 2023

**SMITH GAMBRELL & RUSSELL LLP**

By:  /s/ Elizabeth L. Janczak
        One of Its Attorneys

Shelly A. DeRousse*
Elizabeth L. Janczak*
Tonita M. Helton (Iowa Bar No. AT0009125)
SMITH GAMBRELL & RUSSELL LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone:  312.360.6000
sderousse@sgrlaw.com
ejanczak@sgrlaw.com
thelton@sgrlaw.com
*Admitted pro hac vice*
*Counsel for the Official Committee of Unsecured Creditors of BDC Group, Inc.*