## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>BDC GROUP, INC.,<br><br>Debtor. | Case No. 23-00484<br><br>**MOTION FOR ORDER TO SHOW CAUSE** |

Keystone Savings Bank ("Bank") moves the Court to enter an order compelling Zayo Group, LLC ("Zayo") to show cause why it should not be held in contempt for failing to comply with the Court's January 24, 2024 Order, Dkt. 361, and for sanctions.

### SUMMARY OF ZAYO'S CONTEMPT

1. Zayo previously petitioned the Court for relief from the automatic stay and as a condition of obtaining that relief, stipulated to terms that it "wish[ed] to memorialize and implement through an order of this Court." Dkt. 361 at 1. That implementation included specific findings about Zayo's obligations to Debtor BDC Group, Inc., and that it—Zayo—would make payments upon the Order's "entry":

   - "Zayo owes BDC $237,824.14 in non-retainage payments on eight undisputed invoices. *Upon entry of this order Zayo will pay this amount*."

   - "Zayo owes BDC $293,317.51 in retainage on undisputed invoices. *Upon entry of this order Zayo will pay $243,317.51* of that retainage and retain $50,000.00 pending testing of four fiber spans BDC worked on."

*Id.* ¶¶ 3-4 (emphasis supplied). These payment terms were "[a]pproved as to [f]orm and [c]ontent by" "Jeffrey D. Goetz" "Attorney for Zayo Group, LLC." *Id.* at 2.

2. The Court's order is not ambiguous in its directive for "Zayo" to "pay" "upon entry." Zayo did not pay upon entry, however.

3. The day after entry Zayo's counsel asked BDC to provide an invoice to Zayo

to facilitate the payment process. BDC did so, and Zayo's counsel informed:

> [T]he requisite paperwork has now been submitted and is being processed by Zayo's Accounts Payable department, and is scheduled for ACH payment to BDC's DIP Account next Thursday February 1st.

*See* Exhibit 1 at 1. But February 1 came and went without Zayo making payment. BDC's DIP account information was and remains unchanged.

4. On February 2, 2024, Zayo identified conversion of these proceedings from Chapter 11 to Chapter 7 as the source of its delay. *See* Exhibit 2 at 4 (Goetz 2/2/24 11:34 am email). Later that day Zayo informed it "already received payment instructions directly from the Trustee to send payment by paper check through the mail." *Id.* at 3 (Goetz 2/2/24 1:01 pm email).

5. Twelve days later, on February 14, 2024, the Bank received information that the "paper check" Zayo pledged to send "through the mail" had not been received. So, Zayo was again asked to provide a payment update.

6. In response Zayo confirmed "No amounts have yet been paid to the Chapter 7 Trustee." *See* Exhibit 2 at 1-2 (Goetz 2/14/24 5:00 pm email). Zayo additionally communicated that the mediation it previously pushed to schedule was not scheduled, and that the Bank was not among the "necessary parties for mediation." *Id.* When the Bank asked Zayo to clarify its position, Zayo's counsel stated "[he] chose [his] wording carefully" and the Bank was "entitled to disagree." *Id.* at 1.

7. Zayo has now had one month to make payments it agreed to make "upon entry" of the Court's January Order. No payment has been made and none appears to be forthcoming. Based upon Zayo's latest communications, Exhibit 2 at 1-2, Zayo has not paid ordered amounts, appears to be re-negotiating the ordered payments, and will not allow the

Bank to participate in mediation discussions about the payment of additional amounts that Zayo owes. *See* Dkt. 361 ¶ 5. Zayo knows the Bank is interested in these amounts too, because it stipulated to that knowledge and as the Court ordered: "Any and all moneys and payments from Zayo to the Debtor constitute the Bank's cash collateral . . ." *Id.* ¶ 6.

## ARGUMENT

**A. Zayo Is In Contempt Of This Court's January 24, 2024 Order.**

8. "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *In re Reed*, 888 F.3d 930, 936 (8th Cir. 2018). In pursuit of that finding, the movant "bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order." *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). "At that point, the burden [shifts] to the [comtemnor] to show an inability to comply." *Id.*

9. No doubt exists that Zayo has and continues to violate an order of this Court. On January 24, 2024 the Court entered a specific directive for Zayo to pay specific amounts "upon entry" of the order, for debts that "Zayo owes BDC." Dkt. 361 ¶¶ 3-4. Nothing about the Order was ambiguous and Zayo cannot claim ignorance, because Zayo's counsel approved it. *Id.* Bottom line is Zayo was ordered to but has not paid. *E.g.* Exhibit 2 at 2 (Goetz 2/14/24 5:00 pm email stating "No amounts have yet been paid"); Exhibit 3 (2/23/24 8:50 am email stating "no funds have been received from Zayo" to the Trustee's knowledge). An order to show cause should therefore enter, because the Bank has satisfied its burden to show that Zayo has violated a court order.

