**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In Re: | ) | Case No.: 23-00484 |
| | ) | |
| **BDC GROUP, INC.,** | ) | Chapter 7 (Converted from Chapter 11) |
| | ) | |
| Debtor | ) | Hon. Thad J. Collins |
| | ) | |
| EIN: 47-2908533 | ) | **ZAYO GROUP'S OBJECTION TO** |
| | ) | **KEYSTONE SAVINGS BANK'S MOTION** |
| | ) | **FOR ORDER TO SHOW CAUSE** |
| | ) | |
| | ) | No Hearing Set |

**COMES NOW**, Zayo Group, LLC ("Zayo") by and through its counsel of record in this case, Jeffrey D. Goetz, Esq., of the law firm of Dickinson, Bradshaw, Fowler & Hagen, P.C., Jordan A. Kroop, Esq. and Jason Rosell, Esq. of the law firm of Pachulski, Stang, Ziehl & Jones, objects to Keystone Savings Bank's ("Keystone") *Motion for Order to Show Cause* (Docket Item 431) (the "Contempt Motion"). Zayo advises the Court that, pursuant to Federal Rules of Civil Procedure 60, made applicable to this case by Bankruptcy Rule 9024, it is also filing contemporaneously with this objection Zayo's *Motion for Clarification of Stipulated Order for Stay Relief and Other Matters; or Alternatively, for Relief from Order*.

**ZAYO SHOULD NOT BE HELD IN CONTEMPT OF THE CONSENT ORDER BECAUSE IT WAS FRAUDULENTLY INDUCED BY KEYSTONE'S BAD FAITH**

Keystone's Contempt Motion, coupled with its January 25, 2024, *Motion to Lift Stay* (re: Set-Off and Account Freeze) are clear and convincing evidence alone substantiating Zayo's assertion that Keystone, during the ostensibly "confidential" settlement process, fraudulently induced Zayo to agree to deposit $481,141.65 into BDC Group's ("BDC") Debtor in Possession Bank Account upon entry of the *Stipulated Order for Stay Relief*

(Docket Item 361) (the "Consent Order"). Keystone intentionally and materially misrepresented to Zayo that nearly a half million dollars of Zayo's funds would be held by BDC as Debtor in Possession pending mediation with GuideWell intended to clear GuideWell's numerous mechanics liens on third-party property and simultaneously satisfy Zayo's alleged debt to the BDC estate. After weeks of negotiations with BDC and its counsel—a process beset at every minute with Keystone's attempts to strongarm BDC into bending to Keystone's transparent desire to grab every copper penny coming into the estate—Zayo finally agreed to a process that would ensure that Zayo's funds would be used to satisfy BDC's administrative obligations to GuideWell and to release the mechanics liens that continued to cloud several third parties' properties and frustrate the process of a large fiber optic cable project for some of the largest technology companies in the world.

What Zayo could not have known—what was hidden from Zayo, hidden from BDC, hidden from the Committee, and hidden from this Court—when all the parties agreed to the Consent Order was Keystone's ulterior motive, revealed within mere hours of this Court's entry of the Consent Order. With the nascent Consent Order entered, Keystone immediately declared a default under the DIP financing order, immediately cut off BDC from access to any working capital, and immediately forced BDC to cease operations and convert its case to Chapter 7. In doing so, Keystone killed BDC, killed the Chapter 11 case, and greatly enhanced its chances of seizing nearly a half million dollars of Zayo's funds so that it couldn't be used as part of achieving the parties' settlement goals, couldn't be used to release the GuideWell liens, and couldn't be used to satisfy GuideWell's administrative expense claims against the BDC estate. Keystone cravenly secured Zayo's commitment to pay a huge sum of money into the estate and then attempted to grab all that money for itself, to the

exclusion of Zayo, BDC, and the Bankruptcy Estate. Zayo was intentionally misled. So was this Court.

Zayo highlights several facts and factors for the Court:[1]

1) The subject Motion was filed solely by Keystone, and not supported or joined by the Debtor BDC or the Chapter 7 Trustee;
2) Although the underlying Motion for Relief from Stay was filed by Zayo against the Debtor BDC alone, Keystone clumsily insinuated itself into the matter for its own benefit alone;
3) In doing so—by, among other things, making frivolous and non-probative "discovery" demands, motivated by its secret goal of defeating Zayo's recoupment rights—Keystone deceived Zayo, BDC, and the Committee (and, ultimately, the Court), imposed needless delay, costs the parties and their counsel unnecessary time and expense, and consumed Court resources;
4) Keystone would have no basis to seek relief from the stay to seize estate funds unless it could bamboozle Zayo into agreeing to pay over to the Debtor's DIP Account funds the Debtor was not contractually entitled to receive;
5) Keystone's Contempt Motion, by taking selective facts out of context to characterize Zayo as ignoring the Consent Order, is additional evidence of Keystone's bad faith and ill intent, and demonstrates its zeal to harm Zayo and further mislead this Court; and
6) Once the case was converted to Chapter 7, the Debtor was no longer a Debtor in Possession maintaining a Debtor in Possession Bank Account, so delivering a half million dollars of Zayo's funds to the Debtor's bank account at Keystone would not only have put those funds outside the control of the Chapter 7 Trustee and the Bankruptcy Estate but would have fatuously delivered those funds to Keystone in furtherance of their nefarious scheme.

