**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| IN RE:<br><br>BDC GROUP, INC.,<br><br>Debtor. | Case No. 23-00484<br><br>**REPLY SUPPORTING MOTION FOR ORDER TO SHOW CAUSE** |

Keystone Savings Bank ("Bank") provides this brief in reply to Zayo Group, LLC's ("Zayo") Resistance ("Resistance"), Dkt. 449, to the pending Motion for Order to Show Cause, Dkt. 431.

1.  Zayo's assertion that it was fraudulently induced to enter into an agreement and stipulated Court order is one the Bank and its counsel take seriously, but one that is devoid of merit.

2.  Zayo originally backed out of negotiated settlement terms because payments would not be applied to satisfy mechanics liens, but after several days of counsel (for Zayo) communicating with their client (Zayo), Zayo agreed to terms as originally proposed in exchange for relief from stay. Exhibit 4 (backing out); Exhibit 5 (return to original terms—". . . Zayo will not insist on payment of the Guidewell mechanics lien invoices . . ."). Debtor BDC Group, Inc. then prepared the order which Zayo and the Bank approved before submission to the Court. Stipulated Order, Dkt. 361 at 2. In the days following entry Zayo advised it would pay as ordered but then did not, and now says it will not. Dkt. 431-2, Exhibit 2 at 1. As to the reason, Zayo identifies an elaborate, fraudulent conspiracy by which the Bank "cravenly secured Zayo's commitment to pay a huge sum of money into the estate" and then "killed BDC, killed the Chapter 11 case, and greatly enhanced its chances of securing [Zayo's payments]." Resistance at 2.

3.  But that contention is obviously suspect because Zayo agreed—and stipulated

to an order—that "[a]ny and all moneys and payments from Zayo to the Debtor constitute the Bank's cash collateral." Dkt. 361 ¶ 6. So, Zayo already knew about the Bank's security position in Zayo's agreed payments and presumably knew that the legal consequences of that security position were not dependent upon the debtor operating in Chapter 11 or liquidating in Chapter 7. What's more, whether the Debtor continued to operate or not was not a concern of Zayo whose stated purpose was to lift stay and terminate its relationship with Debtor. Dkt. 307 (Zayo's "Motion for Relief from Automatic Stay to Terminate Executory Contract").

4. Likewise suspect about Zayo's fraud claim is that it arises only now, only after and in response to a request for Zayo to show cause. Zayo says the Bank's "ulterior motive" was "revealed within mere hours of this Court's entry of the Consent Order" on January 24. Resistance at 2. If true, why then did Zayo's counsel, who received automatic notice of the conspiracy-exposing lift stay filings on January 25 and 26,[1] continue to advise for many weeks that Zayo's payment was forthcoming? Dkt. 431-1, Exhibit 1; Dkt. 431-2, Exhibit 2. Surely if Zayo was genuinely duped it would have said something and confronted the Bank? But Zayo said nothing and instead continued with plans to schedule mediation on remaining issues as the parties previously agreed. Exhibit 6 (emails with Zayo's counsel on January 27). Zayo's actions are demonstrably inconsistent with how a reasonable person would react if in truth, he was "bambozzle[d]" by fraud. *But see* Resistance at 3. Perhaps Zayo was not "bambozzle[d]" at all and simply regrets its stipulations, and is now applying litigation pressure as a strategy to negotiate out of them.

5. Zayo provides no evidentiary support for its position out of "sincere desire to

---

[1] Zayo's opening line identifies the "January 25, 2024, *Motion to lift stay* (re: Set-Off and Account Freeze)" as "clear and convincing evidence alone substantiating Zayo's assertion" of fraudulent inducement. Resistance at 1.

prevent embarrassment," Resistance at 3 n.1, but the Bank has nothing to be embarrassed about and would rather know the evidence marshalled against it than have Zayo make unsubstantiated allegations of fraud public while suggesting evidence when it really has none.

6.      The Bank requests that the Court set an in-person hearing on the matter for purposes of discussing Zayo's disclosure of undisclosed "evidence," giving the Bank an opportunity to investigate and respond to Zayo's "evidence," and a path to a merits hearing on Zayo's continued contempt. Because Zayo presents no genuine evidence in resistance and does not identify issues with the Bank's contempt authorities, it is also possible to simply grant the Bank's Motion (in full) without further hearing.

Dated: March 21, 2024

Respectfully Submitted,

SIMMONS PERRINE MOYER BERGMAN PLC

/s/ Abram V. Carls
Eric W. Lam, AT0004416
Abram V. Carls, AT0011818
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Phone: 319-366-7641
Facsimile: 319-366-1917
elam@simmonsperrine.com
acarls@spmblaw.com
ATTORNEYS FOR KEYSTONE SAVINGS BANK

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 21, 2024, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system, and served electronically on those participants that receive service through the CM/ECF System.

/s/ Abram V. Carls