## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>BDC GROUP, INC.,<br><br>    Debtor. | Case No. 23-00484<br><br>**KEYSTONE SAVINGS BANK'S REPLY TO ZAYO GROUP, LLC'S AMENDED OBJECTION TO MOTION FOR ORDER TO SHOW CAUSE** |

Keystone Savings Bank (the "Bank") submits its reply to Zayo Group, LLC's Amended Objection to Motion for Order to Show Cause, Dkt. 479 ("Objection"), and in support of the Bank's Motion for Order to Show Cause, Dkt. 431.

## I.   INTRODUCTION

On January 24, 2024, the Court ordered Zayo Group, LLC to "pay" $481,141.14 of Debtor BDC Group, Inc.'s "undisputed" "retainage" and "non-retainage" invoices "[u]pon entry" of the order. Dkt. 361 ¶¶ 3-4 ("Order"). Nothing about the Court's directive for Zayo to pay the Debtor's estate was ambiguous and Zayo's Objection does not assert that it was. Three months later, Zayo has not complied. Though Zayo eventually paid the "non-retainage" portion of the ordered amount, this payment occurred only after the Bank moved for an order to show cause, and over five weeks after the payment was due. *See* Dkt. 431. The ordered "retainage" payment was never made.

Zayo does not dispute that it completely defied the Court's order for five weeks, or that it has still not paid the Debtor's estate the full ordered amount. *See* Dkt. 361 ¶ 4 ("Zayo will pay $243,317.51"). Rather, it contends that full payment was effectuated through a "recoupment" of settlement funds transferred to the Debtor's subcontractor, GuideWell, five weeks after entry of the Order. Objection at 2 nn. 2-3. Recoupment, however, is an equitable defense and not an election against making a Court-ordered payment. None of Zayo's

authorities reach a holding that recoupment may be used to comply or to justifiably defy a court order.

Zayo seems to have understood that. In a post-Order email to the Trustee and shortly after the Trustee sent Zayo wiring instructions, Zayo acknowledged it "owe[d]" money to the "Bankruptcy Estate" under the Order, but added if it "had its druthers, it would pay GuideWell immediately from some of the money" instead. Ex. 7 at 2 (Feb. 5, 2024 email). Because Zayo opted for its druthers over compliance with the Order, Zayo is in contempt and should be sanctioned.

## II. ARGUMENT

### 1. Zayo committed contempt.

Despite objecting to the Bank's Motion to Show Cause, Zayo does not address the contempt standard or any legitimate defenses to contempt. *In re Reed*, 888 F.3d 930, 936 (8th Cir. 2018); *United States v. Rylander*, 460 U.S. 752, 757 (1983) (identifying "*present* inability to comply with the order" as a defense (emphasis in original)). Zayo claims no ambiguity, no misunderstanding, no unconsciousness or unknowing, and no impossibility in response to the Order, the Bank's evidence or the contempt conclusions arising therefrom. These documents plainly illustrate Zayo's awareness of exactly what performance the Order compelled it to perform and that Zayo chose not to, still. Dkt. 431-1, 2, 3 (Ex. 1-3); Dkt. 457-1, 2, 3 (Ex. 4-6); Ex. 7 (filed herewith). Zayo's Objection openly acknowledges that it has not completed the ordered performance. So, Zayo was and remains in contempt of the Order.

### 2. Unrefuted evidence shows Zayo circumvented the Order.

The Bank's Motion does not raise mere peccadillo. Zayo agreed and stipulated to an Order, the performance of which it then delayed and disregarded in the pursuit of an outcome that Zayo deemed preferable. "One of the overarching goals of a court's contempt power is to

ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 504 (8th Cir. 2000). Here, Zayo did just that.

