# AGREEMENT

Zayo Group, LLC ("**Zayo**") and Guidance Well Services, LLC ("**GuideWell**") enter into this Agreement as of March 26, 2024. Zayo and GuideWell are the "**Parties**" and each is a "**Party**."

## Recitals

A.   Zayo and BDC Group Inc. ("**BDC**") entered into a *Master Construction Services Agreement* dated as of October 13, 2020, and amended as of March 31, 2023 (the "**Master Contract**"), which included related agreements and schedules, under which BDC would serve as Zayo's subcontractor to install approximately 2.7 million linear feet of fiber optic telecommunications cables in an existing conduit running adjacent to commercial railroads between Chicago, IL and Omaha, NE (the "**Project**").

B.   On June 13, 2023 (the "**Petition Date**"), BDC commenced a Chapter 11 bankruptcy case in the US Bankruptcy Court for the Northern District of Iowa (the "**Bankruptcy Case**" and the "**Bankruptcy Court**"). After the Petition Date, BDC entered into a contract with GuideWell (the "**GuideWell Contract**") under which GuideWell would provide services to BDC as BDC's sub-subcontractor to facilitate BDC's satisfying of its obligations under the Master Contract. GuideWell provided services to BDC under the GuideWell Contract and duly invoiced BDC for those services. Zayo is not a party to the GuideWell Contract; GuideWell is not a party to the Master Contract. Despite BDC's bankruptcy filing, Zayo made regular payments to BDC under the Master Contract, much of which was allegedly intended to be used to enable BDC to satisfy GuideWell's invoices. But BDC failed to pay GuideWell for services rendered under the GuideWell Contract while allegedly simultaneously certifying to Zayo that it *had* paid GuideWell and that there would be no mechanic's liens filed on account of GuideWell's invoices. Because GuideWell's services to BDC were rendered after the Petition Date, GuideWell's invoices constitute an administrative expense claim (the "**Admin Claim**") against BDC's bankruptcy estate (the "**Estate**") under the US Bankruptcy Code. GuideWell has completed all its work under the GuideWell contract. BDC has ceased all business operations and has converted its Bankruptcy Case to one under Chapter 7 of the US Bankruptcy Code.

C.   To secure payment of its unpaid invoices rendered to BDC under the GuideWell Contract, GuideWell filed several mechanic's liens on real property located in Iowa and Illinois (the "**Liens**"). Citing aggrievement from the presence of Liens on their property, several landowners, including commercial railroads, have barred Zayo and its subcontractors from accessing their land to perform services required under Zayo's contracts with its customers that necessitated the Master Contract. Accordingly, Zayo has a strong economic interest in ensuring the Liens are removed from all affected properties.

D.   The Master Contract contemplates BDC's failure to pay its own subcontractors (such as GuideWell) and the possibility that such failure could result in mechanic's liens and other damages suffered by Zayo and other third parties. To address that possibility, the Master Contract explicitly permits Zayo to make payments directly to entities such as GuideWell—whom BDC was required to pay but failed to—so that, among other things, mechanic's liens may be satisfied and lifted. The Master Contract and applicable state law then permits Zayo to recoup what it pays to such third parties against what it owes to BDC under the Master Contract (a "**Recoupment**").

E.  GuideWell has issued several invoices to BDC that remain unpaid and underlie the Liens. Zayo (and, Zayo believes, BDC) disputes that GuideWell is entitled to a portion of the amounts sought in those invoices, while GuideWell disputes that it is required to release the Liens unless and until it is paid in full on the face amount of those invoices (the "**Disputes**").

F.  The Parties compromise and settle all Disputes by this Agreement.

## Terms and Conditions

In consideration of the recitals, the mutual obligations set forth below, and other sufficient consideration received, the Parties agree:

1.  **Settlement Payment.** In full and final resolution of all Disputes, Zayo must indefeasibly pay to GuideWell $300,000.00 by electronic funds transfer (the "**Payment**") as soon as reasonably practicable after the Parties have both executed this Agreement but in any event, not more than seven calendar days after the Parties have both executed this Agreement. This Agreement's "**Effective Date**" is the date on which this Agreement has been executed by both Parties and GuideWell has received the Payment.

2.  **Release of Liens.** As soon as reasonably practicable after GuideWell as received the Payment, GuideWell must take all steps necessary to release and remove all Liens attaching to all property anywhere in the world arising from or related to the GuideWell Contract or GuideWell's invoices rendered to BDC at any time. As soon as reasonably practicable after doing so, GuideWell's counsel must represent to Zayo in writing (which may be an email) that the Liens have all been released.

