**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re:<br><br>BDC GROUP, INC.,<br><br>　　　　Debtor. | Chapter 7<br><br>Case No. 23-00484<br><br>Hon. Thad J. Collins<br><br>**THIRD AND FINAL FEE APPLICATION OF SMITH GAMBRELL & RUSSELL AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

Smith Gambrell & Russell LLP ("SGR"), as counsel to the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned bankruptcy case of BDC Group, Inc. (the "Debtor"), hereby submits this third and final application for compensation (the "Application") which seeks: (i) final approval of compensation in the amount of $150,495.50 for services rendered and $984.35 for reimbursement of expenses incurred for the period of June 26, 2023 through January 30, 2024, and (ii) authorization of payment of $63,979.85 from the Debtor's estate, representing all unpaid amounts due and owing to SGR on account of this Application. In support hereof, SGR states as follows:

**JURISDICTION AND VENUE**

　　1.　　The Court has jurisdiction over this matter pursuant to sections 1334 and 157(a) of title 28 of the United States Code. This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

　　2.　　The statutory predicates for the relief requested herein are sections 330, 331, 503(b) and 507(a)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3. On June 13, 20123 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. On June 22, 2023, the Office of the United States Trustee appointed the Committee as an official committee to represent the interests of unsecured creditors of the Debtor pursuant to section 1102 of the Bankruptcy Code, as amended on June 26, 2023.

5. On June 30, 2023, the Court entered an order granting the Committee's application to employ SGR as its counsel retroactive to June 26, 2023.

6. The Court granted two of SGR's prior fee applications on an interim basis, summarized as follows:

| Doc No. | Date Approved | Fee Application Period | Fees Allowed | Expenses Allowed | Total Allowed | Amount Paid | Amount Unpaid |
|---|---|---|---|---|---|---|---|
| 192 | 10/26/2023 | 6/26/2023-8/31/2023 | $77,945.00 | $616.85 | $78,561.85 | $78,561.85 | $0.00 |
| 331 | 1/16/2024 | 9/1/2023-11/30/2023 | $54,651.50 | $367.50 | $55,019.00 | $8,938.15 | $46,080.85 |

7. As of the date of this Application, SGR has been paid $87,500 on account of its two prior fee applications. SGR is not holding any funds in a professional fee carve-out, which were applied to the prior fee orders entered by the Court.

## RELIEF REQUESTED

8. SGR rendered services on behalf of the Committee from June 26, 2023 through January 30, 2024 (the "Fee Application Period"), for which SGR seeks final allowance of compensation and reimbursement of expenses. By this Application, SGR seeks an order: (1) allowing SGR $150,495.50 in compensation and $984.35 in reimbursable expenses on a final basis for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate

pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code, and (2) authorizing payment to SGR of $63,979.85 from the Debtor's estate, representing the unpaid balance owed to SGR.

9.   SGR has not previously sought approval of fees and expenses incurred for the period of December 1, 2023 through January 30, 2024. SGR's billing statements for this period, broken down by project category, are attached hereto as Group Exhibit A.[1]

## DISCUSSION

10.   Section 330(a) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court may award . . . reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person . . . and . . . reimbursement for actual, necessary expenses. . . .  In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title

11.   The Eighth Circuit Court of Appeals has stated:

> "[Reasonable] [c]ompensation . . . presumably reflects (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained."

*P.A. Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 731-32 (8th Cir. 1992).

12.   In reviewing the Application, the Court should be guided by the Eighth Circuit's instruction to ascertain whether such services were rendered and billed in accordance with the established market for legal services in similar matters:

---

[1] SGR attaches only the billing statements for December 1, 2023 through January 30, 2024 (the conversation date) and incorporates by reference the billing statements attached to its previously filed interim fee applications identified as docket numbers 192 and 331.

> Section 330 "is meant to encourage high standards of professional legal practice in the bankruptcy courts. . . . Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts."

*Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir. 1984); *see also In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is so to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.").

13. "Services of counsel for a creditors committee are necessary if they are in furtherance of the committee's statutory functions under the Bankruptcy Code." *In re Wire Cloth Prods., Inc.*, 130 B.R. 798, 811 (Bankr. N.D. Ill. 1991). *See also In re Imerys Talc America, Inc.*, 2020 WL 6927654, at *5 (Bankr. D. Del. Nov. 20, 2020) ("services must benefit the estate *or* a particular constituency (e.g. an official committee).") (emphasis added). Keeping a creditor's committee apprised of developments in a case is necessary and beneficial to a committee and to unsecured creditors as a whole. *Wire Cloth Prods.*, 130 B.R. at 812.

