**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| IN RE: | Chapter 7 |
| BDC Group, Inc., | Bankruptcy No. 23-00484 |
| Debtor. | RESPONSE TO UNITED STATES TRUSTEE'S OBJECTIONS TO DEBTOR'S COUNSEL'S FEE APPLICATIONS |

COMES NOW Debtor's former counsel, Ag & Business Legal Strategies ("Applicant"), and respectfully asks this Court to overrule the United States Trustee's objections to its fees, except for the consensual reduction discussed below, and award the Applicant the fees it requests, stating the following in support:

1. The Applicant acknowledges that the United States Trustee reserved her right to object to the Applicant's first fee application, that her objection to the Applicant's second fee application was held in abeyance, and more generally the fact that in bankruptcy interim compensation awarded under 11 U.S.C. § 331 is always subject to review on a final fee application. 11 U.S.C. § 330(a)(5).

2. However, the Applicant disagrees that the United States Trustee's objections justify reducing the Applicant's fees and expenses in all but one instance.

3. The United States Trustee's objections to the Applicant's fee applications categorize the disputes into the following six categories:
   a. Outside the period applied for.
   b. Excessive intra-office conferences and overstaffing.
   c. The stay adversary.
   d. Research time.
   e. Stay violation work.
   f. Other work that did not benefit the estate.

4. The table below shows the categories of objections and the amount of fees and expenses the United States Trustee objects to in each fee application for each category.

|  | **First** | **Second** | **Third** | **Totals** |
|---|---|---|---|---|
| Outside the period applied for | $0.00 | $15,489.87 | $0.00 | $15,489.87 |
| Excessive intra-office conferences and overstaffing | $3,615.00 | $4,575.00 | $4,053.00 | $12,243.00 |
| The stay adversary | $0.00 | $7,295.29 | $2,540.00 | $9,835.29 |
| Research time | $522.00 | $3,432.50 | $2,225.00 | $6,179.50 |
| Stay violation work | $1,151.50 | $0.00 | $0.00 | $1,151.50 |
| Other work that did not benefit the estate | $1,785.00 | $0.00 | $0.00 | $1,785.00 |
| **Totals:** | $7,073.50 [1] | $30,792.66 [2] | $8,818.00 | $46,684.16 |

5. The Applicant consents to reducing its approved fees and expenses by the $15,489.87 in fees and expenses outside the period applied for. The Applicant made a mistake on its second fee application and there was a mismatch between the invoice dates and the dates in the fee application itself. With its third fee application the Applicant reapplied for the $9,569.00 in fees and $5,733.87 in expenses incurred after the second fee application's period, *see* Doc. 299, ¶¶ 10–11, so awarding those fees twice would be a duplication. The Applicant will waive the $187.00 in fees it applied for in its second fee application but incurred before then. *See id.* at ¶ 9.

6. Based on the precision with which the amounts of fees and expenses the United States Trustee objects to are listed, it appears she has lists of time entries she finds objectionable split into categories. However, she did not provide those lists with her objections. In many cases this makes it difficult to know precisely what she objects to. However, the Applicant will do its best.

7. While not explicitly stated, the United States Trustee's other complaints boil down to allegations that the Applicant's services fell afoul of 11 U.S.C. § 330(a)(4)(A), whether because there was unnecessary duplication of services or the services were neither reasonably likely to benefit the estate nor necessary to administer the case.

---

1. The United States Trustee's objection (Doc. 480) lists this total as $7,114.00 in ¶ 31 but properly lists it as $7,073.50 in ¶ 48. This second figure equals the sum of the amounts listed in ¶¶ 34–35, 39, and 41.

2. The United States Trustee's latest objection, *id.* at ¶ 48, lists $24,729.50 in fees and $6,036.16 in expenses for the second fee application, for a total of $30,765.66. It appears the discrepancy is a transposition of the tens and ones digit of the expenses amount on the objection—the correct sum is $6,063.16. Consequentially the United States Trustee's total requested reduction is also $27.00 lower than the math suggests.

8. The Applicant submitted its fee applications and requested fees under 11 U.S.C. § 330. 11 U.S.C. § 330(a)(4)(A)(i) requires that compensation requests avoid *unnecessary* duplication of services, while romanette (ii) requires that services in a compensation application be either *reasonably likely* to benefit the estate or be necessary to administer the case.

