**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| IN RE:<br><br>BDC GROUP, INC.,<br><br>　　　Debtor. | Case No. 23-00484<br><br>**JOINT MOTION FOR ORDER APPROVING COMPROMISE AND DERIVATIVE STANDING** |

COMES NOW Renee Hanrahan in her capacity as Chapter 7 Trustee ("Trustee") and Creditor Keystone Savings Bank (the "Bank"), and respectfully move the Court to enter an Order approving the compromise reached between them and providing the Bank with derivative standing to effectuate the terms of the compromise and allowing the Bank to pursue the collection of certain accounts receivable and grating other relief:

1.　Debtor BDC Group, Inc. initiated this case as a Chapter 11 proceeding in June 2023, which was converted to a case under Chapter 7 on January 30, 2024. *See* Dkt. 384. The Trustee was appointed the same day and continues to serve and administer the Chapter 7 Estate (the "Estate") in that capacity.

2.　Through the performance of those functions, the Trustee has worked to identify assets available to the Estate and not subject to the Bank's or other's pre-petition or post-petition DIP loan claims and liens. *See* Proof of Claim 77, 145. As a result of such efforts, the Trustee is now satisfied that most (although not all) assets are encumbered or involve disputed interests that will require time and expense to resolve.

3.　Following several months of negotiations with the Bank, the Trustee and the Bank have reached terms which the Trustee believes will generate a reasonable prospect of a return for the Estate while mitigating associated expenses, allowing assets of the Estate to be available for the administration of this case and for distribution to various creditors of the

Estate.

4. A copy of the parties' agreement is attached as Exhibit 1 (the "Settlement"). As an outline of terms, the Trustee and Bank have agreed that:

    a. The Bank will withdraw its claim to $70,636.50 in pre-petition funds held by the Trustee, and will clarify and agree that it makes no claim to an additional $8,917.60 held by the Trustee;

    b. The Bank will receive derivative standing to pursue payment of the Debtor's accounts receivables and work in process. The Estate will be paid a percentage of net recovery which varies from 5% to 12.5%, depending upon the total net recovery amount.

    c. The Estate will release the Bank from any claims that it may have.

5. At its core, the Settlement establishes a collections process for several million dollars of the Debtor's pre- and post-petition outstanding accounts receivable. The Bank is supplied derivative standing to pursue collections action through bankruptcy proceedings, and the Estate, in exchange, receives both an immediate cash injection and a portion of the net recoveries. In absence of the agreement set forth in the Settlement, it is probable the Bank would exercise its position as a lien creditor for the receivables subject to the Settlement, in which case the Estate would receive no return at all.

6. As further grounds supporting this Court's approval of the Settlement and grant of derivative standing to the Bank, the Trustee has concluded: (i) the Estate lacks sufficient resources to reasonably and effectively administer the receivables and collect them, (ii) certain account debtors are large telecom companies, who are believed to dispute the existence or amounts of the applicable receivables and are further believed to have significant litigation

resources at their disposal; (iii) there is no guarantee of recovery if the Estate pursues the receivables and abandoning them provides no value to the Estate; and (iv) existing Estate resources are better directed elsewhere given the terms of the Settlement and Bank's willingness to pursue collection. *See* Exhibit at 1 ¶ 3.

7. The Settlement resolves the issues identified therein and otherwise preserves the Trustee's and Bank's rights and remedies. For example, the Trustee is not compromising the Estate's position on avoidance actions. *See* Dkt. 422.

8. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).

9. A decision of whether to approve a proposed settlement agreement is within the sound discretion of the bankruptcy court. *See In re Simply Essentials, LLC*, 640 B.R. 922, 930 (Bankr. N.D. Iowa 2022) (*citing In re Hildreth*, No. 09-00293, 2012 WL 4520635 (Bankr. N.D. Iowa 2012)). Generally, settlements are favored. *Id* at 931. A bankruptcy court need not determine that the settlement is "the best result obtainable;" rather, the standard of review "is whether the settlement is fair and equitable and in the best interests of the estate." *Ritchie Cap. Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015) (quoting *Tri-State Fin., LLC,* 525 F.3d 649, 654 (8th Cir. 2008)). In evaluating a settlement, the court need only ensure that "the settlement does not fall below the lowest point in the range of reasonableness." *Id.* (quoting *Tri-State Fin.,* 525 F.3d at 654).

