# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") dated as of April 24, 2024, is entered into between Keystone Savings Bank (the "Bank") and Renee Hanrahan in her capacity as Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate of Debtor BDC Group, Inc. ("BDC") (the Bank and Trustee collectively referred to as "Parties").

WHEREAS, BDC filed a voluntary petition for Chapter 11 bankruptcy relief on June 13, 2023 in the United States Bankruptcy Court for the Northern District of Iowa (the "Court"), docketed as case no. 23-00484;

WHEREAS, the Bank was BDC's primary and senior lender before bankruptcy, and in the course of BDC's Chapter 11 case continued that relationship through a DIP Loan filed and approved by the Court;

WHEREAS, BDC's reorganization efforts were not successful and on January 30, 2024 the Court entered an order converting the bankruptcy case from Chapter 11 to a proceeding under Chapter 7 of the Bankruptcy Code;

WHEREAS, the Trustee was duly appointed as the Chapter 7 Trustee on January 30, 2024, following case conversion;

WHEREAS, following her review of the case docket, schedules, claims, and the respective rights and interests in property of the estate, and in an effort to both maximize the value of the estate and minimize the risks inherent in litigation and costs of the same, the Trustee has determined, following negotiations with the Bank and upon consultation with counsel, that the terms and conditions within this Agreement are reasonable, fair, and in the best interests of the bankruptcy estate;

NOW THEREFORE the Parties in consideration of the foregoing and following mutual promises set forth herein, hereby agree as follows:

1. **Recitals.** The recitals set out above are incorporated into this Agreement.

2. **Receivables Identification.** "Receivables" as used herein means BDC's outstanding/unpaid accounts receivable and work in process, whether arising pre-petition or post-petition, and any and all proceeds and associated claims, demands, rights to payment, refunds, retainage, and causes of action arising therefrom, and any related defenses, but specifically excluding (i) accounts receivable owed by and any associated payments made by Zayo Group, LLC such as those made pursuant or related to the Court's January 24, 2024 Order, Dkt. 361, (ii) the payment made by the City of Cedar Rapids on approximately March 22, 2024 in the amount of $30,216.65, (iii) the payment made by MP Nexlevel LLC on approximately February 27, 2024 in the amount of $53.77, and (iv) proceeds in any BDC checking, savings, or similar accounts carrying the right to demand cash payment or cash equivalents.

3. **Receivables Investigation.** The Trustee has undertaken efforts to identify and investigate the Receivables, and based upon those efforts and her view of the Bank's and bankruptcy estate's interests therein has concluded:

   a. the time and expense associated with administering the Receivables and prosecuting any related claims would deplete the limited resources of the bankruptcy estate;

b. the bankruptcy estate lacks sufficient resources to reasonably and effectively administer Receivables, and any resulting litigation is expected to be complex, fact intensive, and time consuming;

c. certain account debtors are large telecom companies, who are believed to have significant litigation resources at their disposal;

d. without assistance, the bankruptcy estate may not recover sufficient proceeds to justify the costs of administration or prosecution, and even with assistance, there is no guarantee that a recovery would exceed the value of the Bank's liens and claims;

e. abandoning the Receivables provides no recovery to the bankruptcy estate and eliminates the prospect of any value coming to the bankruptcy estate if and to the extent that Receivables collections exceed the Bank's liens and claims; and

f. supplying the Bank with derivative standing, whether by sale or compromise, and subject to the terms and conditions of this Agreement, maximizes the value of the Receivables for the bankruptcy estate.

4. **Derivative Standing.** The Trustee hereby consents to the Bank having and being granted by the Court derivative standing to administer, collect, prosecute, and pursue the Receivables, and exercise all powers of the Trustee in connection therewith, and will cooperate with the Bank in undertaking all measures to ensure derivative standing is approved and recognized by the Court or other court of competent jurisdiction. Once approved, and subject to Federal Rule of Bankruptcy Procedure 9019 and any other applicable Bankruptcy Rules, the Bank shall have full and exclusive control of the Receivables, including the investigation, negotiation, prosecution, trial, and resolution of them, and shall have standing to appear on behalf of and as a representative of the bankruptcy estate for any purposes related to the Receivables. Should the Bank's standing or ability to represent the bankruptcy estate in connection with the Receivables be found invalid or deficient, in whole or in part, the Trustee agrees to cooperate with the Bank, as set forth in paragraph 10 of this Agreement, to cure such deficiency where possible.