**B. Sanctions Should Enter Against Zayo For Its Willful Disobedience.**

10. "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 504 (8th Cir. 2000) (citing *United States v. United Mine Workers*, 330 U.S. 258, 290 n. 56, (1947)). Accordingly, "the purpose of a civil contempt sanction is either to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *In re Tanner*, No. BR 12-01429, 2017 WL 3641575, at *8 (Bankr. N.D. Iowa Aug. 23, 2017). This is particularly true where, as here, the contemnor's conduct is "willful" and "indefensible." *Id.*; *cf. In re Wright*, 461 B.R. 757, 762 (Bankr. N.D. Iowa 2011).

11. Zayo's contempt has harmed multiple interested parties in multiple ways which makes sanctions appropriate. There's the cost to the Bank and the Estate of professionals repeatedly investigating and requesting payment which falls on Zayo's knowing (but ultimately deaf) ears. There's the cost of these proceedings which are made necessary by Zayo's contempt. And Zayo also appears to be in the midst of attempting to re-negotiate the terms of the Order with counsel for the trustee, which action and costs the Bank and Estate should not have to bear.

12. There are other costs too. Every day that goes by is a day the Estate pays interest on nearly $500,000 because when Zayo withholds those funds, they cannot be turned over and applied to the Bank's debt. The Bank similarly loses because the opportunity to use these funds in its business is taken from it. The Bank and Estate should be compensated by Zayo for the cost of Zayo's noncompliance. *E.g. In re Tanner*, 2017 WL 3641575 at *8.

13. The willful[1] disregard that Zayo has demonstrated towards an Order that it both invited and approved cannot be understated. Zayo never claimed ignorance or sought timely reconsideration on allegation of mistaken belief. Rather, Zayo knew exactly what it was ordered to pay and was repeatedly reminded through counsel to do it, but chose not to. An appropriate sanction--$2,000.00 per day—should enter in favor of the Estate as a deterrent and to coerce Zayo's future compliance. *E.g. In re Tanner*, 2017 WL 3641575 at *8. A higher sanction may be warranted given Zayo's corporate conglomerate and financial strength, so the result is not equivalent to giving a billionaire a parking ticket.

WHEREFORE, Keystone Savings Bank respectfully requests that the Court enter an order for Zayo Group, LLC to show cause why it should not be held in contempt, for appropriate coercive action and sanctions including the expenses caused by Zayo's contempt, and such other relief that is appropriate given the circumstances.

Dated: February 23, 2024

Respectfully Submitted,

SIMMONS PERRINE MOYER BERGMAN PLC

/s/ Abram V. Carls
Eric W. Lam, AT0004416
Abram V. Carls, AT0011818
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Phone: 319-366-7641
Facsimile: 319-366-1917
elam@simmonsperrine.com
acarls@spmblaw.com
ATTORNEYS FOR KEYSTONE SAVINGS BANK

---

[1] "Willfulness in contempt cases means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order." *Hubbard v. Fleet Mortg. Co.*, 810 F.2d 778, 781 (8th Cir. 1987) (citations omitted). While probative to the analysis and remedy, willfulness "need not be proven in a civil . . . contempt proceeding." *United States v. Ofe*, 572 F.2d 656, 657 (8th Cir. 1978).

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 23, 2024, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system, and served electronically on those participants that receive service through the CM/ECF System.

The undersigned further certifies that on February 23, 2024, a copy of the foregoing document was served by United States first class mail postage prepaid on the following:

Zayo Group, LLC
1805 29th Street, Suite 2025
Boulder, Co 80301

Zayo Group, LLC
c/o Corporation Service Company, RA
505 5th Avenue
Des Moines, IA 50309

Zayo Group, LLC
1401 Wynkoop St., Suite 500
Denver, CO 80202

Zayo Group, LLC
c/o Corporation Service Company, RA
1401 Wynkoop St., Suite 500
Denver, CO 80202

/s/ Abram V. Carls