Surely, this Court knows only too well the importance, propriety, and sanctity of encouraging parties to settle, and to maintain the confidentiality of settlement discussions so that parties are incentivized to even engage in them. Zayo fully appreciates that critical dynamic, especially in Chapter 11 cases. But Keystone has used that promise of confidentiality as a weapon to make mischief. Keystone has exploited a settlement to advance

---

[1] Considerable, additional documentary and testimonial evidence regarding Keystone's conduct (and the conduct of Keystone's counsel) can be adduced at an evidentiary hearing on the Contempt Motion. Zayo eagerly awaits the opportunity to present that evidence, but is constrained by decorum and a sincere desire to prevent embarrassment from including even a summary of that evidence in this publicly-filed pleading. Zayo respectfully requests that the Court exercise its discretion to receive that evidence either under seal or in camera.

its own interests at the severe expense of all other parties to that settlement. Zayo is compelled to "fight fire with fire" by filing this unseemly opposition that squarely challenges the good faith and fairness of Keystone and, regrettably, its counsel.

This Court can't know most of what occurred in the leadup to the Consent Order, but surely this Court can only surmise, correctly, that Zayo would never have agreed to turnover of nearly a half million dollars under the Consent Order severely jeopardizing its recoupment rights, unless that turnover was part of a process that would have ineluctably resulted in the GuideWell liens being satisfied and released. Conversely, if Zayo had had any inkling of Keystone's bad faith and true, sinister intent during the settlement process, Zayo would never have entered into the Consent Order in the form drafted by Keystone's counsel and would simply have proceeded with an evidentiary hearing on its original stay relief motion.

**PROCEDURAL HISTORY**

On December 7, 2023, Zayo filed its motion for relief from the automatic stay (Docket Item 307) ("RS Motion") to terminate its executory Master Construction Services Agreement, as amended, with the Debtor. The premise for the Motion was that BDC had materially breached the terms of that contract and, because of the type and nature of those defaults, BDC could not cure those defaults even if it wanted to. The subject defaults were itemized and explained in detail in the RS Motion.

Among some of the primary reasons for filing the RS Motion was that BDC had submitted progress payment invoices to Zayo for work done by BDC and its sub-contractor GuideWell, with BDC duly executing multiple "Lien Waivers and Release Upon Progress Payment" ("Lien Waivers") forms to Zayo upon payment. Zayo timely paid BDC for those progress payment invoices pursuant to the terms of the agreement. Notwithstanding receipt of

4

timely payment and the express representations by BDC in the Lien Waivers, Zayo asserted BDC fraudulent submitted the Lien Waivers while simultaneously failing to pay GuideWell, who, in turn, filed mechanics liens in Illinois and Iowa upon property owned by several railroad companies where fiber optic cable was being installed. Those railroad companies subsequently banned Zayo, BDC, and GuideWell from entering their property until the mechanics liens were withdrawn, severely frustrating Zayo's ability to deliver timely services to its many clients, some of the largest technology companies in the world. Zayo's damages were potentially astronomical.

A Notice setting bar date for objections to the RS Motion was filed the same day at Docket Item 310, setting December 28, 2023, as the last day to timely file objections to the RS Motion. On December 8, 2023, the Court filed its Telephonic Hearing Notice on the RS Motion for January 5, 2024, at 10:30 a.m., Central Time.

Immediately after the Court's docketing of its Notice of Telephonic Hearing, and based on the urgency of the RS Motion, on December 11, 2023, Zayo filed its motion to Expedite Hearing (Docket Item 315) and Declaration of Dwight Davis, (Docket Item 316) as Onsite Project Manager for Zayo in support thereof. This Court granted Zayo's Motion to Expedite Hearing and entered its Hearing Notice at Docket Item 319 and set a telephonic hearing for December 15, 2023, at 11:30 a.m.

On December 12, 2023, the Debtor filed its Resistance (Docket Item 322) to the RS Motion, generally asserting without specificity that the Debtor "disputes Zayo's Motion's factual allegations," yet did not dispute that it had defaulted under or otherwise breached its agreement with Zayo.

Although not a party to the subject contract between BDC and Zayo, Keystone inserted itself into the proceedings on the RS Motion and filed its own separate Resistance (Docket Item

5

323) to the RS Motion on December 14, 2023. Zayo asserted and continues to assert that Keystone's resistance was based on irrelevant, immaterial, and otherwise non-sensical "red herring" arguments not related to BDC's conduct, defaults, or breaches of BDC's agreement with Zayo.