Zayo's Objection fails to answer why payment was not made to the Debtor "upon entry" as Ordered, or in the several days that followed prior to case conversion. *But see* Dkt. 431-1, Ex. at 1 ("[T]he requisite paperwork has now been submitted and is being processed by Zayo's Accounts Payable department"). Zayo likewise does not respond to representations that its counsel made following case conversion that payment would be forthcoming to the Chapter 7 Trustee. *E.g.* Dkt. 431-2, Ex. 2 at 3 (Feb. 2, 2024, 1:01 P.M. email) ("I have already received payment instructions directly from the Trustee to send payment by paper check through the mail."). To this point in time, at least, Zayo knew it was obligated to "send payment" of the amounts in the Order to the "Chapter 7 Trustee." *Id.*

Documents recently provided to the Bank[1] show that the Trustee appeared to have the same understanding. In response to Zayo's counsel severing communications with the Bank, the Trustee admonished that "turning over to the bankruptcy trustee anything/everything owed to the Debtor is in everyone's best interest." Ex. 7 at 4 (Feb. 2, 2024, 3:41 P.M. email). Over the next few days, the Trustee asked Zayo's counsel to "verify" if the money had "been mailed," Ex. 7 at 4 (Feb. 3, 2024 email), and attached wiring instructions for the Trustee bank account while again inquiring whether payment would be made by "snailmail or wire transfer," Ex. 7 at 3 (Feb. 5, 2024, 8:08 A.M. email).

But Zayo did not send the payment. What Zayo sent instead was a "Settlement

---

[1] Zayo communications with the Chapter 7 Trustee were not available to the Bank when it filed its Motion for Order to Show Cause.

Communication" about Zayo's "druthers" and "position regarding payment of undisputed

invoices" and other matters. Ex. 7 at 1-3 (Feb. 5, 2024, 10:16 A.M. email). In this email,

Zayo's counsel contended that:

> Zayo does not believe any of the unpaid invoices upon which GuideWell based its mechanics liens are disputed, and; therefore, GuideWell should be paid on those invoices forthwith, so the mechanics liens can be released. Since Zayo previously paid BDC for the work evidenced by those invoices, and BDC failed and refused to pay GuideWell, Zayo would argue that a portion of what it owes the Bankruptcy Estate should be specifically earmarked for payment to GuideWell, in exchange for a release of their mechanics liens. If Zayo had its druthers, it would pay GuideWell immediately from some of the money it owes the Bankruptcy Estate. As I would argue, this is a text book example of recoupment in bankruptcy.

Ex. 7 at 2. Undisclosed was the fact this new stance breached Zayo's prior agreement that

"Zayo will not insist on payment of the Guidewell mechanics liens invoices until resolution

of the disputed Zayo/BDC/Guidewell invoices through a[] mediation/arbitration ADR

process." Dkt. 457-2, Ex. 5 at 1.[2]

To summarize, within two weeks of the Order, Zayo was looking for a way to

circumvent it and do exactly what Zayo previously pledged to not do. Zayo wanted part of

its payments to be "earmarked" for GuideWell, even though the Order plainly directed that

the payments "constitute the Bank's cash collateral" and would not be "not be used or

disbursed until further order from" the Court or until "consent/stipulation from all requisite

parties in interest." Dkt. 361 ¶ 6. But this earmarking plan was a poor cousin of Zayo's

preferred scheme: paying GuideWell directly and claiming recoupment. Presumably,

---

[2] Zayo urges that "conversion [to Chapter 7] removed BDC from possession and made the planned mediation—to which BDC was integral because of its sole knowledge of disputes pertaining to GuideWell's invoices—essentially impossible." Objection at 4. This is a farce. In mid-February Zayo urged the opposite: "In light of conversion of the case to Chapter 7, it is my understanding the only necessary parties for mediation would be Zayo, the Chapter 7 Trustee, and Guidewell." Dkt. 431-2, Ex. 2 at 2.

however, if recouping a payment to GuideWell constituted compliance with the payment Order, Zayo wouldn't need to engage in settlement discussions with the Trustee to request it.

Eventually, Zayo put its recoupment scheme into action. On March 6, Zayo and GuideWell executed a settlement agreement that obligated Zayo to pay $300,000 to GuideWell. Ex. 8 ¶ 1. The payment was intended to satisfy the invoices GuideWell submitted to BDC. Ex. 8 ¶ 3. In return, GuideWell released its administrative claim against the Debtor's estate, its mechanics' liens on the property, and any related claim against Zayo. Ex. 8 ¶¶ 2-3, 5. Payment was apparently made on April 1. Objection at 2 n.3. Three days later, on April 4, Zayo wired the Trustee the non-retainage amount in paragraph three of the order. Ex. 9 at 1 (April 4, 2024, 1:12 P.M. Email).