3.  **Release of Admin Claim.** Recognizing that the Parties intend the Payment to satisfy in full all invoices rendered to, and all claims against, BDC under the GuideWell Contract or otherwise, and to facilitate the Recoupment, GuideWell must take all steps reasonably necessary as soon as reasonable practicable to waive and release the Admin Claim and any other claim against the Estate and any right to any recovery from the Estate arising from or related to the GuideWell Contract or otherwise.

4.  **Release of Claims by Zayo.** As of the Effective Date, Zayo and its predecessors, successors, assignees, affiliates, officers, directors, members, partners, associates, employees, attorneys, agents, trustees, insurers, shareholders, parents, subsidiaries, partners, co-venturers, other affiliated business entities, and any other entity acting in any manner for Zayo or on its behalf (collectively, the "**Zayo Parties**"), release GuideWell and its respective predecessors, successors, assignees, affiliates, officers, directors, members, partners, associates, employees, attorneys, agents, trustees, licensees, insurers, shareholders, parents, subsidiaries, partners, co-venturers, other affiliated business entities, and any other entity acting in any manner for GuideWell or on GuideWell's behalf (collectively, the "**GuideWell Parties**"), from all claims, obligations, and causes of action, whether known or unknown, fixed or contingent, legal or equitable, including without limitation those arising out of or relating to the Master Contract, the GuideWell Contract, the Project, the Liens, and the Disputes, existing from the beginning of time through the Effective Date, except (a) any indemnification claims arising from liabilities to third parties other than Zayo, BDC, GuideWell, and Keystone Savings Bank (and other lender parties similarly situated) related

to the Project ("**Third Party Claims**") and (b) any claims related directly to the enforcement of this Agreement.

5. **Release of Claims by GuideWell.** As of the Effective Date, GuideWell on behalf of all GuideWell Parties releases the Zayo Parties from all claims, obligations, and causes of action, whether known or unknown, fixed or contingent, legal or equitable, including without limitation those arising out of or relating to the Master Contract, the GuideWell Contract, the Project, the Liens, and the Disputes, existing from the beginning of time through the Effective Date, except (a) Third Party Claims and (b) any claims related directly to the enforcement of this Agreement.

6. **Attorney Fees.** Each Party is responsible to pay its own costs and attorney fees incurred in connection with the Disputes and this Agreement. But, if any Party brings an action to enforce this Agreement or to obtain a declaration of the Parties' rights and obligations, the prevailing Party, as determined by a court of competent jurisdiction, on trial or appeal, is entitled to its reasonable attorney fees and costs to be paid by the losing Party, as determined by the court.

7. **No Admissions.** The Agreement does not constitute an admission by any Party of any liability on any matter. Rather, the Parties enter into this Agreement solely in compromise and settlement of the Disputes and to avoid risk, additional litigation costs, and other expenses.

8. **Authority to Execute.** Each Party has read this Agreement, has had a full opportunity to consult with counsel of its choice, and understands this Agreement's contents and effects. All individuals executing this Agreement represent and warrant that they have the necessary authority and are duly empowered to execute this Agreement on behalf of the entity indicated.

9. **Integration Clause.** This Agreement constitutes the complete understanding of the Parties with respect to the subject matters addressed in the Agreement. This Agreement supersedes any prior or contemporaneous communications, agreements, or understandings and is the Parties' final agreement with respect to the subject matters addressed in the Agreement.

10. **Joint Negotiation.** The Parties have jointly negotiated and drafted this Agreement. Accordingly, no ambiguous term of this Agreement should be interpreted against any Party based solely on which Party may have drafted or introduced that term.

11. **Severability.** If any provision of this Agreement is held to be illegal, invalid, or unenforceable for any reason, that provision is fully severable from the Agreement and the remaining provisions remain fully enforceable and effective notwithstanding the severance of the offending provision.

12. **Amendment.** This Agreement may not be amended except by a written instrument signed by all Parties.

13. **Choice of Law, Jurisdiction, Venue.** The internal laws and decisions of the State of Iowa govern the validity, construction, interpretation, and administration of this Agreement, irrespective of any principle of conflict of laws. With respect to any proceeding pertaining to this Agreement, each Party consents and submits to the jurisdiction of the Bankruptcy Court to enter final orders and waives any argument that such court is an improper or inconvenient venue.

14. **Execution.** The Parties may execute this Agreement by hand, digitally, or electronically, in any number of counterparts.

### Signatures

**Zayo Group, LLC**

By: *Jason Jorgensen* (DocuSigned)
Name: Jason Jorgensen
Title: SVP Network Implementation

**Guidance Well Services, LLC**

By: *[signature]*
Name: Zach Sayers
Title: President

4

Exhibit 8 - Page 4 of 4