14. A professional's actions may benefit the estate and be compensable even in the absence of a direct financial benefit to the estate. *In re Blue Stone Real Estate*, 487 B.R. 573, 576 (Bankr. M.D. Fla. 2013). Such benefit is not restricted solely to a monetary or economic benefit, but where the services promote the bankruptcy process or administration of the estate in accordance with the Bankruptcy Code. *In re Kitts Dev., LLC*, 474 712, 721 (Bankr. D.N.M. 2012). *See also In re Lifschultz Fast Freight, Inc.*, 140 B.R. 482, 484 (Bankr. N.D. Ill. 1992) (holding "that the cost of services performed by professionals on behalf of an unsecured creditors committee may be paid by the estate even if those services do not result in a monetary benefit to the estate.")

15. SGR's hourly rates of compensation for its attorneys and para-professionals during the Fee Application Period range from $150 to $1,125 (however, no professional with an hourly rate in excess of $595 has performed services herein). Those rates are comparable to rates charged by other practitioners having the same amount of experience, expertise and standing for similar services in this jurisdiction. SGR consistently and consciously made every reasonable effort to represent the Committee in the most economical, efficient and practical manner possible.

16. A summary of the compensation requested herein regarding each of SGR's professionals and para-professionals is set forth below:[2]

| Timekeeper | Title | Year of Bar Admission | Rate | Hrs. | Total |
|---|---|---|---|---|---|
| DeRousse, Shelly A. | Partner | 2001 | $ 595.00 | 42.4 | $ 25,228.00 |
| Isenberg, Shira R. | Partner | 2003 | $ 500.00 | 14.8 | $ 7,400.00 |
| Janczak, Elizabeth L. | Partner | 2010 | $ 500.00 | 202.2 | $ 101,100.00 |
| | | | $ 250.00 (Travel) | 7.3 | $ 1,825.00 |
| Manley, Morgan V. | Associate | 2017 | $ 425.00 | 21.0 | $ 8,925.00 |
| Rower, Kirstin N. | Paralegal | N/A | $ 300.00 | 2.5 | $ 750.00 |
| Helton, Tonita M. | Of Counsel | 2001 | $ 500.00 | 1.4 | $ 700.00 |
| Webster, Jacqueline E. | Paralegal | N/A | $ 315.00 | 14.5 | $ 4,567.50 |
| | | | Totals: | 306.1 | $ 150,495.50 |
| | | | Blended Rate: | | $491.65 |

17. No agreement or understanding exists between SGR and any other person for the sharing of compensation received or to be received in connection with this case, other than as disclosed or authorized pursuant to the Bankruptcy Code, Bankruptcy Rules and the Local Rules.

18. SGR reserves the right to correct, amend or supplement this Application, including, without limitation, to seek payment in the event this Application is not approved in full.

---

[2] As an accommodation to the Committee, SGR did not increase its hourly rates between 2023 and 2024 as is SGR's ordinary course of business for its clients.

SGR/70773008.1

## **SERVICES PERFORMED**

19.     This Application sets forth in detail the work performed by SGR and the time spent during the Application Period.

20.     SGR was conscious of minimizing costs to the estate for the benefit of its constituents. Accordingly, SGR made every effort to avoid having multiple attorneys perform the same or similar tasks. However, there were instances reflected in Group Exhibit A where multiple timekeepers billed for performing the same task, such as two attorneys attending Committee conference calls, attending conference calls with the Debtor's counsel, attending Court hearings and depositions, and drafting and revising pleadings. These efforts were necessary as SGR allocated different responsibilities to different attorneys and the presence of both were required to address those separate matters. SGR also typically has multiple attorneys assist in preparing pleadings to review and provide feedback on initial drafts. Accordingly, SGR submits that the presence of multiple attorneys in these instances is justified.

**A.      General                                                                                      $30,192.50**

21.     SGR spent 59.7 hours at a cost of $30,192.50 on general matters. This category primarily includes time spent reviewing incoming pleadings, preparing for and attending Court hearings on general case matters, corresponding with other parties-in-interest concerning general case matters, and performing other necessary tasks associated with a committee representation. This category also includes matters which encompass more than one discrete category.

**B.      Litigation                                                                                     $8,988.00**

22.     SGR spent 19.2 hours at a cost of $8,988.00 on litigation matters. This category primarily includes time spent reviewing and analyzing potential preference claims held by the estate, conducting Rule 2004 discovery including subpoenas to Keystone Savings Bank, F&M Bank, and the Debtor's former credit card company to investigate the Debtor's pre-petition

operations and transactions, as well as reviewing the Debtor's complaint seeking to impose an injunction in favor of its principal Dennis Bruce and against Mr. Bruce's creditors.