9. The United States Trustee's objections to excessive intra-office conferences and overstaffing implicate 11 U.S.C. § 330(a)(4)(A)(i)'s requirement to avoid *unnecessary* duplication of services. However, the United States Trustee's proposed standard does not match the statutory text. While it is difficult to be certain without a breakdown of how the United States Trustee came to the amounts she listed in her objections, it appears that perhaps the United States Trustee objects to the time entries of one attorney when multiple attorneys attended the same meeting.

10. The Applicant acknowledges that, if this is what the United States Trustee did, it would generally align with this Court's prior holding in *In re Agriprocessors, Inc.*, Bankr. No. 08-02751, 2009 WL 4623808 at *2 (Bankr. N.D. Iowa December 8, 2009) (prohibiting fees for "duplicative billing by attorneys involved in intra-office conferences) (quoted approvingly in *In re Bailey Ridge Partners, LLC*, 2018 WL 3655385 at *5 (Bankr. N.D. Iowa June 28, 2018) and *In re VeroBlue Farms, Inc.*, 2023 WL3011756 at *4 (Bankr. N.D. Iowa April 19, 2023)). However, the Applicant respectfully suggests that this standard goes further than the statute requires and discourages conduct beneficial to debtors' estates.

11. Any firm that has multiple attorneys working on a bankruptcy must coordinate those attorneys' efforts. Barring a before-the-fact division of the work into completely distinct and unrelated projects, in order to diligently and capably perform their work for the client the attorneys will need to keep apprised of developments in the case, learn information from the debtor and other parties, and keep abreast of their colleagues' projects to see how they interact with their own work. These sorts of collaborations are also instances where the whole is more than the sum of its parts. Attorneys bounce ideas off each other, develop theories, find holes in arguments, and provide different perspectives and levels of expertise and specialization. Beyond those benefits, this sort of coordination enables cost savings for the client by enabling projects to be readily shifted to the most inexpensive attorney who can perform the task. It is common for a senior attorney's expertise to be necessary to determine what needs to be done

or how it needs to be done—which course should be taken, what arguments should be made, what issues should be addressed, which approach should be taken—but unnecessary to executing the task. If the senior attorney is to offload this work to a junior attorney, as is proper and beneficial to the estate, the junior attorney must know the background information and what the senior attorney wants accomplished. The senior attorney might write a memo to the file outlining all this information, at which point much of the work on the project might already be done, and the junior attorney would still need to familiarize themselves with the memo and the file before beginning work. Alternately, the junior attorney might have had an intra-office conference with the senior attorney or sat in on the meeting where the senior attorney discussed the matter with the client and received their briefing in real-time, with the benefit of all the additional context, nuance, clarification, and exchange of ideas that come from a live interaction instead of the senior attorney's best recollections after-the-fact in a memo. It appears the United States Trustee would not object to compensation for the first scenario but would for the second.

12. Having multiple attorneys involved in a matter, like any other aspect of an attorney's representation, is subject to the possibility of overbilling. Attorneys must use their discretion, and it is appropriate for this Court to review whether attorneys have exercised that discretion when presented with fee applications. However, an across-the-board *per se* rule that only one attorney can bill for intra-office conferences or meetings with clients and other parties, which it appears may be the rule the United States Trustee used for her objection, goes beyond 11 U.S.C. § 330(a)(4)(A)(i)'s requirements. The standard is not whether multiple lawyers from the same firm were in the same meeting, the standard is avoiding *unnecessary duplication*. The presence of multiple lawyers from one firm in a meeting or intra-office conference, standing alone, is insufficient to show unnecessary duplication. If the lawyers bring different skills to the table then it is not duplication, and if both need to be there to obtain the information necessary to represent the client it is duplication but not unnecessary duplication. Notably, if lawyers from different firms were collaborating on a case this *per se* rule would not implicate int*er*-office conferences between them or meetings with the debtors or other parties where counsel from both firms attended (though these would still be subject to 11 U.S.C. § 330(a)(4)(A)(i) prohibitions on unnecessary duplication). Put those attorneys' names on the same letterhead and the same activities run into the *per se* rule.