10. Courts have developed a four-factor test to assist with the application of these standards:

> (a) [t]he probability of success in litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the

> litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Simply Essentials*, 640 B.R. at 931 (quoting *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929)). To the extent a court concludes it is in the best interest of the creditors to approve a settlement, and the settlement is in the best interest of the Estate, the settlement approval should be granted. *Id.*

11. That the compromise sought in this Motion includes a grant of derivative standing does not alter the overarching framework. Derivative standing is available to creditors in bankruptcy when the trustee is "unable or unwilling" to act, including by consent. *In re Racing Servs.*, Inc., 540 F.3d 892, 899 (8th Cir. 2008); *In re Racing Servs., Inc.*, No. 04-30236, 2008 WL 4831479 (Bankr. D.N.D. Nov. 5, 2008). Where, as here, the trustee has consented to a creditor's request for derivative standing, the court must find that suit by the creditor is (a) in the best interest of the bankruptcy estate and (b) is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. In re Racing Servs., Inc., 540 F.3d at 902.

12. As set forth herein, allowing the Bank to pursue the outstanding receivables is in the best interest of the Estate because the Estate has no funds to pursue such receivables on its own. Moreover, the Estate stands to receive additional funds it would otherwise have no claim to if the Bank is successful in its attempts to recover the receivables. Relatedly, granting the Bank derivative standing is both necessary and beneficial to the fair and efficient resolution of these bankruptcy proceedings. Again, the Estate has no funds available with which it may pursue the outstanding receivables in its own right. Providing the Bank with derivative standing to take action to collect the receivables is the only way the receivables will be

recovered, and the agreement between the trustee and the Bank is the only way the receivables will benefit the Estate.[1]

13.　Furthermore, because a trustee can sell the Estate's position outright and lose all oversight and bankruptcy court control, *Pitman Farms v. ARKK Food Co., LLC (In re Simply Essentials, LLC)*, 78 F.4th 1006, 1008 (8th Cir. 2023), it arguably has commensurate ability to monetize those positions with derivative standing granted "for the benefit of the estate," *id.* (citing *Racing Services*). The path taken to reach the chosen outcome does not change the overarching settlement analysis of whether such outcome is "fair and equitable and in the best interests of the estate." *See Ritchie Cap. Mgmt., L.L.C.* 785 F.3d at 278.

14.　For the foregoing reasons, these guidelines are readily satisfied here. Through the Settlement, the Estate gets what it cannot get or cannot afford to get if the collections path is forged alone. Cooperating with the Bank provides immediate resources to the Estate, allocates collection risks to the Bank, and frees Estate recourses to pay for other, non-litigation costs and claims. The Court should accordingly grant this Motion.

WHEREFORE, the movants respectfully request that this Court approve this Motion and enter an Order authorizing the parties to consummate the Settlement as outlined herein and attached hereto, and directing and authorizing the parties to do anything and everything reasonably necessary to effectuate the compromise, and for such other relief as may be just and proper under the circumstances.

Dated: June 18, 2024

Respectfully Submitted,

SPENCER FANE LLP

---

[1] Upon her appointment as trustee in this case, the trustee sent demand letters to all account debtors listed on the Debtor's accounts receivable aging report, seeking payment of outstanding accounts receivable. The trustee has received minimal response to her demands.

By: /s/ *Elizabeth M. Lally*
Elizabeth M. Lally, #AT0013010
13815 FNB Parkway
Suite 200
Omaha, NE 68154
Telephone: 402-800-2299
Email: elally@spencerfane.com

PRO HAC VICE
Camber M. Jones, CA Bar No. 300027
2144 E. Republic Road, Suite B300
Springfield, MO 65804
Telephone: 417-888-1000
Facsimile: 417-881-8135
Email: cjones@spencerfane.com
ATTORNEYS FOR TRUSTEE, RENEE K. HANRAHAN


SIMMONS PERRINE MOYER BERGMAN PLC

/s/ Abram V. Carls
Eric W. Lam, AT0004416
Abram V. Carls, AT0011818
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Phone: 319-366-7641
Facsimile: 319-366-1917
elam@simmonsperrine.com
acarls@spmblaw.com
ATTORNEYS FOR KEYSTONE SAVINGS BANK

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 18, 2024, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system, and served electronically on those participants that receive service through the CM/ECF System.

/s/ Abram V. Carls