5. **Fees and Expenses.** The Bank shall be solely responsible for all fees and expenses, including attorneys' fees (other than and excluding any attorneys' fees and costs incurred by the Trustee's counsel) and litigation costs, relating to and in incurred toward the administration, collection, prosecution, and pursuit of the Receivables. The Bank shall have full discretion over the firms, businesses, consultants, agents, advisors, attorneys, accountants, financial advisors, investigators, or other professionals it retains relating to the Receivables, who shall not be employed by or compensated from the bankruptcy estate, including under Section 327 and 330. However, subject to the attorney-client or work-product or similar privilege (which privilege is not waived and instead is preserved by and for the Bank), the Bank shall account for the Receivables-related fees and expenses separately from other fees and expenses it may incur in the case.

6. **Proceeds Division.** Proceeds of the Receivables shall be first applied to the payment of the Bank's fees and expenses. The remaining net proceeds shall be divided as follows, and depending upon the total amount of net proceeds obtained from all Receivables:

a. Under $1 million: 5% to the bankruptcy estate, 95% to the Bank;

  b. $1 million to $1.5 million: 7.5% to the bankruptcy estate, 92.5% to the Bank;

  c. $1.5 million to $2 million: 10% to the bankruptcy estate, 90% to the Bank;

  d. Over $2 million: 12.5% to the bankruptcy estate, 88.5% to the Bank.

The division of net proceeds to the Bank would only apply until the Bank's claims are repaid in full, with the next senior creditor secured by the Receivables then substituting itself into the Bank's position, and so on, until the net receivables are exhausted and fully distributed.

  **7.** **Pre-Petition Trust Account Deposits.** The Bank agrees to withdraw and release its claim to the $70,636.50 of cash that BDC deposited into its attorney's trust account prior to filing its bankruptcy petition and relatedly releases any associated lien that it may hold against those funds, which the Trustee disputes. The Bank further acknowledges that it has no lien against or claim to the $8,917.60 of cash that the Trustee received from BDC's attorney following conversion to Chapter 7.

  **8.** **Zayo Receivables Turnover.** Any payments of accounts receivable owed by Zayo Group, LLC including those made pursuant or related to the Court's January 24, 2024 Order, Dkt. 361, that come into the Trustee's possession or control, will be promptly abandoned by the Trustee and turned over to the Bank for application to its pre- and post-petition claims and liens as appropriate.

  **9.** **Release.** The Trustee, on behalf of the bankruptcy estate and the Debtor, hereby expressly releases and discharges the Bank and its agents, attorneys, officers, Board of Directors, parent, subsidiary, representatives, affiliates, and insurers (collectively for ease of reference "Bank Released Parties") from any and all claims, demands or causes of actions that the bankruptcy estate, the Trustee, or the Debtor has or may have against the Released Parties, whether known or unknown, contingent or matured, as of the Effective Date of this Agreement. The breach of any provision of this Agreement is expressly excluded from this release. Further, the Trustee expressly retains and does not release or waive any right to seek compensation pursuant to section 326(a) of the Bankruptcy Code.

The Bank hereby expressly releases and discharges the Trustee, individually, and her agents, attorneys, and professionals, individually (collectively, the "Trustee Released Parties") from any and all claims, demands, or causes of action that the Bank may have against the Trustee Released Parties, whether known or unknown, contingent or matured, as of the Effective Date of this Agreement. The breach of any provision of this Agreement is expressly excluded from this release. For the avoidance of doubt, any and all rights and remedies, claims, causes of action, and defenses that the Bank has or may have against BDC and the bankruptcy estate, including without limitation those filed at Claim No. 77 and 145 or arising from the Bank's pre-petition loan documents and post-petition DIP loan, are not within the scope of the Bank's release or the Trustee Released Parties, and are specifically excluded and reserved by the Bank. Furthermore, the Bank's release does not alter or relieve the Trustee from her statutory duties under the Bankruptcy Code including, as applicable, to make distributions to the Bank in accordance applicable provisions and requirements of the Bankruptcy Code.