After the expedited hearing on December 15, 2023, the Court docketed its Proceeding Memo (Docket Item 325) continuing the hearing and scheduling an evidentiary hearing for January 4, 2024.

Although not served with formal discovery requests, Zayo—in a good-faith effort to amicably reach a consensual resolution of objections to the RS Motion—agreed to exchange documentary evidence with Keystone, the Debtor, and the Official Committee Unsecured Creditors. Zayo provided a copious amount of documents in at least 21 categories responsive to Keystone's informal discovery requests, including but not limited to the Master Construction Services Agreement, amendments thereto, the Project Service Agreement and amendments thereto, copies of the several mechanics liens and supporting documentation, invoices from BDC to Zayo, schedule of processed, approved and pending invoices, contract progress and schedule charts, pre-bid questionnaire from BDC, and extensive email correspondence between BDC and Zayo over a period of many months.

Notwithstanding Zayo's robust production of relevant and material responses to Keystone's informal discovery requests, on December 31, 2023, Keystone filed a Motion to Continue Evidentiary Hearing on an expedited basis (Docket Item 339), cynically arguing that it wanted more and additional documentation and information from Zayo, notwithstanding all the relevant and probative discovery related to BDC's contract defaults and breaches had been consensually provided to Keystone and without once articulating what Keystone needed to see

6

that it had not already been provided. Keystone's motion to continue evidentiary hearing was followed by BDC filing a Joinder (Docket Item 341) on January 2, 2024, seeking a continuance of the January 4th evidentiary hearing and Zayo objecting to a continuance (Docket Item 340). On January 2nd, the Court entered its Notice of Hearing on Keystone's Motion to Continue, to be heard that day at 4:00 p.m. The Court subsequently entered its Proceeding Memo and Order (Docket Item 343) continuing the hearing to January 18, 2024.

On January 15, 2024, Keystone filed its Second Motion to Continue the January 18, 2024, Hearing (Docket Item 351), with this Court entering its Hearing Notice (Docket Item 352) on January 16, 2024, with an objection filed by Zayo (Docket Item 354), and hearing set for January 16, 2024. This Court subsequently filed its Proceeding Memo and Order (Docket Item 355) continuing the evidentiary hearing until January 24, 2024.

After expending multiple hours over several weeks of settlement discussions by video and telephone conferences and exchanges of email and documents between Zayo, BDC, Keystone, and the Committee, Zayo and Keystone executed and filed their Consent Order granting Zayo relief from the automatic stay, which the Court then entered (Docket Item 361) on January 24, 2024. BDC did not execute or sign off on the Consent Order but BDC was at all times an integral part of the settlement discussions that led up to the Consent Order, which never would have been submitted to the Court without BDC's approval.

Hours later, on January 25, 2024, Keystone declared a default under the DIP financing order, cut BDC's access to working capital, and filed its first Motion for Relief from Stay re: Set Off and Account Freeze (Docket Item 363), an action any objective observer would have immediately deemed a malicious and bad faith act designed to frustrating and contravene the party's settlement reached the day before. The next day, January 26th, Keystone filed a second

7

motion for relief from stay, further upending the Chapter 11 case.

Unable to fend off Keystone's series of fatal blows, the Debtor filed its motion to convert its case from Chapter 11 to a case under Chapter 7 on January 29, 2024 (Docket Item 369), and on January 30th, the Court entered its Order converting the BDC case to a case under Chapter 7 (Docket Item 384).  Rene Hanrahan was appointed Chapter 7 Trustee that same day (Docket Item 385).

Because Zayo's defense of this Contempt Motion will, by necessity, require revelation of confidential settlement communications, and in consideration of decorum and the reputations of the parties and their counsel, Zayo prefers to reveal all the facts and circumstances involved in its defense to the court in an evidentiary proceeding under seal or *in camera*.

Therefore, Zayo respectfully requests this Honorable Court deny Keystone's Motion for an Order to Show Cause, or in the alternative, if the Court decides to hear and consider the subject motion, take such evidence under seal or *in camera* before this Court, and any other relief that may be just and appropriate under the circumstances.

Dated:  March 15, 2024

/s/ *Jeffrey Goetz*
Jeffrey D. Goetz, Esq., AT#000
Dickinson Bradshaw Fowler & Hagen, P.C.
801 Grand Avenue, Ste. 3700
Des Moines, IA  50309-8004
515/246-5817
515/246-5808 FAX
jgoetz@dickinsonbradshaw.com

*/s/ Jordan Kroop*
Jordan A. Kroop, Esq., *Pro Hac Vice*
Jason Rosell, Esq., *Pro Hac Vice*
Pachulski Stang Ziehl & Jones, LLP
780 Third Ave., 34th Floor
New York, NY  10017
212/561-7734
jkroop@pszjlaw.com
jrosell@pszjlaw.com

**All future notices will be sent to the above address.**

CERTIFICATE OF SERVICE: This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

*/s/ Brenda Mozena*