Zayo's history of non-payment and negotiations with the Trustee shows that it formulated its recoupment theory *post-hoc* to evade its obligations under the Order. Based on the parties' communications, Zayo, the Trustee, and the Bank each understood that the Order required Zayo to pay the retainage and non-retainage amounts to the Debtor's estate. Only later did Zayo pay GuideWell as a workaround. Prior to and in doing so, Zayo "violate[d] a definite and specific order of the court." *In re Reed*, 888 F.3d at 936 (citation omitted).

Because Zayo submitted no defense to its non-payment, *see Rylander*, 460 U.S. at 757 (1983), Zayo should be held in contempt and fined appropriately until it is brought into compliance. The Court should give proper weight to the considered lengths Zayo took in disregarding the Order.

### 3. Recoupment is inapplicable.

In addition to not being a defense to contempt, recoupment cannot satisfy Zayo's obligations under the payment order for two reasons. First, while recoupment can reduce a

party's obligation to another party, it cannot diminish a party's obligation to comply with a court order. Second, even if the payment order is not the relevant "transaction" for recoupment purposes, the settlement agreement that the order enforces would be, and Zayo has no ability to recoup its payments to GuideWell under that agreement with the Bank.

The doctrine of recoupment is a "defense." *Williams v. Neely*, 134 F. 1, 5 (8th Cir. 1904). It is the "keeping back of something that is due because there is an equitable reason for holding it." *Id.* "[B]eing in the nature of a claim of right to reduce the amount demanded," recoupment "can be had only to an extent sufficient to satisfy plaintiff's claim." *In re Am. Cent. Airlines, Inc.*, 60 B.R. 587, 590 (Bankr. N.D. Iowa 1986).

"For recoupment to apply, however, the creditor must have a claim against the debtor that arises from the same transaction as the debtor's claim against the creditor." *In re NWFX, Inc.*, 864 F.2d 593, 597 (8th Cir. 1989). This same-transaction requirement is what distinguishes recoupment from set-off. *In re Am. Cent. Airlines, Inc.*, 60 B.R. at 590. To arise from the same transaction, it is not enough that the claims have a "logical relationship" to each other. *E.g.*, *In re University Medical Center*, 973 F.2d 1065, 1081 (3d Cir. 1992) (espousing the "logical relationship" test). In the Eighth Circuit, the "same transaction" means the claims "must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *U.S. on Behalf of U.S. Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 623 (8th Cir. 1994).

Under these principles, Zayo cannot reduce its obligation to pay the Debtor's estate by recouping its payment to GuideWell. First, Zayo's obligation to make payments to the Debtor's estate arises from the Court's command that it complete those payments. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293, (1947) ("[A]n order issued by a court

with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings"). Although the parties affected by the payment Order can move the Court to coercively enforce it, the source of Zayo's "duty of obedience" is the Court's "judicial power," not an integrated transaction with the Debtor. *Id.* 294, 290 n.56. Because Zayo's payment obligation does not arise from a transaction with the Debtor, recoupment is inapplicable.

Second, even if Zayo's payment obligation arises somewhere other than the Order, the only other candidate "transaction" is the settlement agreement the Order implements. As Zayo notes, this agreement was the product of "multiple hours" of "settlement discussions" spanning "multiple weeks" with Zayo, the Debtor, the Bank, and the Committee. Objection at 3. Recoupment recognizes the settlement agreement as constituting a new transaction. *See In re Eggers*, 432 B.R. 577, 583 (Bankr. W.D. Tex. 2010), *subsequently aff'd*, 466 F. App'x 337 (5th Cir. 2012) ("Moreover, both the Settlement Agreement and state court judgment operate to create not only the single transaction that is a necessary element for recoupment to apply, but also establish the respective claims against the Movants and the Debtors."); *Elec. Metal Prod., Inc. v. Honeywell, Inc.*, 95 B.R. 768, 770 (D. Colo. 1989) (finding that a settlement agreement between a manufacturer and a supplier under which the manufacturer received a $50,000 credit on goods sold by the supplier was a different transaction from the manufacturer's subsequent use of the credit). There is no other way to construe it. Accordingly, Zayo cannot marshal its payment to GuideWell under the Master Construction Services Agreement with the Debtor (or whatever other transaction) to recoup its obligations under the Order. The transactions are different, with different parties. Recoupment is legally unavailable to Zayo.