**C.     Creditor Inquiries                                          $850.00**

23.     SGR spent 1.7 hours at a cost of $850.00 communicating with creditors and addressing their inquiries regarding this bankruptcy case.

**D.     Secured Creditor Issues                                  $61,005.50**

24.     SGR spent 121.8 hours at a cost of $61,005.50 on secured creditor issues. This category includes time spent relating to interim orders on the Debtor's motion to approve debtor-in-possession ("DIP") financing, communicating and negotiating with the Debtor and DIP lender Keystone Savings Bank regarding the same, reviewing proposed DIP budgets, preparing for and attending hearings regarding the Debtor's DIP motion, and performing a detailed collateral analysis of the validity, priority and extent of the purported liens and security interests of Keystone Savings Bank pre-petition liens.

25.     This category also includes time spent reviewing motions of the Debtor's purchase-money security interest lenders for adequate protection and relief from the automatic stay, communicating and negotiating with those lenders regarding the same, attending hearings on the same, and reviewing collateral and perfection issues of those lenders in vehicles and equipment.

26.     This category also includes time spent reviewing various secured creditors' motions for relief from stay and orders relating to the same, including the Committee's opposition to Keystone Savings Bank's motion for relief from stay to pay $500,000 of its pre-petition debt from the Debtor's cash.

27.     Finally, time in this category includes the Committee's opposition to Keystone Savings Bank's motion to recognize its purported pre-petition liens in chapter 5 causes of action and motion for summary judgment on the same.

**E.     SGR Retention and Fee Applications                $7,367.00**

28.     SGR spent 16.2 hours at a cost of $7,367.00 preparing SGR's retention application as well as SGR's first and second interim fee applications and reviewing exhibits to the same.

**F.     Other Professional Retention                      $3,454.00**

29.     SGR spent 6.8 hours at a cost of $3,454.00 on other professional retention matters. Time in this category includes time spent relating to ABLS's retention, Keystone Savings Bank's objection to the same, opposing Keystone Savings Bank's motion to reconsider the Court's ruling on the same, and reviewing ABLS's interim fee applications.

**G.     Plan and Disclosure Statement                     $6,023.50**

30.     SGR spent 11.8 hours at a cost of $6,023.50 on plan and disclosure statement matters. Time in this category includes time spent relating to the Debtor's motion to terminate exclusivity, discussions and negotiations with the Debtor relating to proposed plan terms, reviewing and providing revisions to a creditor trust agreement, and reviewing the Debtor's filed chapter 11 plan and discussions with the Debtor and Keystone Savings Bank regarding the Committee's concerns regarding the same.

**H.     Executory Contracts and Unexpired Leases          $10,173.00**

31.     SGR spent 20.8 hours at a cost of $10,173.00 on executory contract and unexpired lease matters. Time in this category includes time spent reviewing BMO's contracts to determine whether they are true leases, reviewing various motions to assume/reject leases, and communicating with lessors relating to the same. Time in this category also includes time spent reviewing and preparing for a hearing on Zayo's motion to lift the automatic stay, drafting an objection to the same, reviewing pleadings related to the same, attending various hearings on the same, and participation in numerous telephone conferences and e-mail exchanges with counsel for relevant parties in connection with the same.

**I.      Committee Meetings and Governance                              $10,041.50**

32.     SGR spent 19.0 hours at a cost of $10,041.50 on Committee meetings and governance issues. This category primarily consists of time spent drafting Committee bylaws, conducting Committee meetings regarding open case matters, and communicating with Committee members regarding the same.

**J.      Investigation of Operations                                        $4,988.00**

33.     SGR spent 9.9 hours at a cost of $4,988.00 on investigation of the Debtor's pre-petition operations. This category primarily consists of time spent reviewing and investigating the Debtor's assets, reviewing financial statements produced to the Committee, and reviewing pre-petition transactions including review of the Debtor's credit card statements to identify potential estate assets.

**K.     Asset Sales                                                              $1,500.00**

34.     SGR spent 3.0 hours at a cost of $1,500.00 on investigation of the Debtor's pre-petition operations. This category primarily consists of time spent reviewing an appraisal of the Debtor's Virginia equipment and comparing to schedules, and reviewing and revising a non-disclosure agreement in connection with the same.