13. In short, *if* the United States Trustee applied a *per se* rule that multiple attorneys from the same firm cannot bill for intra-office conferences or meetings with clients or other parties (and without details of the time entries the United States Trustee objects to it is impossible to know this for sure), that rule is inappropriate and sets a higher standard than 11 U.S.C. § 330(a)(4)(A)(i) requires. The Applicant fully acknowledges that its bills are subject to review under 11 U.S.C. § 330(a)(4)(A)(i) for unnecessary duplication, but it objects to *per se* rule's higher standard. It asks this Court to clarify its previous rulings by holding that multiple attorneys from the same firm attending the same meetings or holding intra-office conferences raises the specter of unnecessary duplication and may be subject to greater scrutiny under 11 U.S.C. § 330(a)(4)(A)(i), then analyze the Applicant's requested fees under that standard.

14. The United States Trustee's remaining objections fall under 11 U.S.C. § 330(a)(4)(A)(ii)'s requirement that the work either be reasonably likely to benefit the estate or be necessary to the case's administration. The Applicant argues that its work on the stay adversary, its research time, its work on stay violations, and its other work to which the United States Trustee objects either benefitted or were reasonably likely to benefit the estate.

15. Initially, the United States Trustee's objection subtly misframes the question. Like a catcher pulling a pitch from outside to the center to make it appear like a strike instead of a ball, the United States Trustee only discusses whether the work at issue *benefitted* the estate. If debtors' counsel must show their work actually benefitted the estate to justify compensation then debtors enjoy a privilege (and debtors' counsel suffer a detriment) unique in hourly legal billing—the client only pays for the work that actually helps. This sort of arrangement would lead to higher hourly rates for debtors' counsel to compensate, drive the most competent debtors' counsel out of the field to another field where they did not suffer this detriment, or both. Fortunately for professionals applying for fees under 11 U.S.C. § 330 and those they represent, Congress—in its efforts to put bankruptcy on par with other legal fields by allowing compensation like in other fields, 124 Cong. Rec. H11091-92 (1978)—set the much more reasonable standard that the work must be either necessary to the case's administration or *reasonably likely* to benefit the estate. The Applicant submits that it has met Congress's standard.

16. Proceeding to the United States Trustee's specific objections, she is correct that the purpose of the stay adversary was to protect the Debtor's principal. However, her implication that protecting the Debtor's principal could not have been a benefit to the estate is incorrect. The Debtor was a small business. Like most small businesses, its principal's efforts were key to its ongoing operations, and like most small businesses in bankruptcy, its principal's efforts were key to furthering the bankruptcy. Lawsuits against the principal by the Debtor's creditors with personal guaranties from him threatened to divert his attention from running the business and trying to reorganize the company. While the stay adversary was not ultimately successful in obtaining a long-term injunction, as the United States Trustee's objection notes it did result in a temporary restraining order from September 18, 2023–November 9, 2023. In that time the Debtor finalized and filed its plan. After the temporary restraining order was lifted the Debtor's business went downhill and converted to a Chapter 7. While there is not a direct, 1:1 causal connection between these events, it was reasonably likely that the work on the stay adversary would benefit the estate.

17. The United States Trustee's objection to the Applicant's research time is similarly misaimed. While again hampered by the lack of specificity about the time entries to which she objects, from her objection it appears she may have struck out any time entry with the word "research" in the description. Her objection sets a standard that no research is compensable. Again, this is not the standard and this would be detrimental to debtors and to this Court. This case involved issues where experienced counsel needed to conduct research to inform themselves on the law and relevant caselaw interpreting it—for one example, consider the extensive litigation over whether a security interest in general intangibles attaches to money transferred from a debtor to an attorney's trust account. More generally, the United States Trustee advocates a standard by which experienced counsel should not be researching "basic" concepts. However, it is precisely those basic concepts that sometimes require the most research because they are so pervasive (they are "basic" in the sense of "fundamental, at the base of many things") and because their application to specific facts can be so nuanced. Moreover, while these "basic" concepts may not have changed, the caselaw applying them is continually evolving. While lawyers who are deeply involved in a field will generally know when a relevant statute or court rule changes and often get a sense for caselaw trends, to expect even an experienced practitioner to be able to give a comprehensive legal evaluation