  **10.** **Cooperation.** Each of the Parties agree to make reasonable efforts to take such other necessary action as such other Party may reasonably request to effectuate the terms of this Agreement. Likewise, the Trustee agrees to not take any action, or omit to take any action, which would reasonably be expected to impede or frustrate the Bank's pursuit of

the Receivables; provided, however, that the Trustee may take, or refrain from taking, any and all actions as are necessary to comply with her statutory duties under the Bankruptcy Code.

11. **Lien Acknowledgment and Retention.** The Trustee acknowledges the Bank's duly perfected liens and security interests in the Receivables and proceeds thereof. Any exercise of derivative standing by the Bank or any delay in the exercise of the Bank's rights shall not be construed as a waiver, merger, or release of the Bank's liens, rights, and interests, which are expressly retained.

12. **Approval Motion.** As soon as reasonably practicable following execution of this Agreement the Trustee shall file a motion pursuant to Section 363 and other applicable provisions of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules, together with required supporting papers and required notices, with the Court seeking approval of the settlements and terms contained in the Agreement. The Parties shall exercise best efforts to obtain Court approval in the form of an order that is acceptable to both Parties and that includes a finding that the Bank has derivative standing to directly pursue the collection of and if necessary prosecute claims for the Receivables. Final Court approval (not subject to appeal) of this Agreement is a condition of the effectiveness of the terms of this Agreement.

13. **Effective Date**. The Effective Date of this Agreement shall be fourteen (14) days after entry of a final order of the Court (not subject to appeal) approving this Agreement.

14. **Preservation of Rights.** Except to the extent specifically provided or modified herein, the execution of this Agreement shall not be deemed a waiver of any of the Parties' rights, and all rights and remedies of the Parties shall remain in full force and effect.

15. **Costs.** The Parties are responsible for their respective costs and attorneys' fees related to negotiations and the preparation of this Agreement.

16. **Governing Law and Jurisdiction.** This Agreement shall be governed by and construed and interpreted according to the laws of the State of Iowa.

17. **Modification.** This Agreement shall not be modified in any fashion except by written agreement executed by each of the Parties, approved by the Court.

18. **Binding Effect.** This Agreement will be binding upon, and inure to the benefit of, the successors, heirs and assigns of the Parties.

19. **Construction and Interpretation.** Each Party has been represented by counsel in the negotiation of this Agreement, and all accompanying documents, which shall be given effect according to their terms and the doctrine of *contra proferentum* shall not apply. Each Party further represents and warrants to the others that he/she/it has been represented by the counsel of his/her/its own choosing, has relied upon the advice of the chosen legal counsel, that the provisions of this Agreement have been read and explained to him/her/it by that counsel, and that the provisions this Agreement are understood and voluntarily accepted by he/she/it.

20. **Severability.** The invalidity or unenforceability of any provision of this Agreement, whether in whole or in part, shall not in any way affect the validity or enforceability of any other provision contained herein. All terms and conditions herein are material.

**21.** **Electronic, Facsimile and Counterparts.** This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument. Counterparts may be delivered via facsimile, electronic mail or image, or other transmission method, and any counterpart so delivered shall be deemed to have been duly and validly delivered and effective for all purposes. An electronic copy of this Agreement shall be deemed an original. It shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.

[*Remainder of page intentionally left blank*]

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement Agreement as of the date first written above.

RENEE HANRAHAN AS CHAPTER 7 TRUSTEE OF THE
BANKRUPTCY ESTATE OF BDC GROUP, INC.:

Signed: *Renee K. Hanrahan*
9CAAA6F89AEA457...

KEYSTONE SAVINGS BANK:

Signed: *Andy Johnson*
5B9AE04E98BA485...

By: _____

Title: _____