**4.  Even if recoupment is allowed, Zayo still contemned the Court's order.**

Even assuming recoupment is permitted as against Court-ordered obligations, Zayo still committed contempt that caused harm. The order "definite[ly] and specific[ally,]" *In re Reed*, 888 at 936, required Zayo to pay $237,824.14 "[u]pon entry" on January 24, 2024, Dkt. 361 ¶ 3. Zayo didn't pay this amount until April 1, 2024, well after the Bank's February 23, 2024 Motion to Show Cause. Dkt. 431. Thus, contempt.

Similarly, only by leveraging its contempt of the second payment amount-- $243,317.51—did Zayo present itself with the opportunity to recoup via payment to Guidewell weeks later.[3] The payment, if made as ordered, "constitute[d] the Bank's cash collateral," Dkt. 361 ¶ 6, and would be available to satisfy the Debtor's secured obligations in the amount of $243,317.51 and unavailable for Zayo to recoup. Zayo's contempt—not paying "[u]pon entry"—accordingly directed the money elsewhere and caused the Bank $243,317.51 of harm.

On this second ordered payment, Zayo's Objection repeatedly stresses that it was not improper for "Zayo to avoid paying $300,000 twice for the same debt." *E.g.* Objection at 5. What Zayo conveniently omits mentioning is the $50,000 of retainage withheld by permission and $241,642.90 of invoice submissions (face value actually higher) that are outstanding and unresolved. Dkt. 361 ¶¶ 4, 5. So, when Zayo says it does not want to "pay twice," what it really means is it does not want to pay the other outstanding invoices "once." Otherwise Zayo would simply exercise recoupment rights against these other outstanding invoices, which total approximately $300,000 too.

This Court "has inherent power to enforce compliance with its lawful orders and

---

[3] Again, Zayo previously agreed it would not do this. Dkt. 547-2, Ex. 5 at 1.

mandates by awarding civil contempt damages, including attorneys fees." *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1340 (8th Cir. 1975); *see In re Rankin*, No. 88-156-C H, 1989 WL 1684549, at *2 (Bankr. S.D. Iowa Feb. 21, 1989) ("The imposition of costs and attorney's fees is an appropriate sanction for civil contempt."). The Court should enter coercive sanctions against Zayo, award the Bank an amount equal to the harm Zayo caused, and all attorneys' fees stemming from Zayo's failure to comply with the Order (whether incurred by the Bank or the Chapter 7 Trustee).

### III. Conclusion.

For the reasons above and as set forth in the Bank's Motion for Order to Show Cause, Dkt. 431, and as evidenced by the records that the Bank submits in support, Dkt. 431-1, 2, 3 (Ex. 1-3), Dkt. 457-1, 2, 3 (Ex. 4-6), and Ex. 7-9 filed herewith, the Bank respectfully requests that the Court find Zayo in contempt of the Stipulated Order for Stay Relief and Other Matters, sanction Zayo for its non-compliance, award the Bank an amount equal to the harm Zayo caused, all attorneys' fees stemming from Zayo's failure to comply with the Order, and for such further relief in the Bank's favor that the Court deems appropriate.

Dated: April 26, 2024

Respectfully Submitted,

SIMMONS PERRINE MOYER BERGMAN PLC

/s/ Abram V. Carls
Eric W. Lam, AT0004416
Abram V. Carls, AT0011818
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Phone: 319-366-7641
Facsimile: 319-366-1917
elam@simmonsperrine.com
acarls@spmblaw.com
ATTORNEYS FOR KEYSTONE SAVINGS BANK

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 26, 2024, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system, and served electronically on those participants that receive service through the CM/ECF System.

/s/ Abram V. Carls