**L.      Schedules and Reports                                              $4,037.50**

35.     SGR spent 8.8 hours at a cost of $4,037.50 on schedules and reports. This category primarily includes time spent reviewing the Debtor's schedules of assets and liabilities and statement of financial affairs, and reviewing monthly operating reports and the Debtor's financial performance.

**M.     Claims Analysis                                                            $50.00**

36.     SGR spent 0.1 hours at a cost of $50.00 reviewing the Debtor's motion to set a claims bar date.

N.   **Travel**                                                              **$1,825.00**

37.   SGR spent 7.3 hours at a cost of $1,825.00 traveling to and from Cedar Rapids, Iowa for the July 20, 2023 hearing in this case. SGR bills for its travel time at 50% of its hourly rates.

## REASONABLE EXPENSES INCURRED

38.   Expenses during the Application Period totaling $984.35 were incurred in the following categories:

a.   <u>Travel Expenses/Mileage</u>:  SGR incurred costs totaling $546.69 in lodging and mileage expenses in connection with traveling to and from Cedar Rapids, Iowa for the July 20, 2023 court hearing.

b.   <u>Meal and Conference Expenses</u>:  SGR incurred costs totaling $39.16 in meal expenses in connection with SGR to and from Cedar Rapids, Iowa for the July 20, 2023 court hearing.

c.   <u>Miscellaneous</u>:  SGR incurred costs totaling $31.00 in as a service fee in connection with requesting certificates of good standing for SGR attorneys' *pro hac vice* applications.

d.   <u>Document Production Fee</u>: SGR incurred a charge of $367.50 in connection with a document production fee charged by F&M Bank in connection with the Committee's Rule 2004 subpoena for bank documents.

39.   All expenses incurred by SGR in connection with its representation of the Committee were ordinary and necessary expenses.  All expenses billed to the Committee were billed in the same manner as SGR bills non-bankruptcy clients.

40.   SGR does not bill its clients or seek compensation in this Application for certain overhead expenses, such as local and long-distance telephone calls, secretarial services, and facsimile transmissions. Such expenses are factored into SGR's hourly rates. SGR has not included certain other charges described herein in its overhead because it has determined that it is fairer to its smaller clients who use proportionately less of these services to have these expenses billed separately.

## BENEFIT TO THE ESTATE/COMMITTEE

41. SGR's fees and expenses subject to this Application are compensable under section 330(a) of the Bankruptcy Code because its services were actual and necessary, and reflect reasonable compensation for such services.

42. SGR remained active on all matters in its representation of the Committee as counsel during the pendency of the chapter 11 case and assisted the Committee in exercising its powers and fulfilling its duties under section 1103(c) of the Bankruptcy Code including consulting with the Debtor concerning case administration; investigating the acts, conduct, assets, liabilities, and financial condition of the Debtor; participating in the formulation of a chapter 11 plan; and performing other services that are in the interest of the Committee and unsecured creditors.

43. In particular, SGR: (1) obtained production of the Debtor's credit card and bank statements, which were unavailable from the Debtor, to investigate the Debtor's pre-petition transactions and identify potential estate assets; (2) took action to preserve and protect estate assets including the Debtor's cash and the estate's interest in chapter 5 causes of action for the benefit of the estate and unsecured creditors; (3) communicated case updates to Committee members and to other unsecured creditors who contacted Committee counsel; (4) assisted in drafting a creditor trust agreement in connection with the Debtor's proposed chapter 11 plan; and (5) provided necessary input on various motions, order, and agreements to protect the interests of unsecured creditors.

44. SGR submits that the services set forth herein benefitted the estates and their creditors by ensuring that the Debtor's assets were properly preserved and administered, and that they gained the highest value under the circumstances to maximize the potential recovery for general unsecured creditors.

**WHEREFORE**, SGR respectfully requests that the Court enter an order:

(a) allowing SGR, on a final basis, $150,495.50 in compensation for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(b) allowing SGR, on a final basis, $984.35 in reimbursable expenses for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(c) authorizing payment to SGR of $63,979.85 from the Debtor's estate, representing all unpaid amounts owing to SGR on account of this Application; and

(d) granting such other and further relief as the Court deems just and proper.

Dated: May 3, 2024

**SMITH GAMBRELL & RUSSELL LLP**

By: /s/ Elizabeth L. Janczak
      One of Its Attorneys

Shelly A. DeRousse*
Elizabeth L. Janczak*
Tonita M. Helton (Iowa Bar No. AT0009125)
SMITH GAMBRELL & RUSSELL LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone: 312.360.6000
sderousse@sgrlaw.com
ejanczak@sgrlaw.com
thelton@sgrlaw.com
*Admitted pro hac vice*