of any point in the field to a client, another party, or a court *without* conducting research is to expect malpractice. Returning to the relevant standard, legal research, even on "basic" concepts, is reasonably likely to benefit the estate because it allows debtors' counsel to formulate plans and positions that have the support of caselaw; advise debtors of how the law applies to the facts of their case, even the unusual or unique facts; and avoids wasting the time and resources of other parties or this Court with unsound arguments and positions. This must always be kept in perspective and done appropriately—the Applicant does not believe that "research" is *carte blanche* to run up a bill—but the virtue is in the mean, between both prohibiting all research on the basis that "the attorney should know everything because they charge so much" and greenlighting all research charges no matter what. The Applicant believes its research charges are within that mean.

18. The United States Trustee also objects to the Applicant's work on its first fee application on stay violations, alleging that they might not have benefitted the estate, particularly because the Debtor's principal guarantied many of the Debtor's debts. This argument is either woefully underdeveloped to the point of incomprehensibility or sadly misguided. While the Applicant does not suggest this was the United States Trustee's intention, this argument could be interpreted to mean that she believes that debtors should forfeit the automatic stay's protection for any guarantied debts. The United States Trustee could have addressed her concerns that stay violation work was being done selectively on only debts the Debtor's principal had guarantied by cross-referencing Schedule H and seeing that, for example, the Debtor's principal had not guarantied its debts to Linn County REC, Sourcetel Supply LLC, Hiawatha Water Department, Des Moines Water Works, and the Virginia Employment Commission but the Applicant sent stay violations letters to them. Beyond benefitting the estate by preventing harassment by creditors whom the automatic stay prohibits from contacting the Debtor, this work was necessary to the case's administration. When creditors violate the automatic stay debtors' counsel responds to protect the stay and the estate. Not doing so would be a dereliction of duty to the debtor and the estate. Since these activities were reasonably likely to benefit the estate and necessary to the case's administration the United States Trustee's objection should be overruled.

19. Finally, the United States Trustee objects to a variety of different types of work on the Applicant's first fee application that she says did not benefit the estate.

Setting aside the inapt standard, her descriptions do not make it clear what she was objecting to and she did not provide any documentation of the specific time entries in question to clarify the situation. For example, she objects to time spent preparing the stay relief adversary. However, the first fee application ran only through August 10, before the stay adversary was begun. The word "adversary" does not appear in the Applicant's time entries for the first fee application. She vaguely alludes to spreadsheets created but never again referenced, implying that a spreadsheet can only be reasonably likely to benefit the estate if it is later referenced by name in another time entry, and preparing documents that were never filed, again insisting that only work that actually benefits the estate be compensated and discounting the possibility that any benefit is likely from a path that turned out to be a dead end. The Applicant maintains that this work, at least as far as can be determined from the United States Trustee's vague descriptions, was reasonably likely to benefit the estate.

20. In summary, the Applicant believes that its work was not unnecessarily duplicative and was reasonably likely to benefit the estate, necessary to the case's administration, or both. The United States Trustee's objections are not convincing. This Court should overrule the United States Trustee's objections and allow the Applicant the compensation it has requested, excluding the $15,489.87 reduction the Applicant consents to as discussed in ¶ 5 above. If the Court is not prepared to overrule the United States Trustee's other objections at this time, it should require her to identify the specific entries on each of the three fee applications to which she objects then give the Applicant time to respond to those specific objections.

WHEREFORE the Debtor respectfully asks this Court to overrule the United States Trustee's objections to its fees except for the $15,489.87 reduction the Applicant consents to, award the Applicant the fees it requests, and grant any other relief that is just and equitable given the circumstances.

Dated this 9th day of May, 2024.

          Respectfully submitted,

          AG & BUSINESS LEGAL STRATEGIES

          /s/ Austin Peiffer
          Austin J. Peiffer AT0014402
          P.O. Box 11425
          Cedar Rapids, Iowa 52410-1425
          Telephone: (319) 363-1641
          Fax: (319) 200-2059
          Email: austin@ablsonline.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of May, 2024, a copy of this document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system, and served electronically on participants that receive service through the CM/ECF system.

          Signed: /s/ Alex